UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No.: 0:21-cv-60515-FAM

PRESTIGE INSURANCE GROUP, LLC,
a Delaware Limited Liability Company and
ULISES CICCIARELLI, an individual,

      Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
An Illinois Corporation,

      Defendant.

_____/

## DEFENDANT ALLSTATE INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendant ALLSTATE INSURANCE COMPANY ("Allstate" or "Defendant"), by and through its undersigned counsel, respectfully moves the Court to dismiss Counts II (Fraudulent Inducement), IV (Florida Franchise Act), and V (Defamation) of Plaintiffs' Complaint. As set forth below, Counts II and IV must be dismissed because the Complaint fails to plead the claims with particularity as required by Fed. R. Civ. P. 9(b) and because they are barred by the merger clause in the R3001 Exclusive Agency Agreement. Count II also must be dismissed due to the independent tort doctrine. Count V must be dismissed because Plaintiffs have not pled facts sufficient to overcome a defense of qualified privilege.[1]

---

[1] An answer as to any counts not addressed in this Motion is not required at this time as a partial motion to dismiss under Rule 12(b) extends the time to file an answer to the remaining counts of a complaint. *See Dimension Leasing, Inc. v. Variety Children's Hosp.*, No. 05-22701, 2006 WL

## I.  STATEMENT OF ALLEGED FACTS

1.  Plaintiff Prestige Insurance Group, LLC ("Prestige") is a Florida insurance agency owned by Ulises Cicciarelli ("Cicciarelli").  Complaint ¶¶ 1, 3.  Until November 13, 2020, Prestige was an Exclusive Agent independent contractor Agency of Allstate.  *Id.* ¶ 48.

2.  Cicciarelli alleges that he was approached in April 2020 by an Allstate Field Sales Leader ("FSL"), Kaylee Colvard, to become an insurance agent for Allstate.  *Id.* ¶ 13.

3.  Cicciarelli alleges that he "had many discussions with Allstate employees, representatives and agents, who made representations regarding the benefits of becoming an Allstate agent."  *Id.* ¶ 14.  The Complaint does not state, however, who these employees, representatives, or agents were, what the "representations" were, who made them, when they were made, or what specifically was said.

4.  Cicciarelli alleges that Allstate provided him with an Enhanced Compensation Plan "designed to provide additional compensation that rewards new agency owners for profitable growth and helps them deliver on the customer value proposition through the trusted advisor model."  *Id.* ¶ 16.

5.  Subsequently, Cicciarelli alleges he was guided through the process of becoming an Allstate agent "by numerous individuals representing Allstate's interests including Kaylee Colvard and Char Jordan, Territory Sales Leader" ("TSL").  *Id.* ¶ 18.

6.  In or around April of 2020, Cicciarelli made application to Allstate for an exclusive agency agreement.  *Id.* ¶ 19.

---

8432710, at *1 (S.D. Fla. Jan. 23, 2006); *Ferk v. Mitchell*, No. 14-cv-21916, 2014 WL 7369646, at *1, n.1 (S.D. Fla. Dec. 29, 2014).

7.      On July 23, 2020, Cicciarelli executed Allstate's R3001S Exclusive Agency Agreement ("R3001S"), which governed the independent contractor relationship between Allstate and Cicciarelli.  *Id.* ¶ 25 & Exhibit B.

8.      On August 3, 2020, Prestige executed Allstate's R3001C Exclusive Agency Agreement ("R3001C") in its corporate capacity.  *Id.* ¶ 26 & Exhibit C.

9.      Plaintiffs claim that, during and after their onboarding process, Allstate was developing internal policies and procedures intended to reduce the commissions and bonuses paid to agents regardless of contractual obligations and increase the profits kept by Allstate on premiums.  *Id.* ¶ 30.

10.     Aside from this initiative Plaintiffs allege, upon information and belief, that Allstate sought to reduce commissions and bonuses paid to its contracted agents including Cicciarelli and Prestige, by contrived default of their agency agreement.  *Id.* ¶ 33.

11.     Plaintiffs assert that Allstate began an investigation of Plaintiffs and used the results of that investigation to terminate Plaintiffs' relationship with Allstate.  *Id.* ¶¶ 36, 37, 44.

