**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**PRESTIGE INSURANCE GROUP, LLC,**
a Delaware limited liability company, and
**ULISES CICCIARELLI, individually,**

    Plaintiffs,                               Case No.: 0:21-cv-60515-FAM
                                                     Hon. Federico A. Moreno

vs.

**ALLSTATE INSURANCE COMPANY,**
    an Illinois corporation,

    Defendant.

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S
PARTIAL MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Plaintiffs, Prestige Insurance Group, LLC, a Delaware limited liability company ("Prestige"), and Ulises Cicciarelli ("Cicciarelli") state as follows for their Memorandum in Opposition to Defendant's Partial Motion to Dismiss Plaintiffs' Complaint against Allstate Insurance Company ("Allstate"):

**I.    INTRODUCTION**

Ulises Cicciarelli is a business professional who has engaged in various business ventures in both the real estate and insurance industries in Florida for many years. He has held professional licenses in Florida since 2006, including as a real estate broker, a mortgage broker, and an insurance broker. In over 14 years of professional licensure, Cicciarelli never had a single complaint filed against him, nor did he even have a formal investigation instituted against him – until he became associated with Allstate.

In early 2020, Allstate approached Cicciarelli to become an insurance agent, and Cicciarelli thereafter completed the process to become an agent for Allstate. He formed Prestige to operate the agency, and he became an exclusive agent in August of 2020.

Cicciarelli and Prestige quickly became the most successful Allstate agency in the country. While these efforts earned substantial business and profit for Allstate, they also bound Allstate to pay significant commissions to Cicciarelli and Prestige. Allstate, as part of what Plaintiffs allege was a company-wide campaign to reduce its payment obligations for commissions, began a campaign to improperly terminate its obligations to Cicciarelli and Prestige. Allstate ultimately terminated Plaintiffs' agency in November of 2020.

Plaintiffs filed their six-count Complaint (**Exhibit A**) on March 5, 2021 and granted Allstate a 3-week extension to respond to the Complaint. Allstate filed its motion to dismiss on April 28, 2021, seeking dismissal of three counts of Plaintiffs' complaint against it: Count II for Fraudulent Inducement; Count IV for Violation of Florida's Franchise Act; and Count V for Defamation.  For the reasons set forth below, this Court should deny Allstate's motion. Alternatively, Plaintiffs request the opportunity to amend their Complaint to provide more particular allegations regarding their claims to the extent this Court believes any of Plaintiff's claims are not adequately pled.

## II.  FACTS

Plaintiff Prestige is a Delaware limited liability company authorized to do business in Florida, and Cicciarelli is Prestige's sole member. *Complaint* (Doc. 1) at ¶ 1 and 3.

Cicciarelli has held professional licenses with the State of Florida since 2006 when he was employed as a real estate broker associate with Florida Realty of Miami. *Id*. at ¶ 7. In 2010, Cicciarelli, became President/Broker of Prestige Real Estate Services Inc., where he oversaw

brokerage operations for a real estate brokerage which he owned. *Id*. at ¶ 9. Cicciarelli also held a mortgage brokers license. *Id*. at ¶ 10. In those 14 years of Florida professional licensure, Cicciarelli never had any complaint or even a formal investigation instituted against him. *Id*. ¶ 11.

In March 2019, Cicciarelli began working with Defendant Allstate as a Producer in order to learn the insurance business and ultimately become an Agency Owner. *Id*. at ¶ 12. In April 2020, Cicciarelli was approached by an Allstate Field Sales Leader ("FSL"), Kaylee Colvard to become an insurance agent for Allstate. *Id*. at ¶ 13. Cicciarelli had many discussions with Allstate employees, representatives and agents who made representations regarding the benefits of becoming an Allstate agent. *Id*. at ¶ 14. These representations and inducements resulted in Cicciarelli executing an Agent Pre-Appointment Agreement For Allstate Exclusive Agency Program in March of 2020 and ultimately, agency agreements. *Id*. at ¶ 15.

Part of the material inducements made to Cicciarelli by Allstate was an Enhanced Compensation Plan "designed to provide additional compensation that rewards new agency owners for profitable growth and helps them deliver on the customer value proposition through the trusted advisor model." *Id*. at ¶ 16. The Enhanced Compensation Plan was delivered to Cicciarelli by FSL Kaylee Colvard via the Allstate Exclusive Agent Opportunity Tool (EAOT), which projects future commissions and bonuses. *Id*. at ¶ 17.

Subsequently, Cicciarelli was guided through the process of becoming an Allstate agent by numerous individuals representing Allstate's interests including Kaylee Colvard and Char Jordan, Territory Sales Leader ("TSL"). *Id*. at ¶ 18.  In or around April of 2020, Cicciarelli made application to Allstate for an exclusive agency agreement. *Id*. at ¶ 19.

