UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No.: 21-60515-CIV-MORENO

PRESTIGE INSURANCE GROUP, LLC,
a Delaware Limited Liability Company and
ULISES CICCIARELLI, an individual,

      Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
An Illinois Corporation,

      Defendant.

_____/

**DEFENDANT ALLSTATE INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM**

Defendant Allstate Insurance Company ("Allstate") respectfully moves the Court for

summary judgment on Plaintiffs' remaining claims in this case, in support of which Defendant

submits this Motion and Supporting Memorandum and the accompanying Statement of

Undisputed Materials Facts.

**I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

Prestige Insurance Group, LLC ("Prestige Insurance" or the "Prestige Agency") was an

Allstate Insurance Company Exclusive Agent led by Ulises Cicciarelli.  Just days after the

Prestige Agency's official start date, a customer lodged a complaint with Allstate alleging that

someone employed by Prestige Insurance falsified her marital status on her auto insurance

application.  Allstate undertook an investigation of Prestige Insurance's sales practices that

uncovered a deliberate scheme by Plaintiffs to market and sell Allstate products prior to August

1, 2020—the date on which Plaintiffs were first authorized to operate as an agent of Allstate—in

1

order to improperly boost their eligibility for certain bonus compensation available to new agencies.  Allstate's investigation also corroborated the customer's complaint and uncovered numerous other instances in which representatives of the agency either falsified or manipulated customer information to sell Allstate products and increase the agency's commissions and bonus eligibility.  The agency's actions violated Plaintiffs' contracts with Allstate, so Allstate terminated the agency agreement for cause.  Plaintiffs were then given the time permitted under the agency agreement to sell the interest in the agency and paid all amounts to which they were entitled.

Plaintiffs' two remaining claims in this case for breach of contract and breach of implied covenant of good faith and fair dealing both stem from three separate contentions: (1) Allstate inappropriately terminated Plaintiff's agency agreement for cause; (2) Allstate did not pay Plaintiffs all the commissions and bonuses to which they were entitled; and (3) Allstate failed to provide Plaintiffs with the required time to sell the interest in Prestige Insurance.  Each of Plaintiffs' contentions is without merit.

As described further below, Allstate is entitled to summary judgment on Plaintiffs' claims for breach of contract and breach of implied covenant of good faith and fair dealing because the undisputed material facts show that Allstate acted in good faith, properly terminated its agency agreement with Plaintiffs for cause, and did not breach the agreements in any respect.  Because Plaintiffs cannot show a breach of any legal duty by Allstate, the Court should enter summary judgment in favor of Allstate.

## II.    SUMMARY OF UNDISPUTED MATERIAL FACTS

Plaintiff Ulises Cicciarelli ("Cicciarelli") and his company, Prestige Insurance Group, LLC, entered into an agreement with Allstate to operate an Allstate exclusive agency under which Prestige Insurance would act as an agent of Allstate in marketing, selling, and servicing

Allstate insurance and other approved products, and servicing the customers they solicit.  *See* Statement of Undisputed Material Facts ("SOF") ¶¶ 11, 13.  As an Exclusive Agent of Allstate, Plaintiffs were authorized to receive and accept applications for insurance on behalf of Allstate "during the term of [their] agreement."  SOF ¶ 14.  The terms of Plaintiffs' agency relationship with Allstate are memorialized in an R3001 Exclusive Agency Agreement ("R3001 Agreement") and described in additional documents incorporated by reference into the R3001 Agreement.  SOF ¶¶ 3-4.

Plaintiffs' agency relationship with Allstate was effective August 1, 2020.  SOF ¶ 10. The R3001 Agreement and accompanying documents set out underwriting and related guidelines governing the sale of Allstate insurance products, including the type of information that must be gathered from customers to determine whether they qualify under Allstate's insurance underwriting criteria.  SOF ¶ 16.[1]  The R3001 Agreement provides that the Prestige Agency will act as an agent of Allstate "in accordance with the provisions of [the R3001] Agreement" and that the agreement may be terminated with cause which includes (but is not limited to) a breach of the R3001 Agreement, fraud, forgery, or misrepresentation by the agency.  SOF ¶¶ 13, 21. The R3001 Agreement, and incorporated EA Manual, required the agency to, among other things: "obtain accurate and truthful information on all applications," SOF ¶ 17(b), "act honestly and fairly in all of the Company's business relationships," SOF ¶ 17(c) "comply with Company policies and procedures," SOF ¶ 17(d), "never falsify any state insurance department or

---

[1] Cicciarelli initially signed an R3001S Agreement on July 27, 2020, under which he would operate the agency as a sole proprietor.  On August 3, 2020, he signed an R3001C Agreement, which superseded and replaced the R3001S Agreement, to operate the agency with Prestige Insurance Group, LLC (rather than Cicciarelli in his individual capacity) as the agent and party to the agreement.  The "S" and "C" versions of the agreement are otherwise substantially identical in all material terms.  *See* Exhibits ("Exs.") 2, 3 to the concurrently-filed Appendix of Evidence.

