UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No.: 21-60515-CIV-MORENO

PRESTIGE INSURANCE GROUP, LLC,
a Delaware Limited Liability Company and
ULISES CICCIARELLI, an individual,

      Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
An Illinois Corporation,

      Defendant.
_____/

**DEFENDANT ALLSTATE INSURANCE COMPANY'S**
**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT**
**OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Allstate Insurance Company ("Allstate") submits this Statement of Undisputed Material facts in Support of its Motion for Summary Judgment in the above-captioned action.

**A.    Background on Allstate**

1. Allstate is a property and casualty insurance company that provides insurance and related protection products to customers nationwide, including in Florida. Declaration of Char Jordan ("Jordan Dec.") (**Ex. 1**)[1] at ¶ 4.

---

[1] Exhibit references are to the concurrently-filed Appendix of Evidence. Certain exhibits have been redacted as indicated thereon to remove personal identifying information, proprietary or trade secret information, and confidential customer information. If the Court has questions about the redacted material, or wishes to see an unredacted version of any document, Defendant will provide these for an *in camera* review.

2. Allstate distributes its products, and provides service to customers, through a variety of channels, including Exclusive Agent independent contractors. *Id.* at ¶ 6.

3. Allstate's relationship with Exclusive Agents, including Plaintiffs, is memorialized in a written agreement called an R3001 Exclusive Agent Agreement ("R3001 Agreement"). *See* **Exs. 2-3**.

4. Incorporated by reference into the R3001 Agreement is an Independent Contractor Manual ("Manual") (**Ex. 4**), Supplement to the R3001 Agreement ("Supplement") (**Ex. 5**), and Agency Standards (**Ex. 6**) (collectively, "Incorporated Documents").

**B.    Plaintiffs' Relationship with Allstate Prior to August 1, 2020**

5. Prior to becoming an Allstate agent, Plaintiff Ulises Cicciarelli ("Cicciarelli") worked as an Office Manager for Paragon Insurance Group, Inc., an Allstate agency. Ex. 2 to Cicciarelli Tr. (**Ex. 7**).

6. As part of training to become an Office Manager, Cicciarelli received training from Allstate regarding quoting and binding of policies. Cicciarelli Tr. (**Ex. 8**) at 18:24-19:4.

7. On May 20, 2020, Cicciarelli executed a Pre-Appointment Agreement with Allstate, which governed his relationship with Allstate from May 20, 2020 to August 1, 2020, prior to the opening of Cicciarelli's Allstate agency, Prestige Insurance Group, LLC ("Prestige Insurance"). Ex. 9 to Cicciarelli Tr. (**Ex. 9**). Cicciarelli entered into the Pre-Appointment Agreement after reaching an agreement to purchase the economic interest in the Rivas Agency, an existing Allstate agency operated by Gerardo Rivas. Cicciarelli Tr. 49:7-51:13.

8. Cicciarelli agreed that during the term of the Pre-Appointment Agreement, both Cicciarelli and his employees were only authorized to "engage in selling and servicing activities during a supervised education program." *See* Ex. 9., §II.E.

9. Because prior to August 1, 2020, Cicciarelli and his staff were not appointed

representatives of Allstate for the Rivas Agency, and Cicciarelli's agency, Prestige Insurance, had not yet been appointed as an Allstate agency, neither Cicciarelli nor his staff could bind policies prior to August 1, 2020. *See* **Ex. 10**; *see also* Cicciarelli Tr. 59:5-15, 61:10-14, 70:17-24, 71:19-21, 96:3-13.

### C. Plaintiffs' R3001 Exclusive Agency Agreement with Allstate

10. Effective August 1, 2020, Prestige Insurance operated an Allstate Exclusive Agency under an R3001 Exclusive Agent Independent Contractor Agreement with Allstate. *See* Exs. 2-3.

