# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No.: 21-60515-CIV-MORENO

PRESTIGE INSURANCE GROUP, LLC,
a Delaware Limited Liability Company,
andULISES CICCIARELLI, an individual,

    Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
An Illinois Corporation,

    Defendant.

_____/

### DECLARATION OF CHAR F. JORDAN

I, Char F. Jordan, having personal knowledge of the facts contained herein and being competent to testify to them, hereby declare as follows:

1. I am a District Sales Leader for the state of Florida for Allstate Insurance Company ("Allstate" or the "Company"). I have held this position since October 2020. From January 2019 through October 2020, I was a Territory Sales Leader for the Allstate Florida region.

2. In my role as the Territory Sales Leader, I was responsible for managing Allstate's relationships with Exclusive Agent independent contractor agents within my territory. I was also responsible for interviewing and approving potential Allstate exclusive agents. During my time as a Territory Sales Leader I reported to Jim Uschelbec, Regional Sales Leader for the Florida Region.

1

3. In my role as the District Sales Leader, I am responsible for managing Allstate's relationships with Exclusive Agent independent contractor agents in the state of Florida. I am also responsible for reviewing and evaluating agency purchase requests. I report to Karen Sullivan, Agency Sales Senior Vice President Zone Leader, Zone 3.

4. Allstate is a property and casualty insurance company that provides insurance and related protection products to customers nationwide, including in Florida.

5. Allstate Insurance Company and its affiliates and subsidiaries are insurance and financial services companies that design, create, and sell insurance and financial products throughout the country, including in Florida.

6. In Florida, Allstate distributes its insurance and financial products through a variety of channels, including independent contractor agents, called Exclusive Agents. Exclusive Agents operate under a R3001 Exclusive Agency Agreement with Allstate.

7. Plaintiffs in the above-captioned case, Prestige Insurance Group, LLC and Ulises Cicciarelli, were agents in my territory. Plaintiffs' R3001 Agreements with Allstate became effective August 1, 2020. This was the date the Cicciarelli/Prestige Insurance agency was authorized to begin to receive and accept applications for Allstate Insurance.

8. Cicciarelli initially signed a R3001S Agreement on July 27, 2020, under which he would operate the agency as a sole proprietor. On August 3, 2020, he signed a R3001C Agreement to operate the agency with Prestige Insurance as the agent and party to the agreement.

9. Cicciarelli became an Allstate agent by purchasing an existing Allstate Exclusive Agent's economic interest in an existing book of Allstate business. I reviewed the agency purchase request Cicciarelli submitted to Allstate to purchase the economic interest in the

2

Allstate agency operated by Gerardo Rivas and approved Cicciarelli to be an Allstate Exclusive Agent.

10. From May 20, 2020 through August 1, 2020, Cicciarelli's relationship with Allstate was governed by a Pre-Appointment Agreement with Allstate.

11. As part of training as outlined in the Pre-Appointment Agreement, future employees of Allstate agencies (like individuals who were to become employees of Prestige Insurance) are encouraged to obtain a list of potential referrals from their network of friends or family, which Allstate referred to as "Project 100."

12. The intent of "Project 100" is to have a list of close friends and family members that employees of Allstate Exclusive agencies could call prior to the opening date of their Allstate agency, and practice quoting and selling as outlined in the Pre-Appointment Agreement.

13. Under the terms of Cicciarelli's Pre-Appointment Agreement, Cicciarelli and employees that he intended to be licensed and appointed to sell Allstate's products and services were permitted to participate in the selling and servicing of Allstate policies only in connection with a supervised education program. The Pre-Appointment Agreement only permitted the policies to be quoted or bound in the presence of a licensed and appointed Allstate agent or employee.

14. Neither the Pre-Appointment nor the R3001 Agreements allow an agency or its staff to operate outside of a training environment prior to the effective date of the R3001 Agreement between Allstate and the agency. Nothing in either the Pre-Appointment Agreement or R3001 Agreement permits an agency to commence quoting and sales activities prior to the effective date of the agency's R3001 Agreement and then delay binding those quotes until the new agent became affiliated with the Company. To the extent that a prospective agent or his staff encounters a customer during the Pre-Appointment phase who wishes to bind insurance, that

binding is expected to take place under the agent who is supervising the activities of the prospective agent and his staff.

