# EXHIBIT 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No.: 21-60515-CIV-MORENO

PRESTIGE INSURANCE GROUP, LLC,
a Delaware Limited Liability Company,
andULISES CICCIARELLI, an individual,

    Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
An Illinois Corporation,

    Defendant.
_____/

## DECLARATION OF IZABELA M. ZEGLEN

I, Izabela M. Zeglen, having personal knowledge of the facts contained herein and being competent to testify to them, hereby declare as follows:

1. I am a Senior Investigator for Allstate Insurance Company. I have held this position since November 2014.

2. In my role as Senior Investigator, I am responsible for investigating alleged violations of Allstate's rules and policies by Allstate insurance agents and their staff. During the relevant time period for this lawsuit, I reported to John Sanders, Senior Manager – Investigative Services, for Allstate Insurance Company.

3. On August 5, 2020, customer, Kimberly Hutson, filed a complaint with Allstate alleging that Prestige Insurance falsified her marital status on her auto policy. She requested that Allstate fix the policy and transfer her policy to another agency.

1

4. Mrs. Hutson's complaint prompted a review of her policy and audit of other new business bound by Prestige Insurance by Joseph Cackowski, Field Business Conduct Consultant for Allstate Insurance Company.

5. Following Mr. Cackowski's audit, this case was assigned to me by my supervisor, John Sanders, in September 2020 for an investigation into Prestige Insurance agency's business practices.

6. As part of my investigation, I interviewed Ulises Cicciarelli and staff members who worked for Prestige Insurance, including Glen Hunter, Prianca Little, Jose Rijos, and Meleik Williams. My colleagues, Neil Reyes and Becky Frydrych, assisted in the investigation. Mr. Reyes interviewed a number of the customers to whom Prestige Insurance sold policies and Ms. Frydrych reviewed e-mails related to the investigation.

7. I summarized the findings of the investigation in the "Summary of Evidence" attached hereto as Exhibit A. I found that the evidence supported the Ms. Hutson's complaint and that Plaintiffs and their staff had violated Allstate policies on numerous occasions. As outlined in the Summary of Evidence, my investigation revealed that Plaintiffs were not complying with their R3001 Agreement with Allstate or with Allstate's rules and guidelines. Based on the events and issues described in the Summary of Evidence, I found that the evidence was sufficient to support terminating Prestige Insurance's R3001 Agreement.

8. I understand that Plaintiffs have alleged that Allstate terminated Prestige Insurance's R3001 Agreement because Prestige Insurance was successful and Allstate wanted to deny bonus compensation to the agency. As the person who led the investigation and made the finding that the evidence supported termination of the Prestige Insurance's R3001 Agreement with Allstate, I attest that Prestige Insurance's success in producing new business and bonus compensation was

not what prompted my investigation into Prestige Insurance or a basis for termination. Allstate values and rewards successful agencies and wants to see agencies grow. But Allstate expects them to conduct their affairs in compliance with their agreements with Allstate and to sell insurance in accordance with Allstate's rules and guidelines. Prestige Insurance sales results or potential eligibility for bonus compensation did not factor into my investigation or my finding that the evidence supported termination of Prestige Insurance's R3001 Agreement. Rather, my recommendation was based on the agency's selling insurance policies in violation of Allstate's guidelines and violations of their Pre-Appointment and R3001 Agreements with Allstate.

UNDER PENALTIES OF PERJURY PURSUANT TO 29 U.S.C. § 1746, I DECLARE THAT I HAVE READ THE FOREGOING DECLARATION AND THAT THE FACTS STATED IN IT ARE TRUE AND CORRECT.

Executed on this  2  day of September, 2022.

                                                                                                                     */s/ Izabela M. Zeglen*
                                                                                                                     Izabela M. Zeglen

# EXHIBIT A



Izabela Zeglen
Investigator
Investigative Services
Dispute Resolution Services
Law & Regulation Department

November 3, 2020

Karen Sullivan
Senior Vice President, Zone 3

**RE:** Ulises Cicciarelli
R3001C Exclusive Agent
<u>Contract Date: August 1, 2020</u>

Karen:

We initiated an investigation of Tamarac (FL) R3001C Exclusive Agent Ulises Cicciarelli after a targeted audit conducted by Field Business Conduct Compliance Consultant Joe Cackowski revealed that Cicciarelli may have improperly initiated a large volume of quotes under former Exclusive Agent Gerardo Rivas' agency and waited to convert them to new business under his own agency in order to fraudulently obtain enhanced compensation in an unknown amount. Further, the same audit revealed that Cicciarelli may have falsified at least 27 Auto insurance applications and/or directed his staff to do the same in order to lower customers' premiums or qualify them for coverage they would otherwise not be entitled to receive. Thus, it was suspected that Cicciarelli may have breached his R3001C Exclusive Agency Agreement.

