UNITED STATES DISTRICT
COURT SOUTHERN DISTRICT OF
FLORIDA FT. LAUDERDALE
DIVISION

Case No.: 0:21-cv-60515-FAM

PRESTIGE INSURANCE GROUP, LLC,
a Delaware Limited Liability Company and
ULISES CICCIARELLI, an individual,

    Plaintiffs,

vs.

ALLSTATE INSURANCE COMPANY,
An Illinois Corporation,

    Defendant.
_____/

## PLAINTIFF'S OBJECTIONS AND RESPONSES TO DEFENDANT, ALLSTATE INSURANCE COMPANY'S FIRST SET OF INTERROGATORIES TO PLAINTIFF, ULISES CICCIARELLI

NOW COMES Plaintiff, ULISES CICCIARELLI ("Cicciarelli"), and for his Objections and Responses to Defendant Allstate Insurance Company's First Set of Interrogatories to Plaintiff, Ulises Cicciarelli, states as follows:

## GENERAL OBJECTIONS

A. Plaintiff objects to the discovery requests to the extent they seek to impose obligations upon Plaintiff beyond those provided under the Court Rules.

B. Plaintiff objects to the discovery requests to the extent they are overbroad, vague, ambiguous, unduly burdensome, unreasonable, harassing and oppressive.

1

C. Plaintiff objects to the discovery requests to the extent they seek information or documents not relevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence.

D. Plaintiff objects to the discovery requests as overbroad, unduly burdensome, unreasonable, harassing and oppressive to the extent they seek information or documents related to third-parties that are more readily available to Defendant than to Plaintiff.

E. Plaintiff objects to the discovery requests to the extent that certain documents and other materials are already in Defendant's possession, custody, or control.

F. Plaintiff objects to the discovery requests to the extent they use terms that Plaintiff cannot interpret or understand in the context in which they are presented. In this regard, where possible, Plaintiff has made reasonable assumptions as to Defendant's intended meanings and responded accordingly, while preserving its objections or vagueness, ambiguity and uncertainty.

G. An agreement by Plaintiff to provide certain information or documents in response to certain discovery requests is not a representation that any such information or documentation exists.

Each of the foregoing General Objections interposed by Plaintiff is applicable to and hereby is incorporated into each and every response, and any response by Plaintiff to the discovery requests is made without waiving any of the General Objections made herein. In certain responses, Plaintiff may restate particular General Objections for emphasis. However, even where Plaintiff has not restated a particular General Objection, these General Objections are intended to be and are incorporated into the responses to all requests. Furthermore, discovery is ongoing, and Plaintiff

is continuing in its efforts to comply with the discovery requests and gather documents necessary to defend this matter through trial. Plaintiff reserves the right to supplement, alter, or limit its responses to the discovery requests and the information and documents disclosed and/or produced in connection therewith.

# INTERROGATORY NO. 1

Identify any person who has, claims to have, or whom you believe may have knowledge or information relevant to any claim, fact, or circumstance that is alleged in the pleadings filed in this action, or any fact underlying the subject matter of this action.

**ANSWER:**

| Name | Address/Telephone | Employer/Title |
|---|---|---|
| Kaylee Colvard | | (Former) Allstate Field Sales Leader |
| Jarius Hollinger | | Allstate Agency Process Specialist |
| Char Jordan | | Allstate Territory Sales Leader |
| Jim Uschelbec | | Allstate Regional Sales Leader |
| Stephen Gilbert | | Allstate Senior Development Leader |
| Mike Sheely | | Allstate Field Vice President |
| Gerardo (Gerry) Rivas | | (Former) Allstate Agency Owner |
| Mario Castro | | (Former) Allstate Agency Process Specialist |

# INTERROGATORY NO. 2

For each person identified in your response to Interrogatory No. 1, describe with reasonable particularity the nature and substance of his or her knowledge or information, and state whether you presently intend to call them as a witness at trial.

