UNITED STATES DISTRICT COURT SOUTHERN
DISTRICT OF FLORIDA FT. LAUDERDALE DIVISION

Case No.: 0:21-cv-60515-FAM

PRESTIGE INSURANCE GROUP, LLC,
a Delaware Limited Liability Company and
ULISES CICCIARELLI, an individual,

    Plaintiffs,

vs.

ALLSTATE INSURANCE COMPANY,
an Illinois Corporation,

    Defendant.

_____/

**PLAINTIFFS PRESTIGE INSURANCE
GROUP, LLC AND ULISES CICCIARELLI'S RESPONSE
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Prestige Insurance Group, LLC ("Prestige") and Ulises Cicciarelli ("Cicciarelli") (Prestige and Cicciarelli are collectively referred to as "Plaintiffs") respectfully request the Court to deny Defendant Allstate Insurance Company's ("Allstate") Motion for Summary Judgment, and to support their position, Plaintiffs submit this Response, Memorandum, and their accompanying Statement of Material Facts.

**I.  INTRODUCTION AND SUMMARY OF ARGUMENT**

In March 2019, Cicciarelli began working with Allstate as a Producer to learn the insurance business and ultimately become an Agency Owner. In April 2020, Cicciarelli was approached by an Allstate Field Sales Leader ("FSL"), Kaylee Colvard, to become an insurance agent for Allstate. Subsequently, an Agent Pre-Appointment Agreement was executed for Allstate Exclusive Agency Program in March of 2020 and ultimately, as described below, agency agreements.

1

Allstate assigned Cicciarelli an FSL to guide Cicciarelli through the application process and to provide Cicciarelli with information about Allstate and its operations. Allstate put the FSL in a position of trust to Cicciarelli and in a position to disclose information to Cicciarelli about Allstate's operations.

Cicciarelli and Prestige were in regular communication with Allstate from the time of application through the execution of the agency agreements discussed below and subsequently regarding all aspects of Cicciarelli and Prestige's operations. On July 23, 2020, Cicciarelli executed Allstate's R3001S Exclusive Agency Agreement ("R3001S Agreement") in his individual capacity. The R3001S Agreement purports to govern the independent contractor relationship between Allstate and Cicciarelli.

On August 3, 2020, Prestige executed Allstate's R3001C Exclusive Agency Agreement ("R3001C Agreement") in its corporate capacity. Both the R3001S Agreement and the R3001C Agreement purport to incorporate several supplements as part of the terms of the agreements including the Supplement for the R3001 Agreement ("Supplement"), Exclusive Agency Independent Contractor Manual ("EA Manual") and the Allstate Agency Standards ("Agency Standards") (the R3001S Agreement, R3001C Agreement, Supplement, EA Manual, and Agency Standards are collectively referred to as the "Agreements").

Allstate determined that Plaintiffs' success, while benefiting Allstate's profits, would require substantial commissions and bonuses to be paid to Plaintiffs under the terms of their compensation structure as set forth in the Agreements with Plaintiffs. Upon realizing the sums owed from Allstate to Plaintiffs, Allstate took measures to avoid paying those substantial commissions and bonuses to Plaintiffs. One of those measures was that Allstate initiated a sham

investigation into Plaintiffs' operations, searching for a reason to terminate the Agreements and to avoid payment to Plaintiffs.

During fully cooperative interviews of Prianca Little, Meileik Williams, Glen Hunter, Jose Rijos, and Cicciarelli, Allstate was provided full explanations and documentation of all relevant information regarding the alleged basis for the "investigation." Plaintiffs and their employees fully complied and participated in Allstate's investigation providing details, e-mails, and text messages of all relevant communications and even provided further information subsequent to the interviews, which substantiated the policies were written to Allstate's standards. The information provided by Plaintiffs and corroborated by Allstate's own employees demonstrated that, with respect to representations made by Plaintiffs in their application, Allstate was fully aware of the modifications and authorized amendments to Plaintiffs' intended operations before Plaintiffs began business on or around August 1, 2020, as was common practice with Allstate.

