UNITED STATES DISTRICT COURT SOUTHERN
DISTRICT OF FLORIDA FT. LAUDERDALE DIVISION
Case No.: 0:21-cv-60515-FAM

PRESTIGE INSURANCE GROUP, LLC,
a Delaware Limited Liability Company and
ULISES CICCIARELLI, an individual,
    Plaintiffs,
vs.
ALLSTATE INSURANCE COMPANY,
an Illinois Corporation,
    Defendant.
_____/

**PLAINTIFFS PRESTIGE INSURANCE
GROUP, LLC'S AND ULISES CICCIARELLI'S STATEMENT OF MATERIAL FACTS**

Plaintiffs Prestige Insurance Group, LLC ("Prestige") and Ulises Cicciarelli ("Cicciarelli" and collectively referred to as "Plaintiffs") submit this Statement of Material Facts in support of their Response to Defendant's Motion for Summary Judgment in the above-caption action.

**A. Background on Allstate**

1. Undisputed.

2. Undisputed.

3. Disputed. Allstate was aware of the modifications and authorized amendments to Plaintiffs' intended operations prior to the time Plaintiffs began business on or around August 1, 2020 as was common practice with Allstate. Cicciarelli Tr. (**Defendant's Ex. 8**) at 170:20–172:4. Furthermore, Jarius Hollinger provided documents on how to open quotes and bind them under Prestige. *Id.* at 171:25–172:3; Ex. 18 to Colvard Tr. (**Plaintiffs' Ex. 1**). Field sales leader Kaylee Colvard told Cicciarelli via text message how to quote and build a pipeline under Garry Rivas' MMS and then bind on August 1. Exhibit 2b to Colvard Tr. (**Plaintiffs' Ex. 2**).

4. Undisputed.

**B. Plaintiffs' Relationship with Allstate Prior to August 1, 2020**

5. Undisputed.

6. Undisputed.

7. Undisputed.

8. Disputed. Allstate was aware of and assessed to modifications and authorized amendments to Plaintiffs' intended operations prior to the time Plaintiffs began business on or around August 1, 2020 as was common practice with Allstate. Cicciarelli Tr. at 170:20–172:4. Furthermore, Jarius Hollinger provided documents on how to open quotes and bind them under Prestige. *Id.* at 171:25–172:3; Ex. 18 to Cicciarelli Tr. (**Plaintiffs' Ex. 1**). Field sales leader Kaylee Colvard told Cicciarelli via text message how to quote and build a pipeline under Garry Rivas' MMS and then bind on August 1. Exhibit 2b to Colvard Tr. (**Plaintiffs' Ex. 2**).

9. Undisputed.

**C. Plaintiffs' R3001 Exclusive Agency Agreement with Allstate**

10. Undisputed.

11. Undisputed.

12. Undisputed.

13. Undisputed.

14. Undisputed.

15. Undisputed.

16. Disputed. Allstate was aware of the modifications and authorized amendments to Plaintiffs' intended operations prior to the time Plaintiffs began business on or around August 1, 2020 as was common practice with Allstate. Cicciarelli Tr. at 170:20–172:4. Additionally, Jarius Hollinger provided documents on how to open quotes and bind them under Prestige. *Id.* at 171:25–172:3; Ex. 18 to Cicciarelli Tr. (**Plaintiffs' Ex. 1**). Furthermore, field sales leader Kaylee Colvard told Cicciarelli via text message how to quote and build a pipeline under Garry Rivas' MMS and then bind on August 1. Exhibit 2b to Colvard Tr. (**Plaintiffs' Ex. 2**).

17. Undisputed.

18. Undisputed.

19. Undisputed.

20. Undisputed.

21. Undisputed.

D. **Allstate's Investigation and Termination of Plaintiffs' Agreements**

22. Undisputed.

23. Undisputed.

24. Undisputed.

25. Undisputed.

26. Disputed. Cicciarelli believes his agency did not falsify insurance applications and he would have terminated any individuals that were falsifying insurance applications immediately. Cicciarelli Tr. at 158:3–158:11.