12.     On November 13, 2020, Allstate terminated the R3001C Agreement with Prestige. *Id.* ¶ 48 & Exhibit D.

13.     In correspondence dated November 17, 2020, Allstate published a letter to the Florida Office of Insurance Regulation communicating that Cicciarelli had been terminated for cause for providing false information to the company and failing to issue Policies according to Allstate guidelines.  *Id.* ¶ 52.  The Complaint alleges that the November 17, 2020, correspondence was known to be false by Allstate at the time it was sent.  *Id.* ¶ 53.

14.     Plaintiffs bring claims for breach of contract, breach of implied covenant of good faith and fair dealing, fraudulent inducement, defamation, violation of the Florida Franchise Act

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON. P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

("FFA"), and Declaratory Judgment.  With regard to the breach of contract and good faith and fair dealing claims, the Complaint alleges that Allstate breached its agreements with Plaintiffs by "falsely alleging a contrived reason for termination with cause," "alleging a basis for termination to avoid paying Plaintiffs' commissions and bonuses due under the agreements and the Enhanced Compensation Plan," "failing to provide sufficient time for Plaintiffs to transfer their interests" in their agencies, and "failing to pay a termination payment." *Id. ¶¶* 81-84.

## II.    LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  While legal conclusions can provide the framework of the complaint, they must be supported by factual allegations.  *Id.* at 679.  Detailed factual allegations are not required, but the complaint must offer more than "labels and conclusions" or "a recitation of the elements of the cause of action." *Twombly,* 550 U.S. at 555 (citation omitted).  The factual allegations must be enough to "raise a right to relief above the speculative level." *Id.* (citations omitted).  Finally, at the motion to dismiss stage, the Court must view the allegations in the complaint in the light most favorable to the plaintiffs and accept well-pleaded facts as true. *See St. Joseph's, Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 954 (11th Cir. 1986).

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

III.    **ARGUMENT**

   A.    **Plaintiffs' Claims for Fraudulent Inducement (Count II) and Violation of the Florida Franchise Act (Count IV) Must Be Dismissed Because Plaintiffs Fail to Plead Any Misrepresentation with Particularity.**

"To state a claim for fraudulent inducement under Florida law, a plaintiff must allege that (1) the defendant made a false statement about a material fact; (2) the defendant knew the statement was false when he made it or was without knowledge of its truth or falsity; (3) the defendant intended that the plaintiff rely and act on the false statement; and (4) the plaintiff justifiably relied on the false statement to his detriment." *Barrett v. Scutieri*, 281 F. App'x 952, 953 (11th Cir. 2008) (footnote omitted).  To bring a claim for a violation of the FFA, a plaintiff must allege that a defendant (1) intentionally misrepresented the prospects or chances for success of a proposed or existing franchise or distributorship; (2) intentionally misrepresented, by failure to disclose or otherwise, the known required total investment for such franchise or distributorship; or (3) intentionally misrepresented or failed to disclose efforts to sell or establish more franchises or distributorships than is reasonable to expect the market or market area for the particular franchise or distributorship to sustain.  Fla. Stat. § 817.416.

To survive a motion to dismiss, claims for fraudulent inducement and violations of the FFA must be pled with particularity, as required by Federal Rule of Civil Procedure 9(b).  Fed. R. Civ. P. 9(b).  This means that a plaintiff must allege "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997); *Cardenas v. Toyota Motor*

*Corp.*, 418 F. Supp. 3d 1090, 1098 (S.D. Fla. 2019) (Moreno, J.) ("[A] plaintiff is required to plead the 'who, what, when, where, and how' pertaining to the underlying fraud." (internal citation omitted)). "The particularity rule serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal citations omitted). Failure to plead a claim for fraudulent inducement or a violation of the FFA with particularity requires dismissal of such claims. *Beguall Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.*, No. 10-22153-CIV, 2011 WL 4434891, at *4 (S.D. Fla. Sept. 23, 2011) (dismissing claim for fraudulent inducement for failure to meet heightened pleading standard in Rule 9(b)); *Beaver v. Inkmart, LLC*, No. 12-60028, 2012 WL 12863137, at *2 (S.D. Fla. June 6, 2012) (dismissing claim for violation of FFA for failure to meet pleading standard set forth in Rule 9(b)).