Cicciarelli's assigned FSL, Kaylee Colvard, from Allstate provided all the financial information for Cicciarelli's business plan which he did not create. *Id*. at ¶ 20. Cicciarelli made

representations in the application with the assistance and encouragement of those acting on behalf of Allstate which, unbeknownst to Cicciarelli, would form the basis of his wrongful subsequent termination by Allstate. *Id*. at ¶ 21.

Cicciarelli and Prestige were in regular communication with Allstate from the time of application through the execution of the agency agreements discussed below and subsequently regarding all aspects of Cicciarelli and Prestige's operations. *Id*. at ¶ 22. On July 23, 2020, Cicciarelli executed Allstate's R3001S Exclusive Agency Agreement ("R3001S") in his individual capacity. See *Id*. at **Exhibit B** and ¶ 23. The R3001S purports to govern the independent contractor relationship between Allstate and Cicciarelli. *Id*. at ¶ 25. On August 3, 2020, Prestige executed Allstate's R3001C Exclusive Agency Agreement ("R3001C") in its corporate capacity. *Id*. at ¶ 26.

From the commencement of operations, Cicciarelli and Prestige, by all objective calculations, was the most successful Allstate agent in the country. *Id*. at ¶ 28. These efforts earned substantial profit for Allstate and were contractually bound to earn commensurate commissions for Cicciarelli and Prestige. *Id*. at ¶ 29. Unbeknownst to Cicciarelli and Prestige during and after their onboarding process, Allstate was developing internal policies and procedures intended to reduce the commissions and bonuses paid to agents regardless of contractual obligations and increase the profits kept by Allstate on premiums. *Id*. at ¶ 30.

Among other initiatives, Allstate, in June of 2020 or earlier, began a "Direct Channel Pricing" initiative. *Id*. at ¶ 31. Allstate introduced a "channel of bind" in the District of Columbia and upon information and belief, elsewhere. *Id*. Through this initiative, customers bound through Allstate approved websites and mobile applications or an Allstate call center would receive lower cost insurance policies ("Policies") based on Allstate's circumvention of commissions paid to its

agents. *Id*. at ¶ 32. Aside from this initiative, upon information and belief, Allstate sought to reduce commissions and bonuses paid to its contracted agents including Cicciarelli and Prestige by contrived default of their agency agreement. *Id*. at ¶ 33. None of these initiatives or plans by Allstate were disclosed to Cicciarelli prior to the execution of the agreements.

Although Cicciarelli and Prestige constantly and proactively communicated with Allstate regarding their operations, Allstate took notice of the immediate substantial success of Cicciarelli and Prestige. *Id*. at ¶ 34. Allstate determined that Plaintiffs' success, while benefiting Allstate's profits, would require substantial commissions and bonuses to be paid to Plaintiffs under the terms of their compensation structure as set forth in the agreements with Plaintiffs, including the Enhanced Compensation Plan. *Id*. at ¶ 35. In order to ascertain some inconsequential basis to terminate the agreements with Plaintiffs, Allstate began an "investigation" to determine the veracity of representations made by Plaintiffs in their application. *Id*. at ¶ 36.

Allstate began a simultaneous investigation regarding the Policies written by Plaintiffs' employees and agents. *Id*. at ¶ 37. Plaintiffs and their employees fully complied and participated in Allstate's sham investigation providing details, e-mails and text messages of all relevant communications and even provided further information subsequent to the interviews, which substantiated that all the policies were written to Allstate's standards. *Id*. at ¶ 40.

From the date it began its "investigation" through November 13, 2020, Allstate allowed Plaintiffs to continue to pay overhead costs for operations while Allstate continued to profit by collecting premiums for customers who bound coverage because of Plaintiffs' efforts. *Id*. at ¶ 47. By letter dated November 13, 2020, Allstate terminated the R3001C Agreement with Prestige ("Termination Letter"). *Id*. at ¶ 48.

The Termination Letter purported that "Allstate is taking this action for reasons that include providing false information to the company and failing to issue policies according to Allstate guidelines." *Id*. at ¶ 50.

In correspondence dated November 17, 2020, Allstate published a letter to the Florida Office of Insurance Regulation communicating that Cicciarelli had been terminated for cause for providing false information to the company and failing to issue Policies according to Allstate guidelines. *Id*. at ¶ 52; see also *Id*. at **Exhibit B** ("The 'for-cause' termination reason is due to providing false information to the company and failing to issue policies according to Allstate guidelines.").