Company documents, including applications," SOF ¶ 19, not "engage [ ] in any activity that is fraudulent or contrary to the law or the company policies and procedures," *id.,* and among other things, "not knowingly misrate or misclassify in order to provide a more attractive premium to make a sale." SOF ¶ 18.  Allstate rules also require agencies "[o]btain and transmit accurate and complete information to develop an accurate quote, which may include but is not limited to, prior insurance policy information (policy number, years with prior carrier, bodily injury limits, and driver's license number) for all operators."  SOF ¶ 20.  The agency is responsible for the actions of the staff members that it employs.  SOF ¶¶ 12, 15.

Just four days after the August 1, 2020 effective date of Plaintiffs' agency relationship, Allstate received a complaint from an Allstate customer who alleged that Plaintiffs intentionally manipulated her marital status (from married to separated) to make her eligible for an Allstate policy.  SOF ¶¶ 22-23.  Upon receiving that complaint, Allstate undertook an investigation.  SOF ¶¶ 25-26.  The investigation consisted of audits of the policies sold and eventually bound by the Prestige Agency, along with interviews with Cicciarelli, a number of staff members, and some customers.  *Id*.

Allstate's investigation revealed that prior to August 1, 2020, staff members of Prestige Insurance—at the direction of Cicciarelli—actively solicited and sold Allstate policies.  SOF ¶¶ 36-39.  Allstate concluded that this conduct violated Plaintiffs' R3001 Agreements with Allstate because Plaintiffs' staff were not permitted to receive or accept applications for Allstate insurance, nor were they permitted to market and sell Allstate products, prior to the effective date of Plaintiffs' agency.  SOF ¶ 13, 14.

Allstate's investigation also revealed several instances in which Prestige Insurance falsified or manipulated customer information to facilitate the sale of Allstate insurance products,

including falsification of marital status, misrepresentation of prior coverage information, and misuse of the multi-policy discount.  SOF ¶ 26.  This was done in an obvious effort to manipulate customer eligibility to enable Prestige Insurance to sell Allstate policies for which particular customers did not otherwise qualify, or to sell policies at a rate lower than the customer's eligibility justified, in order to earn commissions and qualify for bonuses.

Based on the finding of its investigation, on November 13, 2020, Allstate communicated to Cicciarelli that it was terminating its relationship with Prestige Insurance immediately for cause for "reasons that include providing false information to the company and failing to issue policies according to Allstate guidelines."  SOF ¶ 48.  Allstate then gave Cicciarelli 90 days— until March 1, 2021—to identify a buyer and sell the interest in Prestige Insurance.  SOF ¶ 52. On February 6 and 10, 2021, in response to an inquiry from Cicciarelli, Allstate advised him that he had left too little time to accomplish a sale, and to facilitate the transition of the customer accounts to another agent, prior to March 1, 2021.  SOF ¶ 54.

Under the terms of its agency agreement, Prestige Insurance was nonetheless eligible to receive a termination payment from Allstate, which Allstate has paid on a monthly basis since March 2021.  SOF ¶ 55.

## III.   LEGAL STANDARD

### A.   Summary Judgment Standard

Summary judgment is appropriate when there is "no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "To survive a motion for summary judgment, a plaintiff must establish each of the necessary elements of his or her cause of action and demonstrate the presence of genuine issues of material fact."  *Miranda v. B&B Cash Grocery Stores, Inc.*, 975 F.2d 1518, 1532 (11th Cir. 1992).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to

the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). The court must draw factual inferences in the light most favorable to the nonmovant.  *Witter v. Delta Air Lines, Inc*., 138 F.3d 1366, 1369 (11th Cir. 1998).  However, the nonmovant need not be given the benefit of every inference, but only every "reasonable" inference.  *DA Realty Holdings, LLC v. Tenn. Land Consultants, LLC*, 631 F. App'x 817, 820 (11th Cir. 2015).