11. Plaintiff signed a R3001S Agreement with Allstate on July 23, 2020, under which he would operate the agency as a sole proprietor. *See* Ex. 2.[2] On August 3, 2020, he signed an R3001C Agreement to operate the agency with Prestige Insurance, a limited liability corporation (rather than Cicciarelli individually), as the agent. *See* Ex. 3. The R3001S and R3001C Agreements are otherwise identical in all material terms.

12. As the "Key Person" listed in the R3001C Agreement, *see* Ex. 3 § II.E, Cicciarelli was the "person ultimately responsible for all sales and service activities of [his] LSP[s] since [they were] acting under his direction and control." *See* Ex. 4 at 25.

13. In the R3001 Agreement, Plaintiffs agreed to act as an agent for Allstate in soliciting, selling, and servicing Allstate insurance and other approved products "in accordance with the provisions of [the R3001] Agreement." *See* Ex. 3, § II.A.

14. During the term of the R3001 Agreement, Plaintiffs were "authorized, on behalf of the Company, during the term of this Agreement, to receive and accept…applications for insurance covering the classes of risks located in the state(s) of Florida." *Id*., § I.A.

---

[2] The R3001S Agreement was Exhibit B to Plaintiffs' First Amended Complaint. [ECF 19-2].

15. Plaintiffs further agreed to service Allstate's customers in a manner consistent with the Company's goodwill, reputation, and overall business strategy. *See id.*, §II.B, and that Plaintiffs were "ultimately responsible for all sales and service activities of [their] LSPs." Ex. 4 at 25. "LSP" stands for "Licensed Sales Producer" employed by the agency.

16. The R3001 Agreement and Incorporated Documents set out underwriting and related guidelines governing the sale of Allstate insurance products, including the type of information that must be gathered from customers to determine whether they qualify under Allstate's insurance underwriting criteria. *See* Exs. 2-6.

17. Among the responsibilities and obligations of an Exclusive Agent are:

   a. oversight and supervision of support staff; Ex. 3, §III;

   b. obtaining accurate and truthful information on all applications, Ex. 4 at 25;

   c. acting honestly and fairly in all of the Company's business relationships, *id.* at 44;

   d. comply with Company policies and procedures, *id.* at 25;

   e. recording, transmitting, and processing insurance and Company business as outlined in the EA Supplement, Ex. 3, §II.C; and

   f. issuing policies consistent with Allstate's standards, Ex. 4 at 43.

18. Allstate Exclusive Agents are prohibited from withholding information from Allstate that could be considered material in the Company's decision to issue coverage and from knowingly misrating or misclassifying customers in order to provide a more attractive premium or make a sale. Ex. 4 at 44-45.

19. Agents are also prohibited from falsifying any state insurance or Company documents, including signatures, and from engaging in conduct that is fraudulent or contrary to the law or the company's policies or procedures. *Id*. at 44.

20. Allstate rules require agencies to "[o]btain and transmit accurate and complete information to develop an accurate quote, which may include but is not limited to, prior insurance policy information (policy number, years with a prior carrier, bodily injury limits, and driver's license number) for all operators." *See* Ex. 6 at 18.

21. The R3001 Agreement may be terminated by either party with 90-days' advance notice to the other party, or immediately by Allstate for "cause," which is defined to include, but is not limited to, breach of the R3001 Agreement, fraud, forgery, misrepresentation, or conviction of a crime. *See* Ex. 3, § XVII.B.3.

**D.    Allstate's Investigation and Termination of Plaintiffs' Contracts**

22. On August 5, 2020, Allstate received a complaint via a telephone call from a customer, Kimberly Hutson, who reported that a representative of Prestige Insurance falsified her marital status on her auto application to state that she was not married. Declaration of Joseph Cackowski ("Cackowski Dec.") (**Ex. 11**), at Ex. A.