15. When I evaluated and approved Cicciarelli's request for approval to purchase the economic interest in the Rivas Agency, Cicciarelli did not advise me that he intended to quote and sell policies through the Rivas Agency as if he were fully approved and appointed to operate an Allstate agency, without the presence of Gerardo Rivas, who at the time was a licensed and appointed Allstate Exclusive Agent.  Nor did Cicciarelli advise me that he planned to have his staff solicit and sell Allstate insurance products outside of the training environment envisioned in the Pre-Appointment Agreement.

16. In purchasing the economic interest in the Rivas Agency, Plaintiffs were eligible for bonuses under the Allstate Exclusive Agency Enhanced Compensation Plan, which was an incentive compensation program designed to provide additional compensation to new agency owners based on the amount of business their agencies write during the initial 36 months that their agencies are in operation to help new agencies generate additional income to defray start-up expenses.

17. I notified Cicciarelli on November 13, 2020, that Allstate terminated Plaintiffs' R3001 Agreement for cause.  A true and correct copy of his termination letter is attached hereto as Exhibit A.

18. On the same day, Field Sales Leader Kaylee Colvard was terminated for her involvement with the pre-selling activities of Plaintiffs because such conduct was not permitted or authorized by Allstate.

19. Plaintiffs were given until March 1, 2021 to sell the economic interest in their agency.

20. The sale of an agency's economic interest requires Allstate's approval of the buyer. Persons purchasing the interest in an Allstate agency become appointed Allstate agents and will service and sell Allstate products.

21. Transfers of economic interests take effect on the first day of each month. It takes at least 30 days, and typically longer, from the time a purchase approval request is received, for Allstate to review, and if the request is approved, complete all of the tasks associated with a transfer of an interest.

22. Plaintiffs did not submit a potential buyer to Allstate for the purchase of the economic interest in Prestige Insurance.

23. Plaintiffs remained eligible to receive a termination payment, which Allstate has paid to him on a monthly basis since March, 2021, in accordance with its established policies.

**UNDER PENALTIES OF PERJURY PURSUANT TO 29 U.S.C. § 1746, I DECLARE THAT I HAVE READ THE FOREGOING DECLARATION AND THAT THE FACTS STATED IN IT ARE TRUE AND CORRECT.**

Executed on this _2_ day of September, 2022

_____
Char F. Jordan

5

# EXHIBIT A



Char Jordan
District Sales Leader
Zone 3

Prestige Insurance Group LLC
Attn: Ulises Cicciarelli
5850 Hiatus Rd Ste D
Tamarac, FL 33321

November 13, 2020

Dear Ulises:

This letter is notice that Allstate Insurance Company is terminating the Allstate R3001C Exclusive Agency Agreement ("Agreement") with [INSERT AGENCY NAME], ("Agency") effective [ FORMTEXT ].  The termination is pursuant to Section XVII.B.3 of the Agreement.  Allstate is taking this action for reasons that include providing false information to the company and failing to issue policies according to Allstate guidelines.

Agency's obligations to Allstate are stated in the Agreement.  The Agreement requires that Agency must, among other things:

- Immediately return all property belonging to Allstate including all manuals, equipment, and any materials bearing any Allstate service mark or trade name;
- Immediately cease to use any telephone numbers used to conduct Allstate business from the former sales location; and
- Immediately cease and desist from any and all use of Allstate service marks and trade names.

Agency may have the option of accepting a termination payment from Allstate or selling the economic interest to an approved buyer as outlined in the Independent Contractor Manual and Supplement for the R3001C Agreement.  If Agency is eligible for and elects the termination payment option, Agency will receive such payment calculated and paid in accordance with the Supplement for the R3001C Agreement.  Please note the termination payment is conditioned upon, for example, compliance with the confidentiality and non-solicitation provisions that survive the termination of the Agreement and the immediate return of all Allstate property.

If Agency elects to sell the economic interest in the book of business, Allstate has the absolute right of approval of the buyer.  The buyer must meet Allstate's eligibility requirements.  If Allstate approves a proposed buyer, **the sale must be completed on or before March 1, 2021** and must be effective on the first day of that or any earlier month.  If Agency does not present a buyer or the buyer that Agency presents is not approved, we will process the termination payment as described above.

If agency elects, it may sell its interest in any assigned risk policies it may own.  After the Agreement terminates, agency will continue to receive commissions on existing assigned risk policies processed by Allstate that it retains, if any. Also, if agency elects, it may seek to transfer any flood policies it may have produced subject to such rules and policies that are applicable to flood business.

Please contact me with any questions you have regarding the termination process.

Sincerely,

Char Jordan
DSL