Our investigation is complete and our Summary of Evidence is attached for your review.

It is our opinion that the weight of the evidence is sufficient to support the termination of Exclusive Agent Ulises Cicciarelli's R3001C Exclusive Agency Agreement.

Karen please call if you have any questions.

Regards,

Izabela Zeglen

Copy to:   Bob Greve
           Kelly Wendt
           Luke Yang

**Exhibit 0016**

**Allstate Insurance Company**
2775 Sanders Road, A2W   Northbrook, IL 60062   Phone 847.402.6904   Email izegl@allstate.com

Confidential Information

November 3, 2020

# SUMMARY OF EVIDENCE

**Ulises Cicciarelli**
**R3001C Exclusive Agent**
**Zone 3**
**Contract Date:  August 1, 2020**

We initiated an investigation of Tamarac (FL) R3001C Exclusive Agent Ulises Cicciarelli after a targeted audit conducted by Field Business Conduct Compliance Consultant Joe Cackowski revealed that Cicciarelli may have improperly initiated a large volume of quotes under former Exclusive Agent Gerardo Rivas' agency and waited to convert them to new business under his own agency in order to fraudulently obtain enhanced compensation in an unknown amount. Further, the same audit revealed that Cicciarelli may have falsified at least 27 Auto insurance applications and/or directed his staff to do the same in order to lower customers' premiums or qualify them for coverage they would otherwise not be entitled to receive. Thus, it was suspected that Cicciarelli may have breached his R3001C Exclusive Agency Agreement.

Field Business Conduct Compliance Consultant Joe Cackowski

We obtained and reviewed the audit conducted by Cackowski. During his recorded interview, Cackowski told us the following:

- The Company received a complaint from customer Kimberly Hutson [redacted] that Exclusive Agent (EA) Cicciarelli's agency falsified the marital status on her Auto application to indicate that she and her husband were not married. This prompted a review of her policy along with a comprehensive review of new business bound in the agency;

- He observed that customer Hutson and her husband would not have qualified for an Allstate policy if her husband was rated due to his insurance score and prior claim history (the Bind ID affiliated with the application belonged to EA Cicciarelli, but the sub producer code was affiliated with Licensed Sales Producer "LSP" Prianca Little);

- He conducted an audit for new business written from August 1, 2020 through August 21, 2020 and reviewed 100 policies. He identified 27 policies that appeared to be falsified. The issues ranged from falsification of marital status, prior insurance bodily injury limits, misuse of the multi-policy discount and issuing policies without customer knowledge or consent. The Bind IDs affiliated with the activity belonged to EA Cicciarelli and various LSPs, including Meileik Williams, Robert Hennessey, Glen Hunter and Joshua Rice;

- During his policy review, he observed that approximately 17 out of the 22 staff working for Cicciarelli previously worked for EA Michael Masih-Das, whose agency was located approximately 200 miles from Cicciarelli's agency location;

Summary of Evidence – Cicciarelli                                                   November 3, 2020
Page 2

- LSPs Jose Rijos and Patrick Romo both had active appointments with Progressive and a review of the prior insurance information from the new business audit revealed that approximately 80% of the customers had prior insurance with Geico, Progressive and State Farm which was out of pattern; and

- A new business query identified that between August 1, 2020 and August 28, 2020 the agency bound 808 policies and 264 of those were bound on August 1, 2020 (the opening date of the agency). Further review of these policies revealed that a large number of the quotes were initiated in former EA Gerardo Rivas' agency by Cicciarelli's staff.

Onboarding Documents

We obtained and reviewed onboarding documents for EA Cicciarelli and observed that his Agency Ownership Disclosure form indicated that he was the sole owner of his agency. His business plan indicated that he planned to open his agency with 4 LSPs and that by the end of 2020 he planned to hire additional staff for a total of 16 LSPs. Cicciarelli purchased former EA Gerardo Rivas' agency, which was an enhanced compensation plan (ECP) eligible agency. Cicciarelli was allowed to begin the ECP curve as if he was a scratch ECP agent upon his purchase due to the small size of Rivas' book of business. Further, we obtained and reviewed the pre-appointment agreement signed by Cicciarelli.