**ANSWER:**

| Name | Substance of Knowledge/Information | Intend to Call at Trial? |
| --- | --- | --- |
| Kaylee Colvard | Assisted with devlopement and adjustment of the Business plan, Placement of staff for Ulises into Gerald Rivas agency prior to start date, staffing levels, quote activity and production. Would be fully aware that Ulises was adding his staff to the Rivas Agency prior to purchase, quoting activity, etc. Probable additional communication with Char, Mike and Steve about these topics outside of the meetings. Confirmed communication with Char via | |
| Jarius Hollinger | Assigned to me to assist in the opening of my agency. Added agents into the Rivas group and wrote procedural documents on quoting in the agency prior to ownership and then binding into the agency once I took ownership. Probable additional communication with Char, Char and Kaylee about these topics outside of the meetings | |
| Char Jordan | Attened weekly meetings hosted by Mike Sheely and possibly additional to discuss staffing levels, quote activity and production. Would be fully aware that Ulises was adding his staff to the Rivas Agency prior to purchase, quoting activity, etc. Probable additional communication with Char, Mike and Steve about these topics outside of the meetings. Confirmed communication with Kaylee via text and email | |
| Jim Uschelbec | Attened weekly meetings hosted by Mike Sheely and possibly additional to discuss staffing levels, quote activity and production. Would be fully aware that Ulises was adding his staff to the Rivas Agency prior to purchase, quoting activity, etc. Probable additional communication with Char, Mike and Steve about these topics outside of the meetings | |
| Stephen Gilbert | Attened weekly meetings hosted by Mike Sheely and possibly additional to discuss staffing levels, quote activity and production. Would be fully aware that Ulises was adding his staff to the Rivas Agency prior to purchase, quoting activity, etc. | |
| Mike Sheely | Held a weekly meetings to discuss staffing, quoting, production, etc... for the region | |
| Gerardo (Gerry) Rivas | I purcahsed the agency from Gerry. He was in direct communication with Kaylee and Jarius regarding placing my staff in his agency while I was in Allstate onboarding and agency owner training. He is also aware of the quote levels and may have converesd with Jarius and Kaylee on this. | |
| Mario Castro | Mario was assigned (asked) to review my book (by Kaylee) after I requested Allstate review my books for compliance. He found nothing out of the ordinary or concerning and documented his findings. | |

## INTERROGATORY NO. 3

If you contend that Allstate lacked cause to terminate Plaintiff's agency agreements, please describe in detail the basis for that contention.

**ANSWER:**

Plaintiff followed Allstate's written and verbal procedures, training, and guidance as provided by Allstate's assigned Sales Leadership.

Additionally, the plaintiff followed Allstate's required Level 1 and Level 2 training, along with training provided by assigned Allstate Process Specialists.

The plaintiff proactively requested a compliance audit of the policies written in an effort to protect both the asset and the agency's customer. Kaylee asked Mario Castro, an Allstate Process Specialist, to review the policies written by the agency. The outcome of the review was there were no concerns, according to Mario Castro.

Finally, Allstate failed to voice any areas of concern, despite the plaintiff being fully transparent and compliant and following all instructions provided by Allstate.

# INTERROGATORY NO. 4

Please describe in detail how you contend that Allstate breached the contract as alleged in the First Amended Complaint, identifying the specific provision of the contract you alleged Allstate violated.

**ANSWER:**

Plaintiff followed the direction provided by Kaylee Colvard on completing the application and supporting documentation in the EAOT, including staffing and production levels and financial requirements.

Plaintiff and Gerard Rivas were instructed and assisted by Allstate to add Prestige Insurance Group's staff to the Rivas Agency's MMS for training, quoting, and to get a head start for a strong opening.

Plaintiff was communicated by Allstate FSL that during the weekly meeting with senior leadership, they took notice that Gerry Rivas' agency had a noticeable uptick in quote volume that is unusual for an agent that is in the process of selling his book of business. Kaylee advised the group that these were the Plaintiff's teams quoting for the aforementioned strong start.

Further, Allstate provided written instructions on how to open the previously saved quotes in the Rivas Agency to be bound in Prestige Insurance Group's agent number on day 1 of becoming an Allstate appointed agent.

Lastly, none of the policies quoted prior to opening could be bound until the Plaintiff was officially appointed by Allstate on August 1st. Customers were advised to contact Allstate direct if they wanted the policy prior to August 1st.

# INTERROGATORY NO. 5

Please describe in detail how you contend that Allstate breached an implied covenant of good faith and fair dealing, as alleged in the First Amended Complaint, identifying the specific provision of the contract you allege Allstate violated.