Further, with respect to policies written by Plaintiffs' employees, Allstate was fully aware of circumstances that false or misleading information was provided by certain customers to Plaintiffs' employees which is commonplace in the insurance industry. Even assuming Plaintiffs' employees issued policies outside of Allstate's guidelines, Cicciarelli had no knowledge of such activities and was not afforded any opportunity by Allstate to take any corrective actions regarding such alleged activities. Furthermore, Cicciarelli proactively sought assistance to ensure compliance with Allstate's guidelines.

On November 13, 2020, Allstate terminated the R3001C Agreement with Prestige. Allstate further communicated in the December 14, 2020, correspondence, that despite profiting from Plaintiffs' performance under the Agreements both before and after the commencement of the

3

"investigation," it would not pay any bonus commissions to Plaintiffs earned from the inception of the relationship on August 1, 2020:

> "The Supplement for the R3001 Agreement, which Mr. Cicciarelli had access to, outlines any bonus commission guidelines. The supplement states that if the Company has terminated the R3001 Agreement immediately for cause, an Agent shall not be eligible for bonus compensation starting with the year in which the incident occurred that led to the termination through the year in which the Company has terminated the R3001 Agreement immediately for cause. Therefore, Mr. Circciarelli [sic] is not eligible for any bonus compensation for 2020."

The Agreements, including the Supplement, afforded Allstate substantial discretion to determine the existence of a possible ground for termination with cause and withhold commissions earned. There was no valid basis for Allstate to terminate the Agreements for cause and to withhold payment of bonuses earned in 2020. Plaintiffs did not provide false information to Allstate as they were in constant communication regarding all aspects of its business operations and Allstate assented to all changes to Plaintiffs' proposed operations. Simply put, Plaintiffs did not fail to issue policies according to Allstate's guidelines.

Allstate's correspondence terminating the relationship between Plaintiffs and Allstate along with the Supplement provided that if Plaintiffs elected to sell their economic interest in their book of business, Allstate has the right of approval of the buyer. On February 3, 2021, when Cicciarelli contacted Allstate's assigned representative, Maria Reuthers, to discuss the sale of Plaintiffs' book to a potential buyer, he was advised that he could no longer transfer his interest because the submission deadline had passed. There can be no dispute that Allstate never previously advised Plaintiffs of any such deadline.

**II.     SUMMARY OF UNDISPUTED MATERIAL FACTS**

Cicciarelli and his company, Prestige, entered into the Agreements with Allstate to operate an Allstate exclusive agency under which Prestige would act as an agent of Allstate in marketing,

selling, and servicing Allstate insurance and other approved products, and servicing the customers they solicit. *See* Defendant's Statement of Facts ("DF SOF") ¶¶ 11, 13. As an exclusive agent of Allstate, Plaintiffs were authorized to receive and accept applications for insurance on behalf of Allstate "during the term of [their] agreement." DF SOF ¶ 14. The terms of Plaintiffs' agency relationship with Allstate are memorialized in an R3001 Exclusive agency Agreement ("R3001 Agreement"), which was modified to Plaintiffs' intended operations prior to the time Plaintiffs began business or around August 1, 2020. *See* Plaintiffs' Statement of Facts ("PL SOF") ¶ 3.

Plaintiffs' agency relationship with Allstate was effective August 1, 2020. DF SOF ¶ 10. Cicciarelli and Gerry Rivas had an agreement where Rivas would provide support for Prestige to be prepared for August 1. PL SOF ¶ 56. The staff that Cicciarelli eventually employed in Prestige were employed by the Rivas agency prior to August 1, 2020 so they could start the training process. PL SOF ¶ 58. Allstate Corporate provided Allstate's Level 1 and Level 2 binding training. PL SOF ¶ 64.

During the July 1 to August 1, 2020 timeframe, Rivas added the staffing tool and registered the individuals who needed training for the Allstate training. PL SOF ¶ 63. Rivas made his agency available so the staff could go through the Allstate training. See PL SOF ¶ 60. Cicciarelli's staff was added under Rivas' agency prior to August 1, 2020. PL SOF ¶ 59. The staff could not sell or bind a policy until August 1, 2020. PL SOF ¶ 70. Jarius Hollinger provided documents and step-by-step instructions on issuing quotes prior to receiving binding authority prior to an appointment from Allstate. PL SOF ¶ 75.