27. Undisputed.

28. Undisputed.

29. Undisputed.

30. Undisputed.

31. Undisputed.

32. Undisputed.

33. Undisputed.

34. Undisputed.

35. Disputed. Former Prestige employee Joshua Rice testified that he does not know if Prestige staff members were applying multi-policy discounts adding on the homeowner's policy or extra policy without confirming with the customer or the customer did not hear the

conversation correctly. Rice Tr. (**Defendant's Ex. 15**) at 73:14–73:21. Rice heard talk in the office about a customer calling back in who did not know about the renter's policy. *Id.* at 73:22–73:24.

36. Undisputed.

37. Undisputed.

38. Undisputed.

39. Disputed. Cicciarelli's staff could not sell or bind a policy until August 1, 2020. *Id.* at 94:16-94:25. Cicciarelli's staff was operating under the Gerry Rivas Agency. Colvard Tr. (**Defendant's Ex. 18**) at 28:24–29:6. The staff that Cicciarelli eventually employed in Prestige were employed by the Rivas agency prior to August 1, 2020 so they could start the training process. Cicciarelli Tr. at 57:24–58:7. Approximately 15 to 20 individuals that would eventually be employed by Prestige went through training at the Rivas agency between July 1 and August 2020. *Id.* at 62:18–62:23. Allstate Corporate provided the individuals with Allstate's Level 1 and Level 2 binding training. *Id.* at 62:24–63:9. Gerry Rivas was involved in the staff working under his agency. Colvard Tr. at 84:12-84:25. Prior to August 1, 2020, Gerry Rivas was responsible for supervising and overseeing the activity that went on in his agency. *Id.* at 85:1-85:5. Gerry Rivas was ultimately responsible for the activities going on in his agency prior to August 1. *Id.* at 86:5-86:8.

40. Disputed. During the July 1 to August 1, 2020 timeframe, Gerry Rivas added the staffing tool and registered the individuals who needed training for the Allstate training. Cicciarelli Tr. at 63:10–63:15.

41. Disputed. During the July 1 to August 1, 2020 timeframe, Gerry Rivas added the staffing tool and registered the individuals who needed training for the Allstate training. Cicciarelli Tr. at 63:10–63:15. Rice, Wilks, and other employees had previously received training through

another agency, the Masih-Das agency. Rice Tr. at 12:11-12:18, 18:20-:19:11, 24:1-24:8; Wilks Tr. at 11:20-12:13.

42. Undisputed.

43. Undisputed.

44. Disputed. Prior to August 1, 2020, Cicciarelli's staff was placed under the Gerry Rivas Agency. Colvard Tr. at 67:14–67:18.

45. Undisputed.

46. Undisputed.

47. Disputed. There was no valid basis for Allstate to terminate the Agreements for cause and to withhold payments of bonuses earned in 2020 under the Enhanced Compensation Plan. *See* Plaintiffs' First Amended Complaint (**Plaintiffs' Ex. 3, ¶ 68**).

48. Undisputed.

49. Disputed. Plaintiffs' responses address the actions Defendant undertook to breach the R3001C Agreement. *See* Cicciarelli Response (**Defendant's Ex. 19**, ¶¶ 4-5); *see also* Prestige Responses (**Defendant's Ex. 20**, ¶¶ 4-5).

**E. Plaintiffs' Efforts to Transfer the Interest in Agency**

50. Undisputed.

51. Undisputed.

52. Undisputed.

53. Undisputed.

54. Undisputed.

55. Disputed. Allstate has not paid the termination payment to Cicciarelli or Prestige. Cicciarelli Tr. at 178-179; 180.

## ADDITIONAL FACTS

56. Cicciarelli and Rivas had an agreement where Rivas would provide support for Prestige to be prepared for August 1. Cicciarelli Tr. at 57:17-57:22.

57. Kaylee Colvard was an Allstate new agency field sales leader that assistant Cicciarelli with his business plan and development. Colvard Tr. at 7:21-7:23, 11:15-11:17, 11:24-12:3.

58. The staff that Cicciarelli eventually employed in Prestige were employed by the Rivas agency prior to August 1, 2020 so they could start the training process. Cicciarelli Tr. at 57:23-58:7.

59. Cicciarelli's staff was added under Gerry Riva's agency prior to August 1, 2020, and were operating under the Gerry Rivas Agency. Colvard Tr. at 23:1-23:3, 28:24-29:6, 67:14-67:18.