Plaintiffs' counts for fraudulent inducement and violation of the FFA suffer exactly the sort of deficiency that courts have routinely found fail to meet the standard of Fed. R. Civ. P. 9(b) and necessitate dismissal. Plaintiffs allege generally that Cicciarelli "had many discussions with Allstate employees, representatives and agents, who made representations regarding the benefits of becoming an Allstate agent." Complaint ¶ 14. Specifically, with respect to Plaintiffs' fraudulent inducement claim, Plaintiffs allege only that these "representations" induced Plaintiffs to enter into R3001 Agreements. *Id.* ¶¶ 87, 89. Not only do Plaintiffs fail to identify any precise representation, who made the representations, or the time, date, and place of such representations, Plaintiffs fail to even assert that these "representations" were false. *See id.* ¶¶ 86-90; *Barrett*, 281 F. App'x at 953 (to state a claim for fraudulent inducement a plaintiff must allege that a statement was false). Thus, on the face of the pleadings, Plaintiffs have failed to state a claim for fraudulent inducement.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

Similarly, with respect to Plaintiffs' FFA claim, Plaintiffs allege in conclusory fashion that Allstate "intentionally misrepresented the prospects or chances for success of Plaintiffs' proposed agency," and further that Allstate "intentionally misrepresented or failed to disclose efforts to establish the Direct Pricing initiative as well as a new independent agency model which allows independent agencies to sell Allstate products at a higher commission rate."  Complaint ¶¶ 108, 109; Fla. Stat. § 817.416 (to bring a claim for a violation of the FFA, a plaintiff must allege that a defendant "intentionally misrepresented the prospects or chances for success of a proposed or existing franchise or distributorship").  To state a claim based on misrepresentation of the chances of success "[a] franchisee must demonstrate 'proof of intentional words or conduct by the franchisor, concerning the prospects or chances of success of the enterprise, which were relied upon by the franchisee to his detriment, and which are not in accordance with the facts.'"  *Hall v. Burger King Corp.*, 912 F. Supp. 1509, 1529 (S.D. Fla. 1995) (quoting *Travelodge Int'l, Inc. v. Eastern Inns, Inc.*, 382 So.2d 789, 791 (Fla. 1st DCA 1980)).  However, Plaintiffs again fail to identify *any* words or conduct by Allstate or the "required who, what, where, when, [and] how of [any] allegedly false statements."[2] *Beugalg Inv. Mgmt. Inc.*, 2011 WL 4434891, at *4.  Conclusory allegations regarding Allstate's conduct are insufficient.  *Le Macaron, LLC v. Le Macaron Dev. LLC*, No. 8:16-CV-918-17TGW, 2016 WL 6211718, at *6 (M.D. Fla. Oct. 24, 2016) (conclusory allegations and incorporation of factual background allegations regarding violations of FFA insufficient because "FFA covers only certain well-defined misrepresentations and omissions").  As are statements that a defendant allegedly failed to disclose information.  Fla. Stat. § 817.416 (an FFA claim based on intentional misrepresentation of the prospects or chances for success of a

---

[2]  Allstate does not concede that it entered into a franchise relationship with Plaintiffs.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

proposed or existing franchise or distributorship does not include "failure to disclose information").

In sum, Plaintiffs fail to plead with particularity their fraudulent inducement and FFA claims as required by Federal Rule of Civil Procedure 9(b), and, as a result, these claims must be dismissed.

**B.      Counts II and IV also Must Be Dismissed Because They Are Barred by the Merger Clause in the R3001 Exclusive Agency Agreements.**

To the extent Plaintiffs' fraudulent inducement and FFA claims are based on alleged "representations" made relating to profits or benefits Plaintiffs stood to receive as an Allstate Exclusive Agent, *see* Complaint ¶ 14, these claims are barred by the express terms of Plaintiffs' agency contracts.  Specifically, when the alleged misrepresentation explicitly contradicts an unambiguous provision in a written contract, fraud-based claims relating to inducement to enter into a contract are barred where the contract includes a merger clause.  *Rosa v. Amoco Oil Co.*, 262 F. Supp. 2d 1364, 1368 (S.D. Fla. 2003) (citing *Wilson v. Equitable Life Assurance Soc'y*, 622 So. 2d 25, 27 (Fla. 2d DCA 1993)).