That November 17, 2020, correspondence was known to be false by Allstate at the time it was sent and offered to provide the Florida Office of Insurance Regulation "supporting documentation." *Id*. at ¶¶ 53-54.

Plaintiffs subsequently requested and were refused the supporting documentation or any additional information regarding the termination. *Id*. at ¶ 55. These communications among other relating to the inducements made to Plaintiffs are in Allstate's possession.

In correspondence dated December 14, 2020, Allstate stated: "We will not provide you with any of the internal investigation material that you requested." *Id*. Allstate further communicated in the December 14, 2020, correspondence, that despite profiting from Plaintiffs' performance under the Agreements both before and after the commencement of the "investigation", it would not pay any bonus commissions to Plaintiffs earned from the inception of the relationship on August 1, 2020. *Id*. at ¶ 56.

There was no valid basis for Allstate to terminate the Agreements for cause and to withhold payment of bonuses earned in 2020 under the Enhanced Compensation Plan. *Id*. at ¶ 58. Plaintiffs

did not provide false information to Allstate as it was in constant communication regarding all aspects of its business operations and Allstate assented to all changes to Plaintiffs' proposed operations. *Id*. at ¶ 59. Plaintiffs also did not fail to issue Policies according to Allstate guidelines. *Id*. at ¶ 62.

### A. Count II - Fraudulent Inducement

Plaintiffs alleged that the representations made by Allstate by and through senior management to Plaintiffs were material and induced Plaintiffs to enter into the Agreements. *Id*. at ¶ 87. Allstate made these representations expecting that Plaintiffs would rely on the representations when entering into the Agreement. *Id*. at ¶ 88. Plaintiffs did rely on those representations and were induced by those representations to enter into the agreements. *Id*. at ¶ 89. As a result of Allstate's unilateral internal policy modifications, Plaintiffs have suffered and will continue to suffer injury. *Id*. at ¶ 90.

### B. Count IV - Violation of Florida Franchise Act

Plaintiffs alleged that they and Allstate had a commercial relationship of definite duration or continuing indefinite duration. *Id*. at ¶ 103. Plaintiffs were granted the right to offer, sell, and distribute services organized and directed by Allstate. *Id*. at ¶ 104. Plaintiffs' independent business constitutes a component of Allstate's distribution system. *Id*. at ¶ 105. The operation of Plaintiffs' business is substantially reliant on Allstate. *Id*. at ¶ 106. Plaintiffs are "franchisees" under the Florida Franchise Act ("Act"), Fla Stat Ann 817.416, who were granted the right to sell Allstate insurance products pursuant to Allstate's standards and requirements. *Id*. at ¶ 107.

Allstate intentionally misrepresented the prospects or chances for success of Plaintiffs' proposed agency. *Id*. at ¶ 108. Allstate intentionally misrepresented or failed to disclose efforts to establish the Direct Pricing initiative as well as a new independent agency model which allows

independent agencies to sell Allstate products at a higher commission rate. *Id*. at ¶ 109. Allstate's Direct Pricing initiative has reduced Plaintiffs' ability to sell its book of business for fair value, if at all, in violation of the Act. *Id*. at ¶ 110. Allstate's misrepresentations and failures to disclose are violations of the Act. *Id*. at ¶ 111. Plaintiffs suffered damages as a result of Allstate's actions and omissions. *Id*. at ¶ 112.

### C. Count V – Defamation.

Plaintiffs alleged that Allstate's correspondence to the Florida Office of Insurance Regulation was a publication. *Id*. at ¶ 14. The statements that Cicciarelli provided false information to Allstate and failed to issue Policies according to Allstate guidelines were false. *Id*. at ¶ 115. Allstate acted with knowledge or reckless disregard as to the falsity of these matters which were defamatory. *Id*. at ¶ 116. Cicciarelli has suffered and will suffer damages as a result. *Id*. at ¶ 117.

### III. ARGUMENT

#### A. Legal Standard.

Under the notice pleading standard of Rule 8(a) of the Federal Rules of Civil Procedure, complaints should be short and simple and should give the adversary notice of the claim. *Lotierzo v Woman's World Med Ctr, Inc.*, 278 F.3d 1180, 1183 (11th Cir. 2002). "To survive ... a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012), citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 953 (11th Cir. 1986). A plaintiff's "[f]actual allegations

must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

Moreover, while a district court is not required to grant a plaintiff leave to amend its complaint *sua sponte*, a court should give a plaintiff an opportunity to amend a complaint upon request, rather than dismiss it when "it appears that a more carefully drafted complaint might state a claim upon which relief could be granted." *Bloom v. Alvereze*, 498 F. App'x 867, 884 (11th Cir. 2012). Therefore, "a court should only grant a motion to dismiss where the defendant demonstrates that the plaintiff cannot prove any set of facts in support of his claim which would entitle him to relief." *Id*. (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