### B.    Legal Standard for Breach of Contract and Implied Covenant of Good Faith and Fair Dealing

Under Florida law, a breach of contract claim requires the showing of: (1) the existence of a contract, (2) the material breach of that contract, and (3) damages resulting from the breach. *Vega v. T-Mobile USA, Inc*., 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *Friedman v. N.Y. Life Ins. Co*., 985 So.2d 56, 58 (Fla. 4th DCA 2008)).  When the language of a contract is clear and unambiguous, its interpretation or construction is a matter of law, and is therefore properly subject to disposition by summary judgment.  *See Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011) (holding that summary judgment was properly entered based on interpretation of an unambiguous contract).

Breach of an implied covenant of good faith and fair dealing is not an independent cause of action but attaches instead to the performance of a specific contractual obligation.  *Centurion Air Cargo, Inc. v. United Parcel Svc. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005); *Snow v. Ruden, McClosky, Smith, Schuster & Russell, P.A*., 896 So. 2d 787, 792 (Fla. 2d DCA 2005).  "[A] claim for a breach of implied covenant of good faith and fair dealing cannot be maintained under Florida law in the absence of a breach of an express term of a contract."  *Centurion*, 420 F.3d at 1152; *accord Burger King Corp. v. Weaver*, 169 F.3d 1310, 1316 (11th Cir. 1999).  Nor can an implied covenant of good faith and fair dealing be invoked "to override the express terms of the agreement between the parties."  *Insurance Concepts and Design, Inc. v. Healthplan Svcs., Inc*.,

785 So. 2d 1232, 1234 (Fla. 4th DCA 2001).  In addition, a breach of implied covenant of good

faith and fair dealing cannot be advanced when the allegations underlying that claim are

duplicative of the allegations supporting the breach of contract claim.  *Enola Contr. Servs., Inc. v.*

*URS Group, Inc.*, No. 5:08cv2-RS-EMT, 2008 U.S. Dist. LEXIS 33441, at *8-9, 2008 WL

1844612, at * 3 (N.D. Fla. Apr. 23, 2008); *Trief v. American General Life Ins. Co.*, 444 F. Supp.

2d 1268, 1270 (S.D. Fla. 2006); *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1319 (M.D. Fla. 2000).

## IV.    ARGUMENT

Allstate is entitled to summary judgment on Plaintiffs' claims because the undisputed

material facts show that Allstate properly terminated Plaintiffs' relationship with Allstate for

cause and otherwise complied with all of the terms of its agreements with Plaintiffs.

### A.    Plaintiffs Cannot Establish that Allstate Engaged in a Breach of Contract.

#### 1.    Allstate Had Cause to Terminate Plaintiffs' Agency Relationship.

Allstate properly terminated Prestige Insurance's R3001 Agreement for cause because

Cicciarelli and Prestige Insurance violated their agreements with Allstate in regard to the

agency's sales activities prior to the August 1, 2020 effective date of the R3001 Agreement, and

because the agency falsified customer information in the applications for insurance submitted to

Allstate.

##### a.    Plaintiffs' sales activities prior to August 1, 2020 violated their agreements with Allstate.

With regard to its actions prior to August 1, 2020, Prestige Insurance and its staff failed to

issue policies according to Allstate guidelines.  The R3001 Agreement permitted Plaintiffs to

"receive and accept . . . applications for insurance covering such classes of risk located in the

state(s) of Florida" "***during the term of [their R3001] Agreement***."  *See* SOF ¶ 14; Ex. 3

(emphasis added).  Nothing in the R3001 Agreement or other document permitted Plaintiffs to

solicit or sell Allstate products prior to the August 1, 2020 effective date of Plaintiffs' agency relationship with Allstate, except in the limited context of training taking place in the presence and under the supervision of an existing Allstate agent or Allstate representative.  SOF ¶¶ 8-9; Ex. 9 § II.E.  However, prior to August 1, 2020, at the direction of Cicciarelli, staff members of Prestige Insurance deliberately and actively solicited and sold Allstate policies for the benefit of the Prestige Agency, including cold-calling prospective customers, soliciting them for Allstate Insurance, collecting confidential customer information (including payment information) and completing applications for insurance, and then waiting until the effective date of Prestige Insurance to bind and obtain credit for their pre-opening sales efforts.  SOF ¶ 38.[2]  The only difference between how Plaintiffs operated before August 1, 2020 and after was that before August 1, Plaintiffs were unable to bind insurance policies. SOF ¶ 44.  Cicciarelli and other former members of his staff admitted that, prior to August 1, 2020, Prestige Insurance effectively operated as though it had been fully appointed and approved by Allstate to begin operations, save for persuading customers to wait until August 1 to bind policies.  *Id*.  Because Prestige Insurance and its staff had not been appointed and approved by Allstate to start operations, nor was there an agency agreement between Cicciarelli or Prestige Insurance and Allstate effective prior to August 1, 2020, Prestige Insurance's customer sales and solicitation efforts were unauthorized and inconsistent with the R3001 Agreement.