23. She reported that her husband, Keith Hutson, spoke to Prianca Little, a representative of Prestige Insurance, to complete his auto application. Ex. A. to Cackowski Dec.; Declaration of Keith Hutson ("Hutson Dec.") (**Ex. 12**), ¶ 9.  Keith Hutson was married to Kimberly at the time, but were listed as "separated" on their policy.  Ex. B to Cackowski Dec.; Hutson Dec., ¶¶ 5, 7-8.

24. Allstate Field Business Compliance Consultant Joseph Cackowski reviewed the Hutsons' Consolidated Insurance Profile ("CIP") (a consolidated view of the consumer report results run by an agency) and insurance policy information and observed that if Mr. Hutson's score had been used to rate the policy that it would have resulted in a higher premium. Cackowski Dec., ¶ 5.

25. Ms. Hutson's complaint prompted Allstate to undertake a further audit of applications for insurance submitted by Prestige Insurance. Declaration of Izabela Zeglen ("Zeglen Dec.") (**Ex.**

**13**), ¶ 4  Cackowski conducted an audit that consisted of a review of 100 policies submitted by Prestige Insurance. Cackowski Dec., ¶ 8.

26. Cackowski's audit revealed several instances in which Prestige Insurance falsified or manipulated customer information to facilitate the sale of Allstate insurance products, including the falsification of marital status, misrepresentation of prior coverage information, and misuse of the multi-policy discount.  Cackowski Dec., ¶¶ 8-9.

27. Cackowski's audit caused Allstate to undertake formal investigation of Prestige Insurance, which was led by Senior Investigator Izabela Zeglen.  *Id*. at ¶ 17; Zeglen Dec. ¶ 5.

28. An application for insurance submitted to Allstate under Cicciarelli's agent number for customer Icilda Lawrence listed her marital status as "separated," and her relationship to her husband, Fitzroy Lawrence, as "friend."  Ex. C to Cackowski Dec.  Ms. Lawrence was, and remains, married to Mr. Lawrence.  Ex. A, p. 4 to Zeglen Dec. This was inconsistent with a prior Allstate policy, where Mr. Lawrence was listed as her "spouse."  Ex. D to Cackowski Dec.

29. Cackowski's audit revealed that Joshua Rice was the employee of Prestige Insurance who quoted the Lawrence's policy.  Cackowski Dec., ¶ 11.

30. Glen Hunter, who managed Prestige Insurance for Cicciarelli, was listed as the agent who bound an insurance policy for Lillian Cromuel without including her husband, Quintis Cromuel, on the insurance policy.  Cackowski Dec., ¶ 13-14.

31. Cackowski's audit revealed that Jonathan Wilks was the employee of Prestige Insurance who quoted Ms. Cromuel the policy.  Cackowski Dec., ¶13; *see also* Declaration of Lillian Cromuel ("Cromuel Dec.") (**Ex. 14**) ¶ 2.

32. A search of public records by Cackowski revealed that Mr. and Mrs. Cromuel were married and that Mr. Cromuel was the co-owner of the 2016 Dodge Ram listed on Mrs.

Cromuel's policy.  Exs. E-F to Cackowski Dec.

33. Ms. Cromuel also confirmed that she is (and was) married to Quintis Cromuel and he is the co-owner of their 2016 Dodge Ram.  Cromuel Dec., ¶¶ 3-4.

34. As a spouse and co-owner of the vehicle, Mr. Cromuel was required to have been listed in the application for insurance and on the resulting policy, he was not listed or rated on the policy when it was bound by Prestige Insurance's staff.  Cackowski Dec., ¶¶ 14-15.

35. Former Prestige Insurance employee Joshua Rice testified that he was aware of instances where Prestige Insurance staff members applied a multi-policy discount to customers who did not want or did not purchase additional policies to make them eligible for a discount, even though this was a known violation of Allstate policy.  Rice Tr. (**Ex. 15**) at 72:21-73:13, 74:3-7; *see also* Wilks Tr. (**Ex. 16**) at 51:17-21, 52:4-8.