Manage My Staff Tool

We obtained and reviewed the Manage My Staff (MMS) reports for EAs Cicciarelli and Masih-Das. We confirmed that the majority of Cicciarelli's staff were previously employed by Masih-Das.

Outlook Email Exchange

We obtained and reviewed the Allstate Outlook Exchange for EA Cicciarelli, EA Masih-Das, former EA Rivas, Field Sales Leader (FSL) Kaylee Colvard, Agency Process Specialist (APS) Jarius Hollinger and LSPs Hunter, Little, Williams, Gonzalez, Hennessey, Holanda, Romo and Rijos. We observed the following emails:

- Email communications between EA Cicciarelli and FSL Colvard discussing his plan to hire a large amount of staff and his intent for them to work remotely;

- Emails between Colvard and various education employees discussing the large volume of staff Cicciarelli had hired;

- Emails from EA Cicciarelli after his agency opened and FSL Colvard where Cicciarelli requested assistance in reviewing the policies his staff completed to ensure they were done properly; and

Summary of Evidence – Cicciarelli            November 3, 2020
Page 3

- Emails from EA Masih-Das to various sales leaders indicating his need to find other employment for most of his staff due to the impending cap of his ECP contract.

(We did not identify any emails supporting an undisclosed ownership or financial interest in Cicciarelli's agency by Masih-Das or any emails supporting brokering activity by Cicciarelli's staff).

Education Manager Martha Fleming

During her recorded interview, Fleming told us the following:

- Agents sign an education agreement prior to their affiliation with Allstate and as part of that agreement they and their staff are not allowed to quote or bind any policies outside of the education environment;

- The agent and staff are limited to a maximum of 10 policies bound during education and all quoting and binding activity must be supervised by an educator;

- Agency education is designed to allow the agent and staff to practice quoting and binding. The intent is not to provide the agent with a means to "pre-load" their book of business prior to their start date and that is why the education agreement specifically outlines the quoting and binding expectations for agents during their pre-appointment phase; and

- New agents may qualify to opt out of certain parts of the education phase. FSL Colvard submitted a request for EA Cicciarelli to opt out of the live quoting portion of new agent education and it was approved. She informed Colvard this could result in Cicciarelli not receiving his education bonus to which she responded that he was unconcerned about the bonus.

Customers

We spoke with 12 customers identified within Cackowski's audit who had quotes initiated under former EA Rivas' agency and their policies bound under EA Cicciarelli's agency. All of the customers confirmed that they were aware their policies could not be bound until August 1, 2020. Further, customer Tyler Wright (███████) told us the following:

- He completed his Auto application over the phone with a male representative but could not recall his name;

- He wanted to start his policy immediately but was told that in order to receive the best rate, he would have to start his policy on a specific date in August. The male representative told him that insurance companies bid on each day for certain rates and that the day they provided him was the best rate they could get if he agreed to start his policy on that date; and

Summary of Evidence – Cicciarelli                                                November 3, 2020
Page 4

- The savings communicated to him were approximately $20.00 to $30.00 per month if he agreed to postpone his start date.

We also spoke with 5 customers identified in Cackowski's audit relative to the falsification concerns. They told us the following:

- Customer Daisy Shaffer ▇▇▇▇▇ worked with LSP Little to complete her Auto application. She was not aware of nor did she consent to a Renter's policy and Little did not discuss the multi-policy discount with her (We observed in the audit that Shaffer received the multi-policy discount on her Auto policy and the Renter's policy was canceled flat after the customer submitted a complaint that she never consented to purchase it. The policy was affiliated with EA Cicciarelli, but contained the sub producer code of LSP Little);

- Customer Icilga Lawrence (▇▇▇▇▇ stated she and her husband, Fitzroy Lawrence were married and although she did not recall being asked about her marital status when completing her application, she would have told the agency she was married. She did not complete a homeowner's quote at the time she applied for her Auto and the male representative she spoke with did not discuss the multi-policy discount with her (We observed that the policy was issued with the marital status listed as separated. Numerous consumer reports were run on the insureds and the insurance score was highest when the reports were run for the spouses together. The multi-policy discount was applied using the homeowner's quote, which was never bound. The policy was affiliated with LSP Rice);