**ANSWER:**

Plaintiff followed the direction provided by Kaylee Colvard on completing the application and supporting documentation in the EAOT including staffing and production levels and financial requirements.

Plaintiff and Gerard Rivas were instructed and assisted by Allstate to add Prestige Insurance Group's staff to the Rivas Agency's MMS for training, quoting, and to get a head start for a strong opening.

Plaintiff was communicated by Allstate FSL that during the weekly meeting with senior leadership, they took notice that Gerry Rivas' agency had a noticeable uptick in quote volume that is unusual for an agent that is in the process of selling his book of business. Kaylee advised the group that these were the Plaintiff's teams quoting for the aforementioned strong start.

Further, Allstate provided written instructions on how to open the previously saved quotes in the Rivas Agency to be bound in Prestige Insurance Group's agent number on day 1 of becoming an Allstate appointed agent.

Lastly, none of the policies quoted prior to opening could be bound until the Plaintiff was officially appointed by Allstate on August 1st. Customers were advised to contact Allstate direct if they wanted the policy prior to August 1st.

## **INTERROGATORY NO. 6**

Identify each of the Allstate agencies with respect to which one of Plaintiffs purchased an interest, including the name of the agency, the date of the purchase, and the purchase price.

**ANSWER:**

Plaintiff purchased the Rivas Agency's book of business on July 1st, 2020, for $30,000.

## INTERROGATORY NO. 7

Describe in detail all communications between you and any person employed by Allstate reflecting, or referring or relating to, the allegations in the First Amended Complaint.

**ANSWER:**

Plaintiff followed the direction provided by Kaylee Colvard on completing the application and supporting documentation in the EAOT, including staffing and production levels and financial requirements.

Plaintiff and Gerard Rivas were instructed and assisted by Allstate to add Prestige Insurance Group's staff to the Rivas Agency's MMS for training, quoting, and to get a head start for a strong opening.

Plaintiff was communicated by Allstate FSL that during the weekly meeting with senior leadership, they took notice that Gerry Rivas' agency had a noticeable uptick in quote volume that is unusual for an agent that is in the process of selling his book of business. Kaylee advised the group that these were the Plaintiff's teams quoting for the aforementioned strong start.

Further, Allstate provided written instructions on how to open the previously saved quotes in the Rivas Agency to be bound in Prestige Insurance Group's agent number on day 1 of becoming an Allstate appointed agent.

Lastly, none of the policies quoted prior to opening could be bound until the Plaintiff was officially appointed by Allstate on August 1st. Customers were advised to contact Allstate direct if they wanted the policy prior to August 1st.

# INTERROGATORY NO. 8

Describe in detail all communications between either of the Plaintiffs and Kaylee Colvard regarding the quoting, soliciting, selling, or binding of Allstate insurance policies prior to the effective date of Plaintiffs' agency agreements with Allstate.

**ANSWER:**

Plaintiff followed the direction provided by Kaylee Colvard on completing the application and supporting documentation in the EAOT, including staffing and production levels and financial requirements.

Plaintiff and Gerard Rivas were instructed and assisted by Allstate to add Prestige Insurance Group's staff to the Rivas Agency's MMS for training, quoting, and to get a head start for a strong opening.

Plaintiff was communicated by Allstate's FSL that during the weekly meeting with senior leadership, they took notice of Gerry Rivas' agency's massive uptick in quote volume, which is unusual for an agent that is in the process of selling his book of business. Kaylee advised the group that these were the Plaintiff's team's quotes for the aforementioned strong start.

Further, Allstate provided written instructions on how to open the previously saved quotes in the Rivas Agency to be bound in Prestige Insurance Group's agent number on opening day.

In addition, none of the policies quoted prior to opening could be bound until the Plaintiff was officially appointed by Allstate on August 1st. Customers were advised to contact Allstate direct if they wanted the policy prior to August 1st.

Lastly, Kaylee was informed of what was sold on opening day and advised Char Jordan.

# **INTERROGATORY NO. 9**

If you contend that the sales practices engaged in by one of the Plaintiffs, or a person employed by one of the Plaintiffs, were in compliance with Allstate's rules, procedures, and policies, please state the basis for that contention, with particular reference to any practices that gave rise to an investigation of Plaintiffs and/or the termination of Plaintiffs' agency agreements with Allstate.