Cicciarelli's staff quoted through Rivas' agency prior to August 1, 2020.  PL SOF ¶ 66. Cicciarelli's staff was permitted to pre-bind and take payment information while working under Rivas' agency. PL SOF ¶ 69. Rivas was ultimately responsible for the activities going on in his

agency prior to August 1. PL SOF ¶ 62. If a customer and one of the future Prestige employees was speaking with prior to August 1st wanted to bind insurance right away, they would have had to directly contact Allstate. PL SOF ¶ 79. After examining Prestige's issued policies, Allstate Agency Process Specialists Mario Castro and Jarius Hollinger found no issues. PL SOF ¶ 83.

Cicciarelli underwent compliance training with Allstate's Mario Castro. PL SOF ¶ 80. There were no issues with Cicciarelli's practices. PL SOF ¶ 82. Cicciarelli did not provide false information to Allstate. PL SOF ¶ 82. Cicciarelli did not fail to issue policies according to Allstate's guidelines. PL SOF ¶ 81. Cicciarelli did not make misrepresentations to Allstate. PL SOF ¶ 82. Cicciarelli did not violate any of Allstate's policies. PL SOF ¶ 81. Allstate has not paid the termination payment to Cicciarelli or Prestige. PL SOF ¶ 55.

### III.  LEGAL STANDARD

#### A. Summary Judgment Standard.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

"Summary judgment is a lethal weapon, and courts must be mindful of its aims and targets and beware of overkill in its use." *Edmondson v. Velvet Lifestyles, LLC*, 43 F.4th 1153, 1159 (11th Cir. 2022) (internal citations omitted). At summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Genuine issues of material fact exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505. "So a claim should go to trial if 'there are any genuine factual issues that properly can be resolved only

by a finder of fact because they may reasonably be resolved in favor of either party'." *Edmondson,* F.4th at 1159 (citing *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505).

"If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (internal quotation marks and citations omitted). This is because "the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Carlson v. FedEx Ground Package Sys., Inc.*, 787 F.3d 1313, 1317-1318 (11th Cir. 2015).

The Court's function at the summary judgment stage is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505, 91 L.Ed.2d 202.

### B. Implied Contract of Good Faith and Fair Dealing.

"Under Florida law, the covenant of good faith and fair dealing is implied in every contract, requiring the parties to follow standards of good faith and fair dealing designed to protect the parties' reasonable contractual expectations." *Townhouses of Highland Beach Condo. Ass'n, Inc. v. QBE Ins. Corp.*, 504 F. Supp. 2d 1307, 1310 (S.D. Fla. 2007) (citing *Centurion Air Cargo, Inc. v. United Parcel Service Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005); *Cibran v. BP Products North America, Inc.*, 375 F. Supp. 2d 1355, 1359 (S.D. Fla. 2005)).

The implied covenant of good faith and fair dealing may be breached "when one party may make a discretionary decision without defined standards". *Townhouses of Highland Beach*, 504 F. Supp. 2d at 1310 (citing *Publix Super Markets, Inc. v. Wilder Corp. Of Delaware*, 876 So. 2d 652, 654 (Fla. 2d DCA 2004)). "Where there are no standards for exercising discretion, the implied

7

covenant protects contracting parties' reasonable commercial expectations." *Townhouses of Highland Beach*, 504 F. Supp. 2d at 1310.

When a specific contractual term gives one party discretion in performance under that term, "the parties' intent to be bound by an enforceable contract raises an implied obligation of good faith to observe reasonable limits in exercising that discretion, consistent with the parties' purpose or purposes in contracting." *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1097–98 (Fla. 1st DCA 1999). Further, "where the terms of the contract afford a party substantial discretion to promote that party's self-interest, the duty to act in good faith nevertheless limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party." *Cox*, 732 So. 2d at 1097–98.

In *Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273 (S.D. Fla. 2009), the plaintiffs claimed that a provision of their mortgage agreement gave defendant discretion in the selection of the insurance company and rate, and that the defendant exercised that discretion capriciously, in bad faith, and in contravention of the parties' reasonable expectations. *Id.* at 1278–79.

This district court, relying on *Cox*, found that "as long as the implied covenant does not vary the express terms of the contract, the failure to perform a discretionary act in good faith may be a breach of the implied covenant of good faith and fair dealing". *Id.* at 1279.