60. Rivas made his agency available so the staff could go through the Allstate training. Cicciarelli Tr. at 63:19-63:23. Rivas was involved in the staff working under his agency. Colvard Tr. at 84:12-84:25.

61. Prior to August 1, 2020, Rivas was responsible for supervising and overseeing the activity that went on in his agency. Colvard Tr. at 85:1-85:5.

62. Rivas was ultimately responsible for the activities going on in his agency prior to August 1. Colvard Tr. at 86:5-86:8.

63. During the July 1 to August 1, 2020 timeframe, Rivas added the staffing tool and registered the individuals who needed training for the Allstate training. Cicciarelli Tr. at 63:10-63:15. Rice, Wilks, and other employees had previously received training through another agency, the Masih-Das agency. Rice Tr. at 12:11-12:18, 18:20-:19:11, 24:1-24:8; Wilks Tr. at 11:20-12:13.

64. During the period between July 6 2020 and August 1, 2020, individuals who were not yet employed by Prestige were trainees. Cicciarelli Tr. at 61:4-61:9; 68:22-68:25. The individuals that eventually came to work at the Prestige and needed training went through training at the

Rivas Agency. *Id.* at 62:18-62:23. Allstate Corporate provided Allstate's Level 1 and Level 2 binding training. *Id*.

65. After the training period, and once the individuals began working for Prestige, the individuals would become employees and compensated. Cicciarelli Tr. at. 69:8-69:13.

66. Cicciarelli's staff quoted through Rivas' agency prior to August 1, 2020. Colvard Tr. at 67:19-67:21.

67. Prior to August 1, 2020, the staff were not selling policies and no payments had been taken. Wilks Tr. at 31:22-32:17.

68. Wilks testified that in July 2020, he did not make cold calls and all his calls were in bounds. Wilks Tr. (**Defendant's Ex. 16**) at 28:20-29:7.

69. Cicciarelli's staff was permitted to pre-bind and take payment information while working under Rivas' agency. Colvard Tr. at 77:19-77:25.

70. The staff could not sell or bind a policy until August 1, 2020. Cicciarelli Tr. 94:16-94:25.

71. The persons that would eventually become employed by Prestige were agents that would become Prestige agents once the appointment from Allstate was completed on August 1, 2020. Cicciarelli Tr. at. 60:21-61:3.

72. The polices that went into effect on August 1, 2020 were by customers that had given their information and set the expectation that the policy would go into effect on August 1, 2020. Cicciarelli Tr. at 81:7-82:1.

73. Rice testified that prior to August 1, they were attempting to quote policies from potential customers, and would tell the potential customers that we would take their information now and call them back on August 1 to bind the policy. Rice Tr. at 34:21-35:12.

74. The policies were bound on August 1, 2020 because Allstate's Agency Process Specialist Jarius Hollinger provided the mechanics on how to open and document the quotes that were under the Rivas Group and bound them under Prestige. Cicciarelli Tr. at 85:7-86:10.

75. Allstate's Agency Process Specialist Jarius Hollinger provided documents and step-by-step instructions on issuing quotes prior to receiving binding authority prior to an appointment from Allstate. Cicciarelli Tr. at 101:10-102:1.

76. On August 1, 2020, Wilks contacted the customers he had previously spoken with and held over policies from July 2020 to confirm they wanted to have the policy and to obtain their payment information. Wilks Tr. at 41:22-42:4.

77. Rice does not recall hearing about situations where incorrect customer information was included in quotes. Rice Tr. at 74:12-74:18.

78. Wilks did not encounter situations where polices were bound that customers did not want. Wilks Tr. at 51:13-51:16.

79. If a customer and one of the future Prestige employees spoke prior to August 1 and wanted to bind insurance right away, the customer would have had to contact Allstate direct or have gone through Rivas' agency. Cicciarelli Tr. at p. 96:17-96:23; Rice Tr. at 37:21-37:25; Colvard Tr. at 86:5-86:17.