Here, Plaintiffs claim that, prior to entering into their R3001 Agreements, Allstate made representations (presumably false) concerning the benefits of becoming an Allstate agent and that Allstate intentionally misrepresented their chances of success.  *See* Complaint ¶¶ 14, 108. Plaintiffs further allege that, unbeknownst to Plaintiffs, Allstate was developing new programs that would reduce the bonuses and commissions paid to agents under their R3001 Agreements by eliminating their customer base.  *See id.* ¶¶ 30-32.  However, the express terms of Plaintiffs' R3001 Agreements expressly disclaim any guarantee of bonuses, commissions, or a particular customer base.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

First, Plaintiffs' R3001 Agreements state that Plaintiffs "ha[d] no exclusive territorial rights in connection with [their] sales location."  Complaint, Exhibit C at Section V.A.  In other words, Plaintiffs had no legitimate expectation that they would have any exclusive territory or be free from competition from other Allstate agents or other sales channels.  Second, the Supplement, incorporated by refrence into Plaintiffs' R3001 Agreements, explicitly grants Allstate the sole discretion and authority to change or *eliminate* bonuses paid to agents.[3]  Specifically, the Supplement provides that Allstate "reserves the right to change or eliminate any such Bonus Compensation."  *Id.* at Section 3(2.0).  Finally, to the extent any prior representations made by Allstate relating to Plaintiffs' potential commissions or bonuses conflict with the terms of the Plaintiffs' R3001 Agreements, those representations have been superseded as a result of the merger clause in the agreements, which states, in relevant part that the R3001 Agreement "supersedes any prior oral statements and representations by the company to you and any prior written statements and representations by the Company to you in letters, manuals, booklets, memoranda, or in any other format."  Complaint, Exhibit C at Section I.B; *see also Rosa*, 262 F. Supp. 2d at 1368.  As a result, because Plaintiffs' fraudulent inducement claim is premised on alleged misrepresentations that were later explicitly covered by unambiguous provisions in a written contract, their claim is barred.  *Flamenbaum v. Orient Lines, Inc.*, No. 03-22549-CIV, 2004 WL 1773207, at *8 (S.D. Fla.

---

[3]  Plaintiffs reference the Supplement, attached hereto as **Exhibit 1**, in their Complaint but fail to attach it.  *See* Complaint ¶ 27.  As Plaintiffs acknowledge, the Supplement is incorporated into the R3001 Agreement and contains the terms and conditions that governed the parties' relationship and is thus central to Plaintiffs' claims.  The Court, therefore, may consider the Supplement without treating this motion as one for summary judgment under Fed. R. Civ. P. 56.  *See Sundance Apartments I, Inc. v. Gen. Elec. Cap. Corp.*, 581 F. Supp. 2d 1215, 1222 n. 5 (S.D. Fla. 2008) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)) (A court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment "if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed.")

July 20, 2004) (fraudulent inducement claim barred where alleged misrepresentations were contradicted by express terms of contract that included a merger clause).

### C. Plaintiffs' Claim for Fraudulent Inducement (Count II) Must be Dismissed Because it is Barred Florida's Independent Tort Doctrine.