### B. Allegations of Fraud and Violations of FFA.

Plaintiffs have sufficiently pled the requirements for a claim of fraud or fraudulent inducement which are: "(1) a false statement regarding a material fact; (2) the statement maker's knowledge that the representation is false; (3) intent that the representation induces another's reliance; and (4) consequent injury to the party in reliance." *Thompkins v. Lil' Joe Records, Inc*., 476 F.3d 1294, 1315 (11th Cir. 2007) (internal citations omitted). Moreover, reliance on deliberate silence is also sufficient to state a claim for fraud. *Melton v. Century Arms, Inc*., 243 F. Supp. 3d 1290, 1300 (S.D. Fla. 2017).

While Plaintiffs have not specifically alleged the time and specific inducements made to them, Plaintiffs have identified Kaylee Colvard and Char Jordan as those who made representations to Plaintiffs. *Complaint* (Doc. 1) at ¶¶ 13, 17-18. Additional individuals with whom Plaintiffs interacted include Mikhail Kozlov, Ysabel Cardenas, Ashley Fuentes and Juan Todero. Moreover, Plaintiffs have alleged that Allstate failed to disclose its internal policy initiatives, commenced in June of 2020 or earlier, to avoid contractual obligations and increase the profits

kept by Allstate on premiums and its intent to reduce commissions and bonuses paid to its contracted agents including Cicciarelli and Prestige, by contrived default of their agency agreements. *Id.* at ¶¶ 28-33. These internal policies are not within Plaintiffs' possession but are, upon information and belief, maintained by Allstate.

These allegations in the complaint satisfy Rule 9(b) by "alerting defendants to the precise misconduct with which they are charged." *U.S. ex rel Mastej v. Health Mgmt. Asso., Inc.*, 591 Fed. Appx. 693, 703 (11th Cir. 2014) (citations omitted); see also *U.S. ex rel Matheny v. Medco Health Solutions, Inc.*, 671 F. 3d 1217, 1225 (11th Cir. 2012) (rejecting 9(b) challenge). To the extent more particular allegations of specific statements aside from Allstate's silence are required, Plaintiffs request the opportunity to amend their Complaint to address such inducements.

C. **Counts II and IV Are Not Barred by the Merger Clause**

Allstate's memorandum would erroneously suggest that any claim for fraudulent inducement is barred by the merger clause or the independent tort doctrine.

Under Florida law, if the tort alleged is an "independent tort," meaning it involves acts that are independent of a contractual breach, then it will not be barred by the economic loss rule. *See Nationwide Advantage Mortgage Co. v. Fed. Guar. Mortgage Co.*, No. 09–20372–CIV, 2010 WL 2652496, at *4 (S.D.Fla. Feb.26, 2010). An inducement claim is such an example of independent tort "because it is a tort independent of a breach of contract claim in that it 'requires proof of facts separate and distinct from the breach of contract'." *Int'l Star Registry of Ill. v. Omnipoint Marketing*, 510 F.Supp.2d 1015 (S.D.Fla.2007) (quoting *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 537 (Fla. 2004)).

Moreover, the merger clause, and related economic loss doctrine, is inapplicable the fraudulent inducement is actually extraneous to the contract itself. See *Medalie v. FSC Sec.*, 87

F.Supp.2d 1295, 1305 (S.D.Fla.2000). For instance, if the ability of one party to negotiate fair terms is undermined by the defendant's fraudulent behavior, then a truly independent cause of action lies and is not barred by the economic loss rule. *Hotels of Key Largo, Inc. v. RHI Hotels, Inc.*, 694 So. 2d 74, 77 (Fla. Dist. Ct. App. 1997).

In *MeterLogic, Inc. v. Copier Solutions, Inc*., 126 F.Supp.2d 1346, 1362 (S.D.Fla.2000), while some of the defendant's alleged misrepresentations were the same allegations that formed the basis of the contract claim, other statements were not embodied in the contract. "When certain statements are not embodied in the parties' contracts, they are the types of allegations that fall under the justification for the fraud exception to the economic loss rule described in Hotels [of Key Largo]." *Id.* The Court therefore ruled that the fraudulent inducement claim survived. *Id.*

Furthermore, if a misrepresentation is made and relied upon in inducing the completion of the transaction, then it qualifies as a term of the bargain and the economic loss rule does not apply to bar fraudulent inducement under those circumstances. *Topp, Inc. v. Uniden Am. Corp*., 513 F. Supp. 2d 1345, 1349–50 (S.D. Fla. 2007) (Moreno, J.).