The sales activities of Prestige Insurance prior to August 1, 2020 also violated the R3001 Agreement with Allstate in regard to the representations Prestige Insurance staff made to

---

[2] To the extent Plaintiffs allege their activities prior to the August 1, 2020 opening of Prestige Insurance were within the scope of Cicciarelli's executed Pre-Appointment Agreement, such allegations are without merit as their sales activities were not conducted as part of a supervised education program or in the presence of a licensed and appointed Allstate representative.

customers while soliciting and selling Allstate policies before they were authorized to do so. Allstate agencies and their employees are expected "to act honestly and fairly" in all of the Company's business relationships, SOF ¶ 17(c), and service Allstate's customers in a manner consistent with the Company's goodwill, reputation, and overall business strategy.  SOF ¶ 15. But Allstate discovered numerous instances in which Prestige Insurance did not act honestly or fairly.  In particular, Plaintiffs' staff knowingly misled customers regarding their ability to obtain Allstate insurance prior to August 1, 2020, which was a violation of Allstate's policy on selling insurance. SOF ¶ 17(c), (f).  It also was a violation for Prestige Insurance to advise customers' purchase decisions (such as the date on which insurance be bound) based upon the needs of the agency as opposed to those of the customer.  *Id*.  Former Prestige Insurance personnel admitted that they were instructed to tell customers that their insurance policies could not be bound until August 1, 2020, not based on what was good for the customer, but rather to ensure that Prestige Insurance would receive credit for the sale.  SOF ¶ 42, Wilks Tr. (Ex. 16) 16:24-17:3 ("I was told once we are able to just get those customers to understand that we can't start the policy until the August 1st date, that we would still be paid for those sales, so we left it at that"); Wilks Tr. 36:20-37:1 ("Q: Were you given instructions on what to say to customers who wanted to bind prior to August 1, 2020?  A: I was just trying to get that rate to lock in until August the 1st.  Q: And who gave those instructions?  A: I would say probably both Ulises [Cicciarelli] and Glenn [Hunter]."); Rice Tr. (Ex. 15) 34:21-35:12 ("[I]f you got lucky enough where someone did say they did want a policy, I would advise them that we would save everything and give them a call back on August 1st to bind it. . . . [Prestige Insurance office manager] Glenn Hunter let us know to do it that way, too, because he didn't—he couldn't bind it. . . . [W]e couldn't actually sell the policy until August 1st, so he advised us to take the information and to tell them we'll call them

there on August 1st."). Moreover, if a customer wanted to bind their policy immediately, Prestige Insurance employee Joshua Rice testified that he would tell customers August 1, 2020 was "when [they were] eligible for this particular rate" in order to obtain the sale for the Prestige Agency. SOF ¶ 43. Allstate's investigation concluded that this dishonest conduct misled current and prospective customers as to their ability immediately to obtain insurance coverage through Allstate and violated Prestige Insurance's R3001 Agreement with Allstate.

b.    <u>Plaintiffs' sales activities prior to August 1, 2020 were not authorized or ratified by Allstate.</u>

Plaintiffs have argued that the sales activity of Cicciarelli and Prestige Insurance prior to August 1, 2020 was authorized by Allstate, including Field Sales Leader Kaylee Colvard. In particular, they claim that Colvard, in a text exchange with Cicciarelli, gave him permission to engage in full-fledged selling activity prior to August 1, 2020, provided that the insurance was not bound by the agency until after August 1, 2020. This contention has no merit.

First, Plaintiffs fail to identify any contract term either that Allstate violated or that gave them the right to engage in the sales-related activities prior to August 1, 2020. Indeed, Plaintiffs failed to identify in their interrogatory responses any provision of the R3001 Agreement that they contend Allstate violated. SOF ¶ 49.

Second, as noted above, what Plaintiffs did prior to August 1, 2020 violated their agreements with Allstate, and Colvard had no authority to permit otherwise. The R3001 Agreement was the "sole and entire agency agreement" between Allstate and Prestige and could "not be modified except by written agreement between the Company and Applicant that expressly states that it modifies this Agreement." SOF ¶¶ 3-4; Ex. 3, §§I.B, XXI.C. No such written amendment ever occurred. So any communication from Colvard had no bearing on Plaintiffs' obligations, nor did it limit or modify any of Plaintiffs' obligations to Allstate.