36. Cackowski's audit included a new business query that showed that between August 1, 2020 (the opening date of the agency) and August 28, 2020, the Agency bound 808 policies, 264 of which were bound on August 1, 2020 alone.  Cackowski Dec., ¶16.

37. Prestige Insurance bound a large number of policies on August 1, 2020 that were quoted by Prestige Insurance staff under former EA Gerardo Rivas' agency number.  *Id*.

38. Prior to August 1, 2020, Prestige Insurance staff members actively solicited and sold Allstate policies, including by cold-calling prospective customers, soliciting them for Allstate Insurance, collecting confidential customer information (including payment information), and completing quotes for insurance with the intention of delaying binding until on or after August 1, 2020, often without the need for further contact with the customer to finalize the sale.  Cicciarelli Tr. 80:22-81:3, 82:23-84:3, 143:23-144:12; Rice Tr. 30:24-31:20, 34:21-35:2, 52:17-53:15; Wilks Tr. 32:18-22.

39. Cicciarelli placed his staff under Gerardo Rivas' agency number so that his staff could solicit, quote, and accept customer applications prior to August 1, 2020, but instructed his staff not to bind until the effective date of Prestige Insurance. Cicciarelli Tr. 58:3-7, 96:3-13, 143:23-144:12; Rice Tr. 34:21-35:2, 52:17-25; Wilks Tr. 32:18-22.  All or most of these activities took place without the presence or supervision of an appointed Allstate agent or Allstate employee. Rice Tr. 26:3-27:5, 39:4-9; 41:12-42:10, 42:18-24; Wilks Tr. 32:18-33:14.

40. Gerardo Rivas and his appointed agents did not train Prestige Insurance employees in July 2020. Cicciarelli Tr. 63:16-23, 69:14-21; Rice Tr. 23:23-25; Wilks Tr. 32:18-33:14.

41. Gerardo Rivas had little, if any, involvement with Prestige Insurance employees and their operations in July 2020, to the point that two former Prestige Agency employees testified they did not even know who Gerry Rivas was.  Cicciarelli Tr. 71:12-18; Rice Tr. 27:4-5; Wilks Tr. 22:1-2.

42. Cicciarelli and his agency manager, Glen Hunter, directed and authorized staff of Prestige Insurance, including Joshua Rice and Jonathan Wilks, to tell customers that their insurance policies could not be bound until August 1, 2020.  Rice Tr. 34:21-35:12; Wilks Tr. 16:24-17:3, 36:20-37:1.

43. If a customer wanted to bind their policy immediately, Joshua Rice testified that he would tell customers that August 1, 2020 was "when [they were] eligible for this particular rate" in order to obtain the sale for Prestige Insurance.  Rice Tr. 36:20-37:5.

44. Cicciarelli and his two former staff members who appeared for deposition (Wilks and Rice) each admitted that the only difference in how Prestige Insurance operated after August 1, 2020 was that they would attempt to "bind" insurance—i.e., finalized contracts for insurance coverage—when they would issue a quote,  whereas before August 1, 2020, they could only sell

policies to customers through Prestige Insurance that would become bound on or after August 1, 2020.  Cicciarelli Tr. 143:23-144:12; Rice Tr. 52:17-25, 53:11-15; Wilks Tr. 31:1-6; 32:18-22.

45. In a text exchange between Kaylee Colvard and Ulises Cicciarelli, Colvard advised Cicciarelli he could not quote and bind under his own agency number prior to August 1, 2020. Ex. 10 to Cicciarelli Tr. (**Ex. 17**).

46. Colvard testified that statements she made to Cicciarelli suggesting that Cicciarelli's staff could engage in sales activities prior to August 1, 2020 were based on her understanding that Cicciarelli and his staff were in "Gerry Rivas' office working under Gerry Rivas' agency." She also testified that Gerry Rivas was responsible for supervising and overseeing the activity that went on his agency.  Colvard. Tr. (**Ex. 18**) at 84:6-11, 85:1-5.