- Customer Troy Misiak ▇▇▇▇▇ spoke with LSP Hennessey over the phone to complete his application and communicated to him that Kristin Kelly was his fiancé and they were both the registered owners of the Silverado truck on the policy (We observed that Kristin Kelly was not rated on the policy or listed as an operator. The policy was affiliated with LSP Hennessey);

- Customer Lillian Cromuel (▇▇▇▇▇ confirmed that her spouse is Quintis Cromuel and that the Dodge Ram on the policy is registered to both of them. She provided this information at the time of her application to a male named Jonathan (We observed that Quintis Cromuel was not rated on the policy. The application was affiliated with the Bind ID of LSP Hunter, but the sub-producer code is affiliated with LSP Jonathan Wilks); and

- Customer Keith Hutson ▇▇▇▇▇ spoke with LSP Little to complete his Auto application and confirmed that he was married to Kimberly Hutson (Hutson's wife, Kimberly, previously contacted the Company to submit a complaint about this application, which is what prompted Cackowski's audit).

Licensed Sales Producers Glen Hunter, Prianca Little, Jose Rijos and Meleik Williams

During their interviews, Hunter, Little, Rijos and Williams told us the following:

Summary of Evidence – Cicciarelli  November 3, 2020
Page 5

- They received, read and understood the Allstate Agency Standards and they were aware that it was against Company policy to falsify any information or documents;

- They previously worked for EA Masih-Das who informed them that he was terminating all of their employment sometime in early July 2020 and EA Cicciarelli offered them employment shortly thereafter;

- They worked remotely from their homes;

- They all denied that they were directed by EA Cicciarelli to falsify any information or documents;

- Williams, Hunter and Rijos informed us that they were directed by EA Cicciarelli to only provide quotes to customers while under EA Rivas' MMS and to inform the customers that they could not bind their applications until August 1, 2020. If customers wished to purchase their policies immediately, they were told to contact another agency or call 1-800-Allstate. Little refused to answer what she was directed to do if a customer wished to purchase an Allstate policy immediately;

- Little and Williams denied that they falsified customers' prior insurance bodily injury limit information and obtained the information from the customers or the prior insurance carrier (following our interviews they each provided us with copies of proof of prior insurance documents which confirmed their statements regarding the bodily injury limits);

- Little denied that she completed any applications without customers' knowledge or consent and stated that the customers likely did not recall that they were aware of and consented to purchase the policies. She had to use EA Cicciarelli's Bind ID on several policies due to a system error which caused her Bind ID to not be recognized and confirmed her sub-producer code was 342 (EA Cicciarelli confirmed the same);

- Hunter trained the staff and on occasion his Bind ID was used to complete applications during training, but the applications were in fact completed by the trainees and their sub-producer code was entered on the applications to ensure they received credit; and

- Rijos denied that he was aware he had an active appointment with Progressive. He confirmed his prior employment with the carrier but stated that he had not sold any policies for them for over a year (we did not observe any indication Rijos was selling Progressive policies within his Allstate Outlook Email Exchange).

(Following our interview of the LSPs, Field Business Conduct Senior Consultant Derek Goddard provided us with an additional targeted audit that he conducted which revealed that customer names were being manipulated on applications in order to obtain the most favorable prior insurance information that would result in the lowest rate for the customer. The activity was affiliated with LSPs Little, Williams and Rice.)

Confidential Information

Proprietary and Confidential                                                              Allstate_Prestige_0000333

Summary of Evidence – Cicciarelli                                                November 3, 2020
Page 6

R3001C Exclusive Agent Ulises Cicciarelli

Exclusive Agent Ulises Cicciarelli declined to provide us with a recorded statement; however, during his interview he told us that he received, read and signed his Allstate Exclusive Agency Agreement and the pre-appointment agreement. He received, read and understood both the Allstate Agency Standards and the Allstate Exclusive Agency Independent Contractor Manual. He understood that it was against Company policy to falsify information or documents, engage in conflicts of interest, fraud and to maintain an undisclosed ownership or financial interest in an agency or assign commissions without prior approval from the Company. Further, Cicciarelli told us the following:

- He worked in EA Jay Adkins' agency for several months as an LSP and subsequently worked for EA Darren Mock as the sales manager for approximately one year. He worked in Mock's agency from the day it opened and as a result was very familiar with how an ECP agency is operated as Mock was an ECP eligible agent;

- He visited EA Michael Masih-Das' agency on a few occasions to observe his processes and sometime on or around June 2020 he informed him that he may need to terminate numerous staff who would then need employment and he was interested in hiring additional staff in order to ensure he could, "hit the ground running";