**ANSWER:**

All policies were written in compliance with Allstate underwriting guidelines as directed in all company sponsored and required training, sales leadership which was audited by corporate compliance and found to be written within company standards.

# INTERROGATORY NO. 10

Identify by name, address, and other available contact information all persons to whom you or someone working for one of the Plaintiffs solicited or sold, or attempted to solicit or sell, insurance or financial products between November 10, 2020 and December 1, 2021 whom you or someone working for one of the Plaintiffs solicited or sold, or attempted to solicit or sell, insurance or financial products on behalf of Allstate.

**ANSWER:**

All records of prospect and/ or customer data were saved on an Allstate computer or application in compliance with Allstate Standards and Practices. These computers become unusable the moment Allstate deactivates a user's login credentials.

# INTERROGATORY NO. 11

Identify all files on any Allstate customer or potential customer that remained in Plaintiffs' position as of December 1, 2020.

**ANSWER:**

There are no customer files in the Plaintiffs' possession. Any and all customer sensitive data and book of business downloaded would be on the Allstate laptop that cannot access as of termination on 11/13/2020.

## INTERROGATORY NO. 12

Identify all email addresses, mobile telephone numbers, or landline telephone numbers regularly used by or assigned to you between June 1, 2020 and December 1, 2021.

**ANSWER:**

███████

███████████

███████

# INTERROGATORY NO. 13

Describe in detail all damages that you contend that Plaintiffs sustained as a result of the conduct alleged in the complaint, explaining the calculation of each component of alleged damages and identifying all documents and data supporting such calculation.