Moreover, even if Allstate had "cause" to terminate (which it did not), that "cause" or prior breach does not extinguish a claim for breach of the implied covenant of good faith and fair dealing. Even prior breaches of contracts, "regardless of whether they were material breaches," do not preclude claims for breach of the implied covenant. *Hamilton v. Suntrust Mortg. Inc.*, 6 F. Supp. 3d 1300, 1309 (S.D. Fla. 2014) (citing *Abels*, 678 F. Supp. 2d at 1278–79).

8

### C. Breach of Contract

Under Florida law, the elements of a breach of contract claim are: (1) the existence of a contract, (2) a breach thereof, and (3) damages flowing from the breach. *Wistar v. Raymond James Fin. Servs., Inc.*, 365 F. Supp. 3d 1266, 1269 (S.D. Fla. 2018) (citing *Knowles v. C. I. T. Corp.*, 346 So. 2d 1042, 1043 (Fla. 1st DCA 1977)).

If a contract is "susceptible to more than one reasonable interpretation" and cannot be reasonably reconciled, the contract is deemed ambiguous and rules of contract interpretation must be applied. *State Farm Mut. Auto. Ins. Co. v. Menendez*, 70 So. 3d 566, 570 (Fla. 2011); *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 735 (Fla. 2002); *Discover Prop. & Cas. Ins. Co. v. Beach Cars of W. Palm, Inc.*, 929 So. 2d 729, 732 (Fla. 4th DCA 2006). There must be "a genuine inconsistency, uncertainty, or ambiguity in meaning [that] remains after resort to the ordinary rules of construction" for a provision to be ambiguous. *Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So. 2d 938, 942 (Fla. 1979). Where the terms of a contract are ambiguous, the actual intention of the parties-the governing principle of contract construction-becomes a question of fact. *In re Gardinier, Inc.*, 831 F.2d 974, 976 (11th Cir. 1987).

### IV. ARGUMENT

Allstate is not entitled to summary judgment because there are genuine issues of material fact regarding whether Allstate improperly terminated its relationship with Plaintiffs.

**A. There are genuine issues of material fact as to whether Allstate engaged in a Breach of Contract.**

    **1. Genuine issues of material facts exist about whether Allstate had cause to properly terminate Plaintiffs' agency relationship.**

Allstate improperly terminated Prestige's R3001 Agreement because Plaintiffs abided by their Agreements with Allstate regarding the agency's sales activities before the August 1, 2020 effective date of the R3001 Agreement, and the agency did not falsify customer information in the application for insurance submitted to Allstate.

> **a. There are genuine issues of material fact on whether Plaintiffs' sales activities before August 1, 2020 violated the Agreements with Allstate.**

Regarding its actions prior to August 1, 2020, Prestige and its staff properly followed Allstate's policies. Allstate was aware of the modifications and authorized amendments to Plaintiffs' intended operations prior to the time Plaintiffs began business on or around August 1, 2020, as was common practice with Allstate. *See* PL SOF ¶ 8. The policies were bound on August 1, 2020 because Allstate's Agency Process Specialist Jarius Hollinger provided the mechanics on how to open and document the quotes that were under the Rivas Group and bound them under the Prestige. PL SOF ¶ 74. Hollinger provided documents and step-by-step instructions on issuing quotes prior to receiving binding authority prior to an appointment from Allstate. PL SOF ¶ 75. Additionally, Kaylee Corvard, an Allstate new agency FSL, told Cicciarelli via text message how to quote and build a pipeline under Rivas' MMS and then bind on August 1. PL SOF ¶ 3.

The staff could not sell or bind a policy until August 1, 2020. PL SOF ¶ 70. The polices that went into effect on August 1, 2020 were by customers that had given their payment and set the expectation that the policy would go into effect on August 1, 2020. PL SOF ¶ 72. Because Hollinger provided instructions on issuing quotes prior to receiving binding authority, and Ms. Corvard told Plaintiffs they could quote and build a pipeline under Rivas' MMS and then bind on August 1, these instructions from Allstate amounted to a modification to the Agreements, and at

the very least, there are genuine issues of material facts as to whether these were a modification, and whether Plaintiffs acted in accordance with the modified agreements.