80. Cicciarelli underwent compliance training with Allstate's Mario Castro. Colvard Tr. at 49:17-50:9.

81. Cicciarelli did not violate any of Allstate's policies. Colvard Tr. at 61:19-61:22. Cicciarelli did not fail to issue policies according to Allstate's guidelines. Colvard Tr. at 61:9-61:12.

82. There were no issues with Cicciarelli's practice. Colvard Tr. at 61:1-61:3. Cicciarelli did not provide false information to Allstate. *Id.* at 61:4-61:7. Cicciarelli did not make misrepresentations to Allstate. *Id.* at 61:14-61:17.

83. Allstate Agency Process Specialists Mario Castro and Jarius Hollinger audited Prestige's polices and found no compliance issues. Cicciarelli Tr. at 175:5-175:15.

84. Cicciarelli was not aware of any situation in which someone affiliated with Prestige changed someone's marital status from married to single, even though the couple was in fact married. Cicciarelli Tr. at 149:23-150:4.

85. Cicciarelli was not aware of the accusations that Ms. Little was falsifying applications for insurance. Cicciarelli Tr. at 159:8-159:14. Allstate adduces no evidence that Ms. Little admits or does not contest the accusations that she intentionally falsified applications for insurance. It is a self-serving, conclusory, and speculative finding by Allstate.

86. Cicciarelli denies that his agency falsified insurance applications, and he would have terminated the individuals who falsified insurance applications immediately. Cicciarelli Tr. at 158:7-158:11.

87. Cicciarelli was not aware of any situation in which a member of the staff of Prestige wrote or issued a policy, in addition to the one the customer may have asked for and without the customer's consent to try and get the customer a discount. Cicciarelli Tr. at 165:9-165:15.

88. Cicciarelli would have terminated an individual if he knew they were advising customers to take out a renter's insurance policy for a day, receive a multi-line discount and then cancel the policy and still keep the discount. Cicciarelli Tr. at 165:19-166:2.

89. Cicciarelli would have terminated an individual had he known an individual misrepresented the martial status and improperly used the homeowners quote which was never bound. Cicciarelli Tr. at 166:3-166:24.

90. Cicciarelli not aware of situations at his agency where LSPs at his agency running multiple credit reports in different configuration on customers trying to figure out a configuration that would entitle a customer to a discount. Cicciarelli Tr. at 167:3-167:9.

91. Cicciarelli did not see and was not aware of any situation in which Rice gave a customer a multi-policy discount without that customer actually purchasing more than one policy with the company. Cicciarelli Tr. at 167:10-167:15.

92. Allstate's termination letter provides that March 1 is the date that Prestige needs to sell, so Cicciarelli asked Maria Ruether for his business metrics, so he could value the book for sale. Cicciarelli Tr. at 180:17-180:22; Ex. D of Plaintiffs' First Amended Complaint.

93. Cicciarelli was assigned an Allstate associate, Maria Ruether, to help him with the process of selling his book. Cicciarelli Tr. at 180:11-180:13. It took Maria Ruether approximately 11 days to respond to Cicciarelli's request for business metrics. Cicciarelli Tr. at 180:23-180:25.

94. Cicciarelli identified a potential buyer and was looking to move forward on the sale of his book at the beginning of February, when another Allstate associate, Paul Sylvester, emailed Cicciarelli telling him that he missed the February deadline. Cicciarelli Tr. at 181:1-181:7.

95. Nowhere in the termination letter or any documentation or ongoing communication with Maria Ruether was a February deadline stated. Cicciarelli Tr. at 181:8-181:9.

96. Allstate took Cicciarelli's book of business and did not provide Cicciarelli or Prestige with a termination payment. Cicciarelli Tr. at 181:10-181:12, 179:1-179:4, 180:2-180:6.

Respectfully submitted,
**HUBBARD SNITCHLER & PARZIANELLO PLC**

*/s/ Eric A. Parzianello*
Eric A. Parzianello (Fla. Bar No. 161225)
Attorneys for Plaintiffs

## **CERTIFICATE OF SERVICE**

I, Eric A. Parzianello, hereby certify that on September 16, 2022, I electronically filed Plaintiffs Prestige Insurance Group, LLC and Ulises Cicciarelli's Statement Of Material Facts with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel.

*/s/ Eric A. Parzianello*
Attorney for Plaintiffs