The independent tort doctrine is a fundamental, long-standing common law principle that stands for the proposition that a plaintiff may not recover in tort for a contractual dispute unless the tort is independent of any breach of contract. *Barrakuda Ltd. v. Zazaby Jewels, Inc.*, No. 19-23004, 2020 WL 7493097, at *11 (S.D. Fla. Sept. 24, 2020) (quoting *Island Travel & Tours, Ltd., Co. v. MYR Indep. Inc.*, 300 So. 3d 1236 (Fla. 3d DCA 2020)). An alleged fraud is not separate from the performance of the contract when the misrepresentations forming the basis for the fraud also form the basis of the breach of contract claim. *Sun Life Assurance Co. of Can. v. Imperial Holdings*, No. 13-80385, 2016 WL 1056503, at *5 (S.D. Fla. Sept. 22, 2016) ("It is well-settled that a plaintiff may not recast causes of action that are otherwise breach-of-contract claims as tort claims"). In addition, "the damages stemming from that [tort] must be independent, separate and distinct from the damages sustained from the contract's breach." *Barrakuda*, 2020 WL 7493097, at *12 (quoting *Peebles v. Puig*, 223 So. 3d 1065, 1068 (Fla. 3d DCA 2017)). Thus, a fraudulent inducement claim must be dismissed if is merely a "repackaged" breach of contract claim. *Barrakuda,* 2020 WL 7493097, at *12 (dismissing a claim of fraudulent inducement since the claim was ultimately based on the same underlying conduct giving rise to its breach of contract claim); *Kaye v. Ingenio, Filiale De Loto-Quebec, Inc.*, No. 13-61687, 2014 WL 2215770, at *9 (S.D. Fla. May 29, 2014) (dismissing plaintiff's fraudulent inducement claim since plaintiff's claims of fraud were "precisely the same as a potential breach-of-contract claim").

Here, Plaintiffs have failed to establish their fraudulent inducement claim is independent of any breach of contract, as the Complaint shows that the claim for fraudulent inducement is

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

inextricably intertwined with Plaintiffs' allegations related to Allstate's purported non-performance of its contractual duties. Though lacking in the requisite specificity, Plaintiffs' allegations of fraud assert "[p]art of the material inducements made to Cicciarelli was an Enhanced Compensation Plan," which, along with their compensation structure was later "set forth in [their] agreements" with Allstate. Complaint ¶¶ 16, 35. Plaintiffs further allege that "there was no valid basis for Allstate to terminate the Agreements for cause and to withhold payment of bonuses earned in 2020 under the Enhanced Compensation Plan," *id*. ¶ 58, and that "Allstate's purpose in alleging the basis for termination with cause is to avoid paying Plaintiffs' commissions and bonuses due under the Agreements and the Enhanced Compensation Plan." *Id*. ¶ 82.

In addition, Plaintiffs' allegations that Allstate changed or altered compensation and bonuses are contemplated by the parties' R3001 Agreements in which the parties agreed "[t]he sole compensation … for services rendered in pursuant to this Agreement will be the Commissions set forth in the Supplement, which may be amended from time to time." *See* Ex. B, R3001S, ¶ XV, Ex. C, R3001C, ¶ XV; Complaint ¶ 30. The Complaint further alleges that the parties agreed that Allstate may "increase or decrease any commission amounts or commission rules with at least ninety days prior written notice." *See* Ex. B, R3001S ¶ I.C. XV and Ex. C, R3001C ¶ I.C. XV. The face of the Complaint thus shows that the claim for fraudulent inducement is directly tied to and interconnected with the allegations in Plaintiffs' breach of contract claim. Thus, any dispute as to Allstate's discretion to change or reduce commissions is contractual, and not a tort dispute.

Plaintiffs' fraudulent inducement claim is merely a repackaged breach of contract claim – i.e., that Allstate committed fraud in the promise to pay bonuses under the R3001 Agreements and Enhanced Compensation Plan, and then Allstate refused to pay such bonuses. Plaintiffs therefore have failed to state a tort that is independent from a breach of contract.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

**D.      Dismissal of Plaintiffs' Defamation Claim is Also Warranted.**

Plaintiffs' defamation claim is based solely on statements included in a letter sent by Allstate to the Florida Office of Insurance Regulation shortly after Plaintiffs' termination. Complaint at ¶¶ 52-55, 114-117.  Plaintiffs rely on this letter despite failing to expressly quote the alleged defamatory statement or otherwise attach the letter to the Complaint – grounds that create an independent basis for dismissal.  Regardless, Florida law required Allstate to send this letter pursuant to Fla. Stat. §§ 626.471 and 626.511, as discussed below.  As such, any statements contained in this communication to the Florida Office of Insurance Regulation cannot be defamatory, as a matter of law, because the statements are protected by the qualified privilege and Plaintiffs have not alleged express malice necessary to overcome the privilege.  Failure to plead express malice is fatal to Plaintiffs' defamation claim and mandates dismissal.  Here, Plaintiffs have not alleged "ill will, hostility, *and* an evil intent to defame and injure" necessary to establish express malice.  *See Jarzynka v. St. Thomas Univ. Sch. of Law*, 310 F. Supp. 2d 1256, 1268 (S.D. Fla. 2004) (emphasis in original).  Nor can they.