Here, Plaintiffs' allegations regarding Allstate's inducements and its silence relating to its planned policy initiatives are sufficient to exclude application of the merger clause and economic loss doctrine. Plaintiffs' fraudulent inducement claims are not re-packaged breach of contract claims, as Allstate's silence could not have been part of what any merger clause could avoid. Accordingly, Plaintiffs' Counts II and IV are not barred by the merger clause under Florida law. In the event this Court finds Plaintiffs' pleadings insufficient, however, Plaintiffs request the opportunity to allege more specific facts relating to Plaintiffs' inducement to satisfy any pleading requirements.

### D. Plaintiffs' Defamation Claim Should Not Be Dismissed.

As an initial matter, Allstate's claim that Plaintiffs' defamation claim fails for lack of attachment of the defamatory letter lacks any substance. Plaintiff quoted almost verbatim the language of the statement "that Cicciarelli had been terminated for cause for providing false information to the company and failing to issue Policies according to Allstate guidelines." *Id*. ¶ 52. (See Exhibit B ("The 'for-cause' termination reason is due to providing false information to the company and failing to issue policies according to Allstate guidelines.")). To the extent this Court requires attachment of the letter to provide a more adequate description of the statement, Plaintiffs request "leave to plead anew." *Five for Ent. S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1328–29 (S.D. Fla. 2012).

Moreover, sufficient facts have been pled and exist which would defeat any claim of qualified privilege. While a qualified privilege exists for statements made to an investigator that initiate an investigation, "[d]etermining issues of privilege is a question of balancing "the right of the individual, on one hand to enjoy [a] reputation unimpaired by defamatory attacks, and, on the other hand, the necessity, in the public interest, of a free and full disclosure of facts in the conduct of the legislative, executive, and judicial departments of government." *Fridovich v. Fridovich*, 598 So.2d 65, 68 (Fla.1992).

While the face of the defamatory letter may have been in compliance with Florida law, whether qualified privilege exists is properly decided by the court. *Nodar v. Galbreath*, 462 So.2d 803, 810 (Fla.1984)). A plaintiff must rebut the privilege by a showing of express malice which may be established indirectly, i.e., "by proving a series of acts which, in their context or in light of the totality of surrounding circumstances, are inconsistent with the premise of a reasonable man pursuing a lawful objective, but rather indicate a plan or course of conduct motivated by spite, ill-

will, or other bad motive." *Corp. Fin, Inc v Principal Life Ins Co*, 461 F Supp 2d 1274, 1293–94 (SD Fla, 2006) (denying summary judgment on a defamation claim based on communications to the Department of Insurance) *citing McCurdy v. Coll*is, 508 So.2d 380, 382 (Fla. 1st DCA 1987).

Here, the allegations support a claim for defamation. The "totality" of Allstate's contrived investigation and determination of non-compliance was a sham. Plaintiffs were in full communication with Allstate and in complete compliance with Allstate's internal policies, never provided false information to the company, and did not fail to issue Policies according to Allstate guidelines. The Complaint provides sufficient allegations on which malice may be established through proper proofs, and as such, Plaintiffs' defamation claim should not be dismissed. Again, if this Court finds Plaintiff's pleadings insufficient, Plaintiff should be afforded leave to amend.

## IV. CONCLUSION

Allstate's motion should be denied. Plaintiffs have sufficiently pled claims for fraud, violations of the FFA and defamation. Upon a determination by this Court of any pleading deficiencies, Plaintiffs respectfully request the opportunity to amend their Complaint.

Respectfully submitted,
**HUBBARD SNITCHLER & PARZIANELLO PLC**

/s/ Eric A. Parzianello
John A. Hubbard (FL Bar No. 100925)
Eric A. Parzianello (FL Bar No. 161225)
Attorney for Plaintiffs
999 Vanderbilt Beach Road, Suite 200
Naples, FL 34108
239.325.1802
eparzianello@hspplc.com
jhubbard@hspplc.com

Dated: May 12, 2021

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 12, 2021, I electronically filed the *Plaintiffs' Memorandum in Opposition to Defendant's Partial Motion to Dismiss Plaintiffs' Complaint* with the Clerk of the Court by using the CM/ECF system which shall serve a copy of the same on all attorneys and parties of record.

INGRID H. PONCE, ESQ. FBN:166774
STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
Attorney for Defendants
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
iponce@stearnsweaver.com
305.789.3200

                                                    */s/ Eric A. Parzianello*
                                                    Eric A. Parzianello
                                                    Attorney for Plaintiffs