10

Third, Cicciarelli's assertion that his agency's activities prior to August 1, 2020 were authorized because Colvard was aware of, or signed off on what he was doing, is belied by the undisputed evidence. Cicciarelli previously worked as a manager for another Allstate agency and was aware that his staff could not sell Allstate insurance policies until *both* Prestige Insurance was appointed and authorized to do business on behalf of Allstate, *and* Prestige Insurance employees were themselves appointed by Allstate. SOF ¶¶ 5, 9; Cicciarelli Tr. (Ex. 8) 96:3-13 ("Q: The plan was, however, to hold those quotes that were being issued during July until August 1st; is that correct? A: We had no other choice but to do that. I didn't have an appointment until August 1st."). Prestige Insurance did not have authority to act on behalf of Allstate prior to August 1, 2020, nor did any employee of Prestige Insurance. SOF ¶¶ 8-9. Moreover, Colvard testified that her communication with Cicciarelli was based on her understanding that prior to August 1, 2020, Plaintiffs' employees would be "in Gerry Rivas' office working under Gerry Rivas' agency." SOF ¶ 46; Colvard Tr. (Ex. 18) 84:6-11, 28:24-29:6 ("Q: Was it your understanding that with the exception of binding policies, Mr. Cicciarelli was effectively running his Allstate agency prior to his effective date of his EA Agreement? A: No. The staff were in Gerry Rivas' office working under Gerry Rivas' agency."). But Cicciarelli's staff was not working under Gerry Rivas, as Rivas was "largely out of the picture" during July 2020. SOF ¶¶ 40-41; Cicciarelli Tr. 71:12-15. In fact, two former employees of Prestige Insurance who worked for Cicciarelli in July 2020 testified they did not even know who Gerry Rivas was. SOF ¶ 41; Rice Tr. 27:4-5 (". . . I'm confident that I don't remember—I have no recollection of who Gerry Rivas is."); Wilks Tr. 22:1-2 ("Q: Do you know who Gerry Rivas is? A: No.").

In short, the undisputed evidence shows that Allstate had cause to terminate Plaintiffs' agency relationship with Allstate because of its unauthorized selling activities prior to August 1, 2020.

> c.   Prestige Insurance's violation of Allstate's sales guidelines also provided Allstate with cause to terminate Plaintiffs' agency.

Regardless of whether Plaintiffs' sales activities prior to August 1, 2020 were authorized, Allstate also had cause to terminate Plaintiffs' agency relationship because a number of the policy applications that Prestige Insurance submitted to Allstate contained falsified information. Under the Plaintiffs' R3001 Agreement with Allstate, Prestige Insurance agreed to "record, transmit, and process insurance and Company Business" as outlined in the incorporated Supplement.  SOF ¶ 17(e); Ex. 3, §II.C.  Allstate's investigation of Plaintiffs revealed numerous policies where information submitted to Allstate by Plaintiffs' staff was falsified or policies were otherwise written in violation of Allstate's guidelines, in an apparent effort to make sales that the customer's qualifications might not have justified.  An audit of policies bound by Prestige Insurance in August 2020 identified several policies that appeared to contain falsified information.  SOF ¶ 26.  The issues included falsification of marital status, misrepresentation of prior insurance bodily injury limits, and misuse of the multi-policy discount.  *Id*.  Further investigation revealed additional details related to individual instances of Prestige Insurance's falsification of customer information.  SOF ¶¶ 27-34; Ex. A to Ex. 13.  To highlight just a few examples:

- **<u>Keith Hutson</u>** spoke to Prestige Insurance employee Prianca Little to complete his auto application.  Hutson was married to his wife Kimberly at the time and would have told Ms. Little he was married.  Ex. 13.  However, Hutson and his wife were listed as "separated" on

their policy, which resulted in a lower rate for Allstate insurance than they otherwise would have been eligible for if properly rated.  SOF ¶¶ 23-24; Ex. B to Ex. 11.

- **Lillian Cromuel** informed the representative of Prestige Insurance with whom she spoke that she and her husband were married and were both registered owners of their 2016 Dodge Ram.  SOF ¶ 33.  Yet, Mr. and Mrs. Cromuel were not listed as "married" on their policy, seemingly to avoid quoting Mr. Cromuel on the policy.  SOF ¶¶ 30, 34; Ex. H to Ex. 11.  As spouse and co-owner of the vehicle, Mr. Cromuel was required to have been listed in the application for insurance and on the resulting policy, but he was not.  SOF ¶ 34.

- **Icilda Lawrence** was listed as "separated" on her insurance application, when she was in fact, married.  SOF ¶ 28; Ex. A to Ex. 13.  Her husband, Fitzroy, was listed as the insured, while she was listed not as a spouse, but as a "friend."  SOF ¶ 28; Ex. C to Ex. 11. This was inconsistent with a prior Allstate policy where Mr. Lawrence was listed as her "spouse." SOF ¶ 28; Ex. D. to Ex. 11.