47. After considering the action of Prestige Insurance that was revealed in her investigation, Zeglen found that the evidence was sufficient to support terminating Prestige Insurance's R3001 Agreement with Allstate. Zeglen Dec., ¶ 7.

48. In a letter dated November 13, 2020, Allstate notified Cicciarelli that it was terminating Prestige Insurance's R3001C Agreement for cause for "reasons that include providing false information to the company and failing to issue policies according to Allstate guidelines." Ex. A to Jordan Dec.

49.     In their responses to Allstate's First Set of Interrogatories to Plaintiff, Plaintiffs failed to identify any provision of the R3001 Agreement and incorporated documents that Allstate violated.  *See* **Ex. 19**, ¶¶ 4-5 (Cicciarelli Responses); *see also* **Ex. 20**, ¶¶ 4-5 (Prestige Responses).

**E.     Plaintiffs' Efforts to Transfer the Interest in the Agency**

50. Upon termination of R3001 Agreement, agents have the option of receiving a termination

payment or seeking to transfer an economic interest in the agency to a buyer approved by Allstate. Ex. 4 at 30; Ex. 3, §XVI.B.

51. Allstate has the sole right, in its exclusive judgment, to approve a buyer. Ex. 3, §§XVI.B, XVI.C; Ex. 5, §4.1, 3(6.0); Ex. 4 at 31.

52. Under the terms of the R3001 Agreement and as communicated in the termination letter, Prestige Insurance was given 90 days, until March 1, 2021, to identify a buyer and sell the economic interest in Prestige Insurance. Ex. A to Jordan Dec.; Ex. 4 at 36.

53. Cicciarelli testified that he did not present a buyer to Allstate. He could not recall the name of any prospective buyer, and had not agreed on a price for the agency or negotiated an agreement with any prospective buyer. Cicciarelli Tr. 181:22-185:7.

54. On February 6 and 10, 2021, in response to an inquiry from Cicciarelli, Allstate advised him that he had left too little time to accomplish a sale, and to facilitate the transition of the customer accounts to another agent, prior to March 1, 2021. *See* **Ex. 21** (Sylvester e-mail).

55. Cicciarelli remained eligible to receive a termination payment, which Allstate has paid to him on a monthly basis since March 2021, in accordance with its established policies. Jordan Dec., ¶ 23; Ex. 4 at 31; Ex. 3, §XVI.B.

//

Dated:  September 2, 2022          Respectfully submitted,

By: */s/ Ingrid H. Ponce*
INGRID H. PONCE, ESQ.
Florida Bar No. 166774
iponce@stearnsweaver.com
STEARNS WEAVER MILLER WEISSLER
 ALHADEFF & SITTERSON, P.A.
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida  33130
Telephone:  (305) 789-3200
Facsimile:   (305) 789-3395

ROBERT G. LIAN, JR., ESQ.
DC Bar No. 446313 (*pro hac vice*)
blian@akingump.com
ANDREW D. GEAR, ESQ.
DC Bar No. 241950 (*pro hac vice*)
agear@akingump.com
KATHERINE I. HEISE, ESQ.
DC Bar No. 1672558 (*pro hac vice*)
kheise@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, DC  20006
Telephone:  (202) 887-4000
Facsimile:   (202) 887-4288

*Attorneys for Defendant*
*ALLSTATE INSURANCE COMPANY*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 2nd day of September, 2022, a true and correct copy of the foregoing was served by electronic mail via transmission of Notices of Electronic Filing generated by CM/ECF to: Eric A. Parzianello, Esquire, John Hubbard, Esquire, and Zane Thompson, Esquire (eparzianello@hspplc.com; jhubbard@hspplc.com; zthompson@hspplc.com) Hubbard Snitchler & Parzianello PLC, 999 Vanderbilt Beach Road, Suite 200, Naples, Florida 34108.

                                                                                           */s/ Ingrid H. Ponce.*
                                                                                           INGRID H. PONCE ESQ.