- Sometime in early July 2020 EA Masih-Das terminated most of his staff and Cicciarelli hired them. He denied that he and Masih-Das entered into any financial arrangement in exchange for the staff (EA Masih-Das confirmed the same information to us);

- He is the sole owner of his agency and denied that EA Masih-Das or anyone else maintained any undisclosed financial or ownership interest in his agency (EA Masih-Das confirmed the same);

- He did not update his business plan or any other documents and resubmit them to the Company after he hired the additional staff from EA Masih-Das because he was not required to do so and FSL Colvard was aware of the additional hires;

- He confirmed that he was aware he and his staff were not allowed to quote or bind any applications prior to his appointment date (August 1, 2020) with Allstate;

- He was able to forego much of the education requirements due to his history with Allstate and focused on training his staff and obtaining as many leads as he could in order to "build a pipeline" for his business;

- He asked FSL Colvard if his staff could be entered into the MMS of former EA Rivas and complete quotes. Colvard informed him that was acceptable and in order to ensure he received ECP compensation for the policies they could not be bound until he was officially appointed with Allstate;

Confidential Information

Proprietary and Confidential                                                    Allstate_Prestige_0000334

Summary of Evidence – Cicciarelli                                November 3, 2020
Page 7

- He instructed his staff to only provide customers with quotes and inform them they could not purchase the policies until August 1, 2020. If the customers wished to purchase a policy with Allstate immediately the staff would direct them to contact 1-800-Allstate or another Allstate agency;

- He did not believe that he was circumventing Company rules or policy by having his staff quote under Rivas' agency and then binding the policies under his own agency because FSL Colvard was aware of his approach and told him it was acceptable; and

- He denied that he was aware any of his staff had falsified applications or that he directed them to do so. He required a pre-bind checklist to be completed with every application prior to binding and his office manager, LSP Glen Hunter was responsible for reviewing every application completed prior to bind.

Field Sales Leader Kaylee Colvard

During her recorded interview, Colvard told us the following:

- She was aware EA Cicciarelli hired a large amount of staff from EA Masih-Das prior to his appointment and confirmed that his business plan and cash flow documents were not updated to reflect the change. She was not aware of any requirement to update either document;

- EA Cicciarelli asked her if he and his staff could start quoting prior to his appointment date and she informed him that he could not. He asked if he could enter his staff in EA Rivas' agency and quote under his agency number and then bind the policies once he appointed. She informed him that was acceptable;

- She did not believe EA Cicciarelli's approach in quoting under Rivas' agency and waiting to bind the policies under his own agency circumvented Company policy because in her opinion this was a common practice; and

- EA Cicciarelli was able to forego some required education due to his prior experience with Allstate.

(We spoke with Territory Sales Leader Char Jordan who informed us that while new agents may allow their staff to temporarily work in other agencies, this could lead to various issues and it was not common practice for quotes to be initiated and held under an existing agent's number and ultimately bound under a new agent's number once they became affiliated with the Company. New agents were encouraged to obtain a list of potential referrals from their network of friends and family, as were their staff prior to opening. The intent was to use that list to practice quoting. Further, Field Business Conduct Consultant Steven Wendt conducted reviews at our request to determine if the activity of holding quotes under one agency and binding the policies under a different agent was commonplace and he informed us that his reviews revealed it was not a common practice.)

Proprietary and Confidential                              Confidential Information
                                                          Allstate_Prestige_0000335

Summary of Evidence – Cicciarelli                                             November 3, 2020
Page 8

Applicable Documents

The <u>Agent Pre-Appointment Agreement for Allstate Exclusive Agency Program</u> which states in part:

II. Authorization to Participate in Program

E. For educational purposes only, Applicant and those employees of Applicant that intend to be licensed and appointed to sell the Company's products and services will participate in the selling and servicing of Allstate policies prior to entry into R3001 Agreement. Standard new business commission interest and economic interest for business written by the Applicant during a predetermined education phase will be granted to the Applicant only upon immediate entry into the R3001 Agreement. The expectation is that no more than 5-10 policies be bound during pre-affiliation practice and those policies are bound in presence of a licensed and appointed Allstate representative. Applicants who do not enter into an R3001 Agreement will forfeit commission and economic interest in any and all Allstate business written during the above-mentioned education timeframe. Any applicant that does enter into the R3001 Agreement and that binds business pre-appointment outside of these guidelines may forfeit commission and economic interest in any and all Allstate business written outside of the guidelines during the above-mentioned education timeframe.