**ANSWER:**

| | Month Premium Written | New Premium issued | Regular Commission (8%) | Renewal Premium (assuming 90% retention) | Renewal Commission (8%) | Commulative Book Size (adjusted for 88% retention) | ECP Bonus (paid on cumulative book) | Total monthly Commission and bonus |
|---|---|---|---|---|---|---|---|---|
| 10.0% | Month 1 (August) | $ 987,081 | $ 78,966 | | | $ 987,081 | $ 98,708 | $ 177,675 |
| 43.2% | Month 2 (September) | $ 523,539 | $ 41,883 | | $ - | $ 1,510,620 | $ 652,135 | $ 694,018 |
| 28.6% | Month 3 (October) | $ 523,539 | $ 41,883 | | | $ 2,034,159 | $ 581,769 | $ 623,653 |
| 21.3% | Month 4 (November) | $ 523,539 | $ 41,883 | | | $ 2,557,698 | $ 545,045 | $ 586,929 |
| 17.0% | Month 5 (December) | $ - | $ - | | | $ 2,557,698 | $ 434,809 | $ 434,809 |
| 14.0% | Month 6 (January 2021) | $ - | $ - | | | $ 2,557,698 | $ 358,589 | $ 358,589 |
| 10.7% | Month 7 (Feb) | $ - | $ - | $ 888,373 | $ 71,070 | $ 3,446,071 | $ 369,074 | $ 440,144 |
| 8.6% | Month 8 (March) | $ - | $ - | $ 471,185 | $ 37,695 | $ 3,917,256 | $ 335,317 | $ 373,012 |
| 7.2% | Month 9 (April) | $ - | $ - | $ 471,185 | $ 37,695 | $ 4,388,441 | $ 315,090 | $ 352,785 |
| 6.2% | Month 10 (May) | $ - | $ - | $ 471,185 | $ 37,695 | $ 4,859,626 | $ 300,811 | $ 338,506 |
| 5.5% | Month 11 (June) | $ - | $ - | $ - | $ - | $ 4,811,030 | $ 266,050 | $ 266,050 |
| 4.9% | Month 12 (July) | $ - | $ - | $ - | $ - | $ 4,762,920 | $ 233,383 | $ 233,383 |
| 3.5% | Month 13 (August 2021) | $ 50,000 | $ 4,000 | $ 392,941 | $ 31,435 | $ 4,715,290 | $ 195,056 | $ 230,491 |
| 3.2% | Month 14 (September) | $ 50,000 | $ 4,000 | $ 393,178 | $ 31,454 | $ 4,718,138 | $ 180,547 | $ 216,002 |
| 2.9% | Month 15 (October) | $ 50,000 | $ 4,000 | $ 393,413 | $ 31,473 | $ 4,720,956 | $ 166,020 | $ 201,493 |
| 2.6% | Month 16 (November) | $ 50,000 | $ 4,000 | $ 393,646 | $ 31,492 | $ 4,723,747 | $ 151,947 | $ 187,439 |
| 2.4% | Month 17 (December) | $ 50,000 | $ 4,000 | | $ - | $ 4,726,509 | $ 113,436 | $ 117,436 |
| 2.1% | Month 18 (January 2022) | $ 50,000 | $ 4,000 | | $ - | $ 4,729,244 | $ 99,787 | $ 103,787 |
| 2.0% | Month 19 (Feb) | $ 50,000 | $ 4,000 | $ 394,329 | $ 31,546 | $ 4,731,952 | $ 124,293 | $ 159,839 |
| 1.8% | Month 20 (March) | $ 50,000 | $ 4,000 | $ 394,553 | $ 31,564 | $ 4,734,632 | $ 117,735 | $ 153,299 |
| 1.7% | Month 21 (April) | $ 50,000 | $ 4,000 | $ 394,774 | $ 31,582 | $ 4,737,286 | $ 111,168 | $ 146,750 |
| 1.5% | Month 22 (May) | $ 50,000 | $ 4,000 | $ 394,993 | $ 31,599 | $ 4,739,913 | $ 104,594 | $ 140,193 |
| 1.4% | Month 23 (June) | $ 50,000 | $ 4,000 | $ 395,209 | $ 31,617 | $ 4,742,514 | $ 97,538 | $ 133,154 |
| 1.4% | Month 24 (July) | $ 50,000 | $ 4,000 | $ 395,424 | $ 31,634 | $ 4,745,089 | $ 97,591 | $ 133,225 |
| 1.3% | Month 25 (August 2022) | $ 50,000 | $ 4,000 | $ 396,296 | $ 31,704 | $ 4,755,546 | $ 94,477 | $ 130,180 |
| 1.2% | Month 26 (September) | $ 50,000 | $ 4,000 | $ 397,160 | $ 31,773 | $ 4,765,917 | $ 88,011 | $ 123,783 |
| 1.2% | Month 27 (October) | $ 50,000 | $ 4,000 | $ 398,017 | $ 31,841 | $ 4,776,201 | $ 87,723 | $ 123,564 |
| 1.0% | Month 28 (November) | $ 50,000 | $ 4,000 | $ 398,867 | $ 31,909 | $ 4,786,399 | $ 81,688 | $ 117,597 |
| 1.0% | Month 29 (December) | $ 50,000 | $ 4,000 | $ 399,709 | $ 31,977 | $ 4,796,512 | $ 81,381 | $ 117,358 |
| 0.9% | Month 30 (January 2023) | $ 50,000 | $ 4,000 | $ 400,545 | $ 32,044 | $ 4,806,541 | $ 75,302 | $ 111,346 |
| 0.9% | Month 31 (February) | $ 50,000 | $ 4,000 | $ 401,374 | $ 32,110 | $ 4,816,487 | $ 74,977 | $ 111,087 |
| 0.8% | Month 32 (March) | $ 50,000 | $ 4,000 | $ 402,196 | $ 32,176 | $ 4,826,350 | $ 68,856 | $ 105,032 |
| 0.8% | Month 33 (April) | $ 50,000 | $ 4,000 | $ 403,011 | $ 32,241 | $ 4,836,130 | $ 68,995 | $ 105,236 |
| 0.8% | Month 34 | $ 50,000 | $ 4,000 | $ 403,819 | $ 32,306 | $ 4,845,829 | $ 69,134 | $ 105,439 |
| 0.6% | Month 35 | $ 50,000 | $ 4,000 | $ 404,621 | $ 32,370 | $ 4,855,447 | $ 62,473 | $ 98,843 |
| 0.6% | Month 36 | $ 50,000 | $ 4,000 | $ 405,415 | $ 32,433 | $ 4,864,985 | $ 62,596 | $ 99,029 |
| 0.6% | Month 37 | $ 50,000 | $ 4,000 | $ 406,204 | $ 28,434 | $ 4,874,443 | $ 58,656 | $ 91,090 |
| 0.0% | Month 38 | $ 50,000 | $ 4,000 | $ 406,985 | $ 28,489 | $ 4,883,823 | | $ 32,489 |
| 0.0% | Month 39 | $ 50,000 | $ 4,000 | $ 407,760 | $ 28,543 | $ 4,893,124 | | $ 32,543 |
| 0.0% | Month 40 | $ 50,000 | $ 4,000 | $ 408,529 | $ 28,597 | $ 4,902,348 | | $ 32,597 |
| 0.0% | Month 41 | $ 50,000 | $ 4,000 | $ 409,291 | $ 28,650 | $ 4,911,496 | | $ 32,650 |
| 0.0% | Month 42 | $ 50,000 | $ 4,000 | $ 410,047 | $ 28,703 | $ 4,920,566 | | $ 32,703 |
| 0.0% | Month 43 | $ 50,000 | $ 4,000 | $ 410,797 | $ 28,756 | $ 4,929,562 | | $ 32,756 |
| 0.0% | Month 44 | $ 50,000 | $ 4,000 | $ 411,540 | $ 28,808 | $ 4,938,482 | | $ 32,808 |
| 0.0% | Month 45 | $ 50,000 | $ 4,000 | $ 412,277 | $ 28,859 | $ 4,947,328 | | $ 32,859 |
| 0.0% | Month 46 | $ 50,000 | $ 4,000 | $ 413,008 | $ 28,911 | $ 4,956,100 | | $ 32,911 |
| 0.0% | Month 47 | $ 50,000 | $ 4,000 | $ 413,733 | $ 28,961 | $ 4,964,799 | | $ 32,961 |
| 0.0% | Month 48 | $ 50,000 | $ 4,000 | $ 414,452 | $ 29,012 | $ 4,973,426 | | $ 33,012 |
| | Sum Life/Auto Commission Year 1 | $ 348,616 | | $ 1,229,157 | $ 4,973,426 | $ 7,024,761 | $ 8,602,534 | |
| | Book Value (3.5 Valuation) | | | | | $ 1,392,559.31 | | |
| | Total Loss due to Allstate | | | | | $ 9,995,094 | | |