There are genuine issues of material fact as to whether Plaintiffs' sales activities before August 1, 2020 violated the R3001 Agreement with Allstate in regard to the representations Prestige staff made to customers. Allstate's Motion continuously states that Plaintiffs' staff "sold" policies before August 1, 2020. However, it cannot be disputed Plaintiffs' staff could not sell or bind a policy until August 1, 2020. PL SOF ¶ 70.

Additionally, Allstate's motion relies on testimony from Wilks and Rice to show that Plaintiffs did not care for the customer, but rather to ensure that Prestige would receive credit for the sale. *See* Defendant's Motion, pp. 9-10. However, if a customer and one of the future Prestige employees was speaking with prior to August 1st wanted to bind insurance right away, they would have had to directly contact Allstate. PL SOF ¶ 79. Rice testified that prior to August 1, the staff were attempting to quote policies from potential customers and would tell the potential customers that we would take their information now and call them back on August 1st to bind the policy. PL SOF ¶ 73. If a customer wanted to bind a policy before August 1, the staff were instructed to transfer the call directly to the Allstate corporate line because they could not bind before August 1. PL SOF ¶¶ 70, 79.

Wilks testified that in July 2020, he did not make cold calls and all his calls were in bounds. PL SOF ¶ 68. Wilks testified further that prior to August 1, 2020, they were not selling policies and no payments had been taken. PL SOF ¶ 67. On August 1, 2020, Wilks contacted the customers he had previously spoken with and held over policies from July 2020 to confirm they wanted to have the policy and to obtain their payment information. PL SOF ¶ 76. Thus, there are genuine issues of material fact on whether Plaintiffs' sales activities before August 1, 2020, violated the

11

Agreements with Allstate. Therefore, Defendant's motion for summary judgment should be denied.

### b. There are genuine issues of material fact as to whether Allstate authorized or ratified Plaintiffs' sales activities before August 1, 2020.

In short, Allstate authorized or ratified Plaintiffs' sales activities before August 1, 2020—an assertion on its own sufficient to defeat Allstate's Motion based on a genuine issue of material fact relating to this issue. As mentioned above, Allstate was aware of the modifications and authorized amendments to Plaintiffs' intended operations before Plaintiffs began business on or around August 1, 2020, as was common practice with Allstate. *See* PL SOF ¶ 8. The policies were bound on August 1, 2020, because Allstate's Agency Process Specialist Hollinger provided the know-how on to open and document the quotes that were under Rivas' Group and bound them under Prestige. PL SOF ¶ 74. Hollinger provided documents and step-by-step instructions on issuing quotes prior to receiving binding authority prior to an appointment from Allstate. PL SOF ¶ 75. It is disingenuous at best for Allstate to send instructions to Plaintiffs on how to pre-bind quotes, and later cry foul. At the very least, there are genuine issues of material fact as to whether Allstate authorized or ratified Hollinger's instructions to Plaintiffs.

Kaylee Colvard, an Allstate FSL, that Plaintiffs relied upon and trusted, informed Plaintiffs that they can quote and build a pipeline under Rivas' MMS and then bind them on August 1st. Specifically, Colvard informed Plaintiffs that they "can run a saved quote audit under Garry's number and export to excel – will have sfl ids and quote ids to pull and bind day one!" *See* PL SOF ¶3; *see also* Exhibit 2b to Colvard Tr. (**Plaintiffs' Ex. 2**). Because Plaintiffs' received permission from Colvard to quote under Rivas' number, coupled with instructions on pre-binding

from Hollinger, there are genuine issues of material fact as to whether Plaintiffs' sales activities before August 1, 2020, were authorized or ratified by Allstate.

Also, Allstate's claim that Plaintiffs cannot identify a contract term that Allstate violated is misplaced. The actions taken by Allstate addressed in this brief violated the Enhanced Compensation Plan (See Ex. A to Plaintiffs' Amended Complaint) and the following sections of the R3001 Agreement: XV, XVI (A)-(C), and XVII(B)(3).

Furthermore, before August 1, 2020, Prestige was not acting on Allstate's behalf because Plaintiffs' staff was placed in Rivas' agency prior to August 1, 2020. POL SOF ¶ 59. Also, prior to August 1, 2020, Rivas was responsible for supervising and overseeing the activity that went on in his agency. PL SOF ¶ 61. Rivas was ultimately responsible for the activities going on in his agency prior to August 1, 2020. PL SOF ¶ 62.