Additionally, the Court has an obligation to determine, at the outset, whether the statement at issue is capable of defamatory meaning.  This requires the Court to examine the publication as a whole to see the context in which it appears.  By not attaching the letter – or quoting its entirety in the Complaint – Plaintiffs prevent the Court from discharging its gatekeeping function.  For this additional independent reason, dismissal of the defamation claim is warranted.

**1.      The Qualified Privilege Precludes Plaintiffs' Defamation Claim.**

"A statement made by one having an interest or duty in the subject matter thereof, to another person having a corresponding interest or duty therein, is conditionally privileged, even though the statement may be false and otherwise actionable."  *Jarzynka*, 310 F. Supp. 2d at 1267

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

(citing *Nodar v. Galbreath*, 462 So. 2d 803, 809 (Fla. 1984)).  It is for this reason that Florida courts uniformly recognize as privileged statements to a "political authority regarding matters of public concern." *See Nodar*, 462 So. 2d at 810; *Fridovich v. Fridovich*, 598 So. 2d 65 (Fla. 1992) (finding that voluntary statements made to the police or state's attorney prior to the institution of criminal charges are protected by the qualified privilege).

Allstate, as an "insurer terminating the appointment of an agent," had a legal obligation to inform the Florida Office of Insurance Regulation of the termination decision along with a "statement of the reasons, if any, for and the facts relative to such termination." Fla. Stat. § 626.511(1).  Florida Statute § 626.471(2) further reiterates this requirement.  The statutes do not exempt or otherwise relieve insurers from this requirement in the event that an agent disagrees or disputes facts giving rise to the termination decision.  As Judge Ungaro held in *Corporate Financial, Inc. v. Principal Life Insurance Co.*, letters from an insurer to the state agency in accordance with these statutory requirements are protected by the qualified privilege as "statements made to an investigator that initiate an investigation." *See Corp. Fin., Inc. v. Principal Life Ins. Co.*, 461 F. Supp. 2d 1274, 1293 (S.D. Fla. 2006).  Consequently, it is clear that the communications at issue are subject to the qualified privileged.

### 2. The Complaint is Devoid of Any Allegations Establishing Express Malice Necessary to Overcome the Qualified Privilege.

When the qualified privilege applies, a plaintiff may proceed with a defamation claim only if the plaintiff can allege and later prove express malice. *See id.*  Express malice is defined as "ill will, hostility *and* an evil intention to defame and injure." *Jarzynka*, 310 F. Supp. 2d at 1268. Malice is not assumed or inferred from allegations that the statements are untrue, or the use of "strong, angry or intemperate words." *Nodar*, 462 So. 2d at 810-11.  Rather, "the gravamen of express malice is the abuse of a privileged occasion by improper motives on the part of the

speaker." *Id.* at 811, n. 8.  So long as the speaker is motivated by a proper interest protected by the qualified privilege, the speaker "does not forfeit the privilege merely because he also in fact feels hostility or ill will toward the plaintiff." *Id.* at 812.  In other words, a plaintiff must prove that the speaker's primary motive or intent in issuing the statement was to injure the plaintiff's reputation in order to overcome the privilege.  *See Corp. Fin., Inc.*, 461 F. Supp. 2d at 1293.

Nowhere in the Complaint do Plaintiffs allege express malice.  Instead, Plaintiffs simply allege that Allstate knew the information in its letter to the Florida Office of Insurance Regulation was false and that Allstate acted with knowledge or reckless disregard for the falsity of these statements.  Complaint at ¶¶ 114-116.  As the Florida Supreme Court noted in *Nodar*, reliance on the purported falsity of the statements at issue is legally insufficient to establish express malice. *Nodar*, 462 So. 2d at 810-11.