The audit also revealed instances where Prestige Insurance staff provided prospective customers with a multi-policy discount, even when multiple policies were never purchased or requested.  SOF ¶ 26.  Former Prestige Insurance employee Rice testified that, at times, adding a renters' insurance policy to a requested auto policy would reduce customers' rates.  SOF ¶ 35; Rice Tr. 73:4-9.  Rice stated that he was aware of instances where Prestige Insurance staff members improperly applied a multi-policy discount and bound policies when customers did not want or did not purchase additional policies to make them eligible for the discount, even though it was a violation of Allstate policy.  SOF ¶ 35.

As the named party in the R3001S Agreement, and "Key Person" in Prestige Insurance's R3001C Agreement with Allstate, Cicciarelli was "the person ultimately responsible for all sales

and service activities of [his] LSP[s] since [they were] acting under [his] direction and control."
SOF ¶ 12; Ex. 4 at 25.  Cicciarelli, therefore, was responsible for what happened in his agency.
While he may claim that he was scrupulous and exercised due care to conduct the affairs of
Prestige Insurance in compliance with the R3001 Agreement and Allstate's underwriting
requirements, the undisputed record shows otherwise.  It further shows that Allstate had cause—
which Cicciarelli and Prestige agreed would include, but "not [be] limited to, breach of [the]
Agreement, fraud, forgery, misrepresentation . . ."—to terminate Prestige Insurance's
relationship with Allstate.[3]

### 2. Allstate Paid Plaintiffs All The Commissions and Bonuses to Which They Were Entitled.

Allstate committed no breach of the R3001 Agreement in regard to its compensation of
Plaintiffs.  Under the R3001 Agreement, "[t]he sole compensation . . . for services rendered
pursuant to this Agreement [are] the Commissions set forth in the Supplement, which may be
amended from time to time."  SOF ¶¶ 3-4; Ex. 3 § XV.  The Supplement for the R3001
Agreement (incorporated by reference) states that if the Company terminates the R3001
Agreement immediately for cause, an Agent is not eligible for any bonus compensation starting
with the year in which the incident occurred that led to the termination through the year in which
the Company has terminated the R3001 Agreement.  SOF ¶¶ 3-4; Ex. 5, §3(6.0). Here, the very
issues that led to the termination of the agency relationship—Plaintiffs' falsification of customer
information and selling outside of Allstate guidelines (i.e., selling insurance prior to the August
1, 2020 effective date of the R3001 Agreement)—improperly enhanced the bonuses they allege

---

[3] SOF ¶ 21; Ex. 3, § XVII.B.3.  The R3001 Agreement states that "[t]he list of examples of cause
[stated in the Agreement] shall not be construed to exclude any other possible ground as cause
for termination."  Ex. 3, § XVII.B.3.

they are owed.  So Allstate acted well within its contractual rights by declining to pay Plaintiffs

any bonus compensation.  Under Florida law, "when the terms of a voluntary contract are clear

and unambiguous, . . . the contracting parties are bound by those terms, and a court is powerless

to rewrite the contract to make it more reasonable or advantageous for one of the contracting

parties."  *Ernie Haire Ford, Inc. v. Ford Motor Co*., 260 F.3d 1285, 1290-91 (11th Cir. 2001)

(quoting *Emergency Assocs. of Tampa, P.A. v. Sassano*, 664 So.2d 1000, 1003 (Fla. 2d DCA

1995)).  Since Plaintiffs were paid pursuant to their R3001 Agreement with Allstate, their claim

for unpaid commissions and bonuses fails as a matter of law.

### 3. Allstate Provided Plaintiffs with the Required Time to Sell the Interest in Prestige Insurance.

Under the terms of the R3001 Agreement and incorporated documents, Plaintiffs had an

economic interest in the Allstate customer accounts developed under the Agreement.  SOF ¶ 50;

Ex. 3 §XVI.B.  Upon termination of an agency, agents have the option of receiving a termination

payment or seeking to transfer an economic interest in the agency to a buyer approved by

Allstate.  SOF ¶ 50; Ex. 4 at 30; Ex. 3, § XVI.B.[4]  The "transfer of interest in the [R3001]

Agreement requires prior written consent of the Company."  SOF ¶ 50; Ex. 5, § 4.1.  Such

consent is "given in the Company's sole discretion and the Company's decision as to whether or

not to render such consent [is] final."   SOF ¶¶ 3-4, 50; Ex. 3 §§XVI.B, XVI.C.; Ex. 5 §4.1,

3(6.0); Ex. 4 at 30.  Approval of a proposed transfer of an agency's entire economic interest is

conditioned upon the termination of the R3001 Agreement and the execution of a current agency

agreement by the proposed transferee. SOF ¶¶ 3-4; Ex. 3 §XVI.C.