Applicant can only engage in selling and servicing activities during a supervised education program and is not authorized to represent the Company outside of the above-mentioned timeframe.

The <u>Allstate Exclusive Agency Independent Contractor Manual</u> which states in part:

Integrity

As a Company representative, you are expected to act honestly and fairly in all of the Company's business relationships. You are expected to comply with Company policies and procedures, including the <u>Allstate Agency Standards</u>, and all applicable laws and regulations relating to the conduct of business under the R3001 Agreement.

Second, you may never falsify any state insurance department or Company documents, including applications, and you may never forge signatures. Last, misappropriation of funds and cooperating with others to defraud, or any other illegal or criminal acts, will not be tolerated.

Brokering

As an R3001 Agent, you may not directly or indirectly solicit, sell or service insurance of any kind for any other company without prior written approval from the Company. However, you may write Assigned Risk, JUA, Facility, FAIR Plan, Flood, California Earthquake Authority, and expanded market coverage business, as authorized by the Company. You are not authorized to charge a fee in addition to the policy premium for writing this business, except as documented in the

Confidential Information

Proprietary and Confidential                                                                Allstate_Prestige_0000336

Summary of Evidence – Cicciarelli                                          November 3, 2020
Page 9

Supplement. Although you would not be precluded from having a passive financial investment in an independent agency, the R3001 Agreement prohibits an agent from, either directly or indirectly, soliciting, selling, or servicing insurance of any kind for any other agent or broker. Any involvement in an independent agency's business operation would be prohibited as it would constitute indirect soliciting, selling, or servicing insurance and thus violate the R3001 Agreement.

Conflict of Interest

Sometimes people get themselves into situations that make it difficult for them to distinguish to whom they should be loyal. These situations constitute conflicts of interest. Allstate's position is that you, as a Company representative, should not take part in any activities that might prove to place you or your agency in a conflict of interest with respect to the duties you owe to Allstate.

The <u>Allstate Agency Standards</u> which state in part:

Application/Endorsement Completion

When writing new business or servicing existing business, agencies must:

- Make an offer of coverage where legally mandated; and

- Accurately and consistently apply the Risk Management Policies (RMPs) and other regional requirements. Obtain and transmit accurate and complete information to develop an accurate quote, which may include, but is not limited to, prior insurance policy information (policy number, years with prior carrier, bodily injury limits, and driver's license number) for all operators. Never bind coverage on a new business application prior to the date the application is written by the agency.

<u>Analysis</u>

The weight of the evidence is sufficient to support the conclusion that R3001C Exclusive Agent Ulises Cicciarelli intentionally circumvented Company policy in order to manipulate the enhanced compensation plan. EA Cicciarelli confirmed that he was aware of the Company's rule prohibiting quoting and binding prior to affiliation and that in order to ensure he had as many quotes completed as possible prior to his appointment date, his staff completed quotes under former EA Rivas' agency and intentionally waited to bind the policies until his agency opened, despite some customers preferences that their policies be bound immediately, in order to ensure the enhanced compensation was credited to Cicciarelli. His statement that this was not a circumvention of the rules because FSL Kaylee Colvard was aware of and approved of the approach is not credible. Despite Colvard's confirmation that she was aware of Cicciarelli's quoting plans, Cicciarelli acknowledged that he was aware of the Company's policy and had prior experience managing an agency. Further, subsequent reviews revealed the activity was not a common practice amongst other agencies.

Confidential Information

Proprietary and Confidential                                              Allstate_Prestige_0000337

Summary of Evidence – Cicciarelli                                    November 3, 2020
Page 10

Additionally, the weight of the evidence is sufficient to support the conclusion that LSPs Prianca Little, Meileik Williams, Joshua Rice, Robert Hennessey and Jonathan Wilks falsified Auto applications in order to lower customer's rates. Several customer statements, along with the additional audit conducted by Field Business Conduct Senior Consultant Derek Goddard support the suspicions. The evidence supports revoking their binding authority and they should no longer be allowed to conduct Allstate-related business.

Conclusion

It is our opinion that the weight of the evidence is sufficient to support the termination of Exclusive Agent Ulises Cicciarelli's R3001C Exclusive Agency Agreement. The weight of the evidence is sufficient to support the revocation of binding authority for Licensed Sales Producers Prianca Little, Meileik Williams, Joshua Rice, Robert Hennessey and Jonathan Wilks.