## **INTERROGATORY NO. 14**

Identify each and every individual from whom you or your representative obtained a written or oral statement or affidavit (signed or unsigned, and whether or not under oath) relating to the allegations set forth in your First Amended Complaint.

**ANSWER:**

| **Name** | **Address/Telephone** | **Employer/Title** |

Plaintiff has not obtained any statements or affidavits relating to the allegations set forth in Plaintiffs' First Amended Complaint.

## INTERROGATORY NO. 15

Provide the name of each person whom you may use as an expert witness at trial, and state in detail the substance of the opinions to be provided by each expert witness.

**ANSWER:**

| **Name** | **Substance of Opinion** |

No such expert has yet been retained. Plaintiff reserves the right to supplement said response.

## **INTERROGATORY NO. 16**

Identify all documents that you reviewed or relied upon to answer any of the Interrogatories above, specifying which documents were reviewed or relied upon to answer which Interrogatories.

**ANSWER:**

| **Type** | **Subject Matter** | **Date** | **Author** | **Addressee/Relation to Author** |
| --- | --- | --- | --- | --- |

Type: Word; Subject Matter: How to access saved quotes job aid; Date: 7/31/20220; Author: Jarius Hollinger; Address/Relation to Author: Plaintiffs assigned Agency Process Specialist.

*Ulises Cicciarelli*
_____
ULISES

STATE OF _____ )
                ss.:
COUNTY OF _____ )

BEFORE ME the undersigned authority, personally appeared ULISES CICCIARELLI, who executed the foregoing responses to Defendant Allstate Insurance Company's First Set of Interrogatories to Plaintiff, Ulises Cicciarelli and stated that such answers are true and correct.

Sworn to and subscribed before me this _____ day of _____, 2022.

                                                    _____
                                                    Notary Public, State of _____
                                                    Print or Stamp Name: _____
                                                    Commission No: _____
                                                    My Commission Expires: _____