Based on the above, there are genuine issues of material fact that as to whether Plaintiffs' sales activities prior to August 1, 2020 were authorized or ratified by Allstate. Therefore, Defendant's motion for summary judgment should be denied.

### c. There are genuine issues of material fact as to whether Prestige violated Allstate's sales guidelines

Allstate relies heavily on its investigation to defeat Plaintiffs' claims; however, the investigation and its findings are primarily hearsay or double hearsay that would be inappropriate to use as a basis to grant summary judgment here. Further, Allstate's investigation findings of fraud by Prestige are self-serving, conclusory, and speculative. Allstate fails to provide evidence of notice to Prestige of the alleged fraud, course of action taken by Prestige related to the subject customers, and the status of the policies at the time of the investigation. Additionally, Allstate has not provided records or information regarding the outcome of the customer allegations, i.e. – did

Allstate return the funds and cancel the customer's policy? At the very least, there are genuine issues of material fact as to whether Allstate had cause to terminate Plaintiffs' agency agreement. Allstate's investigation also fails to consider that potential customers may lie to obtain a better policy or there may have been miscommunications between a potential customer and a Prestige staff member.

Allstate's motion provides examples involving Keith Hutson, Lillian Cromuel, and Icilda Lawrence. Defendant's Motion, pp. 12-13. Cicciarelli was not aware of any situation in which someone affiliated with Prestige changed someone's marital status from married to single, even though the couple was in fact married. PL SOF ¶ 84. Cicciarelli was likewise not aware of the accusations that Ms. Little was falsifying applications for insurance. PL SOF ¶ 85. Cicciarelli vehemently denies that his agency falsified insurance applications and that he would have terminated the individuals who falsified insurance applications immediately. PL SOF ¶ 86. Rice does not recall hearing about situations where incorrect customer information was included in quotes. PL SOF ¶ 77.  Rice further testified that he does not know if Prestige staff members were applying multi-policy discounts adding on the homeowner's policy or extra policy without confirming with the customer or the customer did not hear the conversation correctly. PL SOF ¶ 35. What is more, Wilks did not encounter situations where polices were bound that customers did not want. PL SOF ¶ 78.

Cicciarelli and his staff were not aware of situations involving fraud or whether applications were intentionally falsified. These could be examples of a miscommunication between individuals or an accident by a Prestige staff member, but these are examples that should be brought before a jury as they demonstrate genuine issues of material fact as to whether Prestige violated Allstate's sales guidelines.  Therefore, Defendant's motion should be denied.

    **2. Allstate failed to pay Plaintiffs all the commissions and bonuses to which they were entitled.**

Allstate claims that it does not owe Plaintiffs commissions and Bonuses because Allstate terminated the R3001 Agreement based on cause. However, as argued above, there are genuine issues of material fact as to whether Allstate terminated the R3001 Agreement based on cause and as to whether that termination was proper under the circumstances. Thus, Defendant's motion should be denied.

    **3. There are genuine issues of material fact on whether Allstate provided Plaintiffs with the Required Time to Sell the Interest in Prestige.**

Allstate's termination letter provided that a sale of Plaintiffs' economic interest had to be finalized on or before March 1, 2021. Rather than abiding by the March 1, 2021 deadline, Allstate unilaterally provided a February deadline.

In connection with these deadlines, Allstate assigned Cicciarelli an Allstate associate, Maria Ruether, to help him with the process of selling his book. PL SOF ¶ 93. The termination letter provides that March 1st is the date that Prestige needs to sell, and Cicciarelli asked Ruether for his business metrics, so he could value the book for sale. PL SOF ¶ 92. It took Ruether approximately 11 days to respond to Cicciarelli's request for business metrics. PL SOF ¶ 93. Cicciarelli identified a potential buyer and was looking to move forward on the sale of his book at the beginning of February, when another Allstate associate, Paul Sylvester, emailed Cicciarelli telling him that he missed the February deadline. PL SOF ¶ 94. Nowhere in the termination letter or any documentation was a February deadline stated. PL SOF ¶ 95. Allstate took Plaintiffs' book of business and did not provide Cicciarelli or Prestige with a termination payment. PL SOF ¶ 96. Allstate has not paid the termination payment to Cicciarelli or Prestige. PL SOF ¶ 96.