Moreover, Plaintiffs' central theory of their case is that Allstate improperly terminated their R3001 Agreements and manufactured grounds for a termination, with cause, to avoid having to pay a substantial amount in commissions and bonuses to Plaintiffs.  Complaint at ¶¶ 29-30, 33, 35-36.  Under this theory (which Allstate vehemently denies), Allstate's primary motive in sending the letter to the Florida Office of Insurance Regulation was to effectuate the termination and thus avoid the payment of commissions.  This is patently inconsistent with a primary motive or intent to injure Plaintiffs' reputation necessary to allege express malice.  Simply put, Plaintiffs cannot establish "ill will, hostility *and* an evil intention to defame and injure" as the primary reason for Allstate sending the letter to the state agency.  As Plaintiffs cannot overcome the qualified privilege, as a matter of law, the defamation claim should be dismissed.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

### 3.   The Defamation Claim Should Also be Dismissed Due to Plaintiffs' Failure to Quote or Attach the Purported Defamatory Statement.

One of the required elements of a cause of action for defamation is that the statement at issue "must be defamatory." *See Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1107 (Fla. 2008). In Florida, it is for the court to determine from the onset if the statement at issue is reasonably capable of a defamatory interpretation. *See Silvester v. Am. Broad. Cos., Inc.*, 650 F. Supp. 766, 770 (S.D. Fla. 1986); *see also Belli v. Orlando Daily Newspapers, Inc.*, 389 F.2d 579, 583 (5th Cir. 1967). In making this determination, courts must consider not only the statements themselves, but also the context in which the statements appear in the publication. *See, e.g., Byrd v. Hustler Magazine*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983); *Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 705 (Fla. 3d DCA 1999). "Where the court finds that a communication could not possibly have a defamatory or harmful effect, the court is justified in . . . *dismissing the complaint for failure to state a cause of action*." *See Byrd*, 433 So. 2d at 595 (quoting *Wolfson v. Kirk*, 273 So. 2d 774, 778 (Fla. 4th DCA 1973)) (emphasis added).

Here, Plaintiffs fail to quote the purported defamatory statements or otherwise attach the letter to the Complaint. By failing to do so, Plaintiffs prevent the Court from discharging its threshold obligation of determining whether the statement at issue is defamatory as a matter of law. The Court must examine the publication, as a whole, to see the context in which it appears. By not attaching the letter – or quoting its entirety in the Complaint – the Court is handcuffed in its ability to discharge this critical gatekeeping function. For this added reason, Plaintiffs' defamation claim should be dismissed.

## IV.   CONCLUSION

For the reasons set forth above, the Court should dismiss Counts II, IV, and V of Plaintiffs' Complaint.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

Dated:  April 28, 2021
         Miami, Florida

Respectfully submitted,

By: *s/Ingrid H. Ponce*
    INGRID H. PONCE, ESQ.
    Florida Bar No. 166774
    iponce@stearnsweaver.com
    STEARNS WEAVER MILLER WEISSLER
     ALHADEFF & SITTERSON, P.A.
    Museum Tower, Suite 2200
    150 West Flagler Street
    Miami, Florida 33130
    Telephone: (305) 789-3200
    Facsimile:  (305) 789-3395


    ROBERT G. LIAN, JR., ESQ.
    DC Bar No. 446313 (*pro hac vice motion pending*)
    blian@akingump.com
    ALLISON S. PAPADOPOULOS, ESQ.
    DC Bar No. 1023010 (*pro hac vice motion pending*)
    apapadopoulos@akingump.com
    KATHERINE I. HEISE, ESQ.
    DC Bar No. 1672558 (*pro hac vice motion pending*)
    kheise@akingump.com
    AKIN GUMP STRAUSS HAUER & FELD LLP
    2001 K Street, N.W.
    Washington, DC  20006
    Telephone:  (202) 887-4000
    Facsimile:  (202) 887-4288

    *Attorneys for Defendant*
    *ALLSTATE INSURANCE COMPANY*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 28, 2021, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

*/s/ Ingrid H. Ponce*
INGRID H. PONCE

17

## SERVICE LIST

Eric A. Parzianello, Esquire
eparzianello@hspplc.com
John A. Hubbard, Esquire
jhubbard@hspplc.com
Hubbard Snitchler & Parzianello PLC
999 Vanderbilt Beach Road, Suite 200
Naples, Florida 34108
Telephone: (239) 325-1802

*Counsel for Plaintiffs*

Service Via: CM/ECF

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200