---

[4] Under the R3001 Agreement, Allstate owns the customer accounts and renewals; agencies have
an economic interest that enables them to sell and service those policies that can be transferred to
a buyer approved by Allstate.  *See* SOF ¶¶ 3-4 & Ex. 3 § XVI.B.

Under the terms of the R3001 Agreement, and reiterated in Plaintiffs' termination letter, if Cicciarelli elected to sell his economic interest to an approved buyer, the sale needed to be finalized on or before March 1, 2021.  SOF ¶ 52; Ex. A to Jordan Dec.; Ex. 4 at 36.  Plaintiffs have not provided any evidence that they had located even a single potential buyer willing to purchase his economic interest prior to the March 1 deadline, nor at any point prior to March 1, 2021 did Plaintiffs submit a proposed buyer of the economic interest in Prestige Insurance for Allstate's consideration.  SOF ¶ 53.  Indeed, Cicciarelli testified that he could not even recall the name of *any* prospective buyer.  *Id*.  Nor had he agreed on a price for the agency or negotiated an agreement with any prospective buyer.  *Id*.  While Plaintiffs may argue that Allstate breached the R3001 Agreement by affording him too little time to sell the interest, that argument fails for two reasons.  First, while Allstate has sole discretion to approve or disapprove of a proposed buyer of an economic interest, Allstate never had the chance to exercise that right because no buyer was ever presented.  *Id*.  In the absence of proof that Plaintiffs presented a ready, willing, and able buyer that Allstate failed to consider, there is no right of Prestige Insurance that Allstate could have violated.

Second, the process of considering a proposed buyer, evaluating that person's qualifications and capability, obtaining the necessary licensure and training, establishing an office, hiring staff, and taking other actions necessary to establish an agency takes significant time, of which Allstate concluded there was too little left as of February 6, 2021, when Cicciarelli contacted Allstate about a hypothetical sale.  SOF ¶ 54.

For those reasons, Allstate is entitled to summary judgment on Plaintiffs' claim with regard to his effort to sell the economic interest in Prestige Insurance.

16

> 4.   **Allstate Complied with its Obligations to Pay Prestige Insurance a Termination Payment.**

Under the terms of its R3001 Agreement, because Prestige Insurance did not transfer its economic interest to a buyer, it was eligible to receive a termination payment from Allstate.  SOF ¶¶ 3-4, 49; Ex. 4 at 30; Ex. 3 § XVI.B.  Since March 2021, Allstate has made regular monthly payments of the termination payment to Prestige Insurance.  SOF ¶ 55.  Accordingly, Allstate has satisfied its obligation to pay Prestige Insurance a termination payment.

> B.   **Allstate Did Not Breach an Implied Covenant of Good Faith and Fair Dealing.**

Plaintiffs' claim for breach of implied covenant of good faith and fair dealing is barred because it runs contrary to language of the R3001 Agreement and because the claim is duplicative of Plaintiffs' breach of contract claim.

Plaintiffs did not and cannot identify a provision of the R3001 Agreement that involves the exercise of discretion in a way that might implicate an implied covenant of good faith and fair dealing.  SOF ¶ 49.  Allstate complied with the express terms of the contract, which allowed Allstate to terminate the agreement "with cause."  SOF ¶ 3-4, 22; Ex. 3 § XVII.B.3.  In evaluating Allstate's decision to terminate Plaintiffs' agency agreement, the Court must simply address whether Allstate had cause to do so under the express terms of the contract.  If cause exists, as defined in the Agreement, then Allstate's actions constituted the Company's legitimate exercise of its contractual rights.  Because the Court will decide the parties' respective legal rights by reference to the express language of the contract, a covenant of good faith and fair dealing cannot be implied to limit or modify Allstate's termination right.  As a consequence, Plaintiffs' claim under an implied duty of good faith and fair dealing associated with the termination of the R3001 Agreement is improper.  *See Burger King*, 169 F.3d at 1316 ("The Florida appellate courts have also held that '[t]he implied obligation of good faith cannot be used

to vary the terms of an express contract.'") (citations omitted); *Bacardi U.S.A., Inc. v. Major Brands, Inc.*, No. 13-20791-CIV, 2014 WL 2200042, at *12 (S.D. Fla. Mar. 20, 2014) (granting summary judgment as to counterclaim for breach of the covenant of good faith and fair dealing on basis that the covenant could not be invoked to override the express terms of the agreement between the parties, and the plain terms of the agreements permitted their termination); *Insurance Concepts & Design*, 785 So. 2d at 1234 ("[T]he implied covenant of good faith should not be invoked to override the express terms of the agreement between the parties."); *City of Riviera Beach v. John's Towing*, 691 So. 2d 519, 521 (Fla. 4th DCA 1997) ("The implied obligation of good faith cannot be used to vary the terms of an express contract.").

Even if the implied covenant of good faith and fair dealing applied to Allstate's for-cause termination of Plaintiffs' R3001 Agreement (it does not), there is no evidence that Allstate acted in bad faith.  Following a customer complaint, Allstate launched an internal investigation of Prestige Insurance.  SOF ¶¶ 22, 25.  The investigation uncovered numerous instances of improper conduct and violations of Allstate policy. SOF ¶¶ 26, 47; Ex. A to Ex. 13.  Based on the investigation's findings, Allstate terminated Plaintiffs' R3001 Agreement as expressly permitted under the contract.  SOF ¶¶ 21, 47-48.  While Plaintiffs allege in their First Amended Complaint that Allstate was motivated to find grounds to terminate the agency relationship by a desire to deny the payment of bonus compensation to Prestige Insurance, they can offer no evidence of this, and they conflate cause and effect.  Specifically, Allstate withheld bonus compensation to Prestige Insurance because Allstate terminated the agency for cause for the various violations described above; the denial of bonus compensation was a contractual right that Allstate exercised and a logical consequence stemming from Plaintiffs' violations.  SOF ¶¶ 3-4; Ex. 5, §3(6.0).  In

no other respect did Allstate breach an implied covenant of good faith and fair dealing as to Plaintiffs.

Allstate also is entitled to summary judgment on Plaintiffs' claim for breach of an implied duty of good faith and fair dealing because this claim is duplicative of Plaintiffs' breach of contract claim. *See Bradman v. Mental Health Network, Inc*., No. 08-61376-CIV, 2008 U.S. Dist. LEXIS 97575, at *6, 2008 WL 5110525, at *2 (S.D. Fla. Dec. 2, 2008) ("[A] breach of implied covenant of good faith and fair dealing cannot be advanced when the allegations underlying that claim are duplicative of the allegations supporting a breach of contract claim"). Plaintiffs' basis for their breach of implied duty of good faith and fair dealing claim is identical to their breach of contract claim, as are the remedies they seek. *Compare* Amended Complaint [ECF 19] ¶¶ 88-96 (breach of contract claim), *with* ¶¶ 107-119 (breach of implied duty of good faith). Thus, Plaintiffs' claim for breach of implied covenant of good faith and fair dealing fails as a matter of law.

**V.      Conclusion**

For the reasons described herein, summary judgment should be granted on all counts in favor of Allstate.

//

Dated: September 2, 2022                    Respectfully submitted,

By: */s/ Ingrid H. Ponce*_____
     INGRID H. PONCE, ESQ.
     Florida Bar No. 166774
     iponce@stearnsweaver.com
     STEARNS WEAVER MILLER WEISSLER
      ALHADEFF & SITTERSON, P.A.
     Museum Tower, Suite 2200
     150 West Flagler Street
     Miami, Florida  33130
     Telephone:  (305) 789-3200
     Facsimile:   (305) 789-3395

     ROBERT G. LIAN, JR., ESQ.
     DC Bar No. 446313 (*pro hac vice*)
     blian@akingump.com
     ANDREW D. GEAR, ESQ.
     DC Bar No. 241950 (*pro hac vice*)
     agear@akingump.com
     KATHERINE I. HEISE, ESQ.
     DC Bar No. 1672558 (*pro hac vice*)
     kheise@akingump.com
     AKIN GUMP STRAUSS HAUER & FELD LLP
     2001 K Street, N.W.
     Washington, DC  20006
     Telephone:  (202) 887-4000
     Facsimile:   (202) 887-4288

     *Attorneys for Defendant*
     *ALLSTATE INSURANCE COMPANY*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 2nd day of September, 2022, a true and correct copy of the foregoing was served by electronic mail via transmission of Notices of Electronic Filing generated by CM/ECF to: Eric A. Parzianello, Esquire, John Hubbard, Esquire, and Zane Thompson, Esquire (eparzianello@hspplc.com; jhubbard@hspplc.com; zthompson@hspplc.com) Hubbard Snitchler & Parzianello PLC, 999 Vanderbilt Beach Road, Suite 200, Naples, Florida 34108.

*/s/ Ingrid H. Ponce*
INGRID H. PONCE, ESQ.