Because Allstate provided a unilateral February deadline, there are genuine issues of material fact as to Plaintiffs' claim about his effort to sell the economic interest in Prestige. Therefore, Defendant's motion should be denied.

**4. There are genuine issues of material fact as to whether Allstate complied with its obligations to pay Prestige a termination payment.**

Allstate wrongly claims that it has made regular monthly payments of termination payment to Prestige. Cicciarelli disputes that he has received termination payments. PL SOF ¶ 96. If Allstate had, in fact, made these regular payments, Allstate should have provided bank statements to show payment has been made. It has not. Thus, there are genuine issues of material fact as to whether Allstate complied with its obligations to pay Prestige a termination payment, and Defendant's motion should be denied.

**B. There are genuine issues of material fact as to whether Plaintiffs' claim for breach of implied covenant of good faith and fair dealing is barred.**

Allstate's Motion improperly asserts that Plaintiffs' claims for breach of implied covenant of good faith and fair dealing is barred because it runs contrary to language of the R3001 Agreement and because the claim is duplicative of Plaintiffs' breach of contract claim. Here, the Plaintiffs' received permission from Allstate to obtain quotes prior to August 1 and to bind said quotes on or after August 1, 2020. The permission to obtain quotes prior to August 1, 2020, did not vary the express terms of the contract because Plaintiffs could not and did not sell or bind policies prior to August 1, 2020.

Plaintiffs reasonably expected that under the Agreements, Allstate would not terminate the Agreements for arbitrary and capricious reasons, or for minor infractions that are corrected and that are common under the ordinary course of dealing. Plaintiffs' Amended Complaint, ¶ 111. However, Allstate relied on its sham investigation findings based on hearsay to terminate the

parties' Agreements with cause. There can be no dispute that Allstate's findings of fraud by Prestige are self-serving, conclusory, and speculative. Allstate fails to provide evidence of notice to Prestige of the alleged fraud, the course of action taken by Prestige related to the subject customers, and the status of the policies at the time of the investigation. Allstate's failures demonstrate that Allstate exercised its discretion capriciously, in bad faith, and in contravention of the parties' reasonable expectations. Additionally, Allstate has not provided records or information regarding the outcome of the customer allegations, i.e. – did Allstate return the funds and cancel the customer's policy? At the very least, there are genuine issues of material fact as to whether Allstate's actions or the lack thereof is a breach of implied covenant of good faith and fair dealing.

As argued above, even if Allstate had "cause" to terminate (which it did not), that "cause" or prior breach does not extinguish this claim. Even prior material breaches of contracts do not preclude claims for breach of the implied covenant. *Hamilton*, 6 F. Supp. 3d at 1309 (citing *Abels*, 678 F. Supp. 2d at 1278–79). Therefore, Defendant's Motion for Summary Judgment should be denied.

Next, contrary to Allstate's assertions, Plaintiffs' breach of implied duty of good faith and fair dealing claim and breach of contract claims are different, and Allstate is flatly incorrect in arguing otherwise as demonstrated by Plaintiffs' pleadings in this Court. *See* Plaintiffs' Amended Complaint, ¶¶ 88-96 (breach of contract) and ¶¶ 107-119 (breach of implied duty of good faith). Thus, Defendant's Motion for Summary Judgment should be denied.

V.     CONCLUSION

For the reasons described herein, Defendant's motion for summary judgment should be denied.

Respectfully submitted,

**HUBBARD SNITCHLER & PARZIANELLO PLC**

*/s/ Eric A. Parzianello*
Eric A. Parzianello (Fla. Bar No. 161225)
Attorneys for Plaintiffs
999 Vanderbilt Beach Road, Suite 200
Naples, Florida 34108
(239) 325-1802

**CERTIFICATE OF SERVICE**

I, Eric A. Parzianello, hereby certify that on September 16, 2022, I electronically filed Plaintiffs Prestige Insurance Group, LLC and Ulises Cicciarelli's Response to Defendant's Motion for Summary Judgment with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel.

*/s/ Eric A. Parzianello*
Attorney